

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

1:25-cv-5329
Judge Andrea R. Wood
Magistrate Judge Heather K. McShain
RANDOM / Cat. 2

———————————————————————————————

CIVIL ACTION:

JACKIE JOHNSON SAMPLE "Light Feather"
,

                   *Plaintiff,*             COMPLAINT

            v.

MADISON SAMPLE JR.,
JUDGE NEAL CERNE,          TRIAL BY JULY
DEMANDED
JUDGE SUSAN ALVERADO,
JUDGE JAMES OREL,
JUDGE KENTON SKARIN,
THE CIRCUIT COURT OF THE EIGHTEENTH
JUDICIAL CIRCUIT, DUPAGE COUNTY, ILLINOIS,
UNITED STATES OF AMERICA, USDA
 OLD NATIONAL BANK, GN BANK, SELECT
PORTFOLIO SERVICING, INC
                  *Defendants.*

———————————————————————————————

**FILED**
5/14/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PJJ

NOW COMES Plaintiff, SAMPLE, Jackie Johnson "Light Feather," a member of the

Guale Yamassee Tribal Republic, of the Native American Association of Nations

Embassy, appearing pro se, and for her Complaint against Defendants,

MADISON SAMPLE JR., JUDGE NEAL CERNE in both individual as well as personal

capacity, JUDGE SUSAN ALVERADO, in both individual as well as personal

capacity, JUDGE JAMES OREL, in both individual as well as personal capacity,

JUDGE KENTON SKARIN, in both individual as well as personal capacity, THE

CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, DUPAGE COUNTY,

ILLINOIS, UNITED STATES OF AMERICA, GN BANK, OLD NATIONAL BANK, and

SELECT PORTFOLIO SERVICING states as follows:

**FEDERAL QUESTIONS PRESENTED**

1. This action presents federal questions: a. WHETHER a state court may

   assert jurisdiction over foreclosure proceedings involving property owned

   by a member of a federally acknowledged tribe when a valid tribal court

   removal order has been issued pursuant to National Farmers Union

   Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845 (1985) and its

   progeny; and b. WHETHER the United States has breached its fiduciary

   obligations under the Federal Trust Doctrine by failing to protect tribal

   property and tribal members from state court proceedings after proper

   notice of a tribal court removal order.

2. This case presents substantial federal questions involving: a. The doctrine

   of tribal court exhaustion established by the Supreme Court in National

   Farmers Union Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845 (1985)

   and Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9 (1987); b. The

   Federal Trust Doctrine established by the Supreme Court in Cherokee

   Nation v. Georgia, 30 U.S. 1 (1831) and further developed in subsequent

cases including Seminole Nation v. United States, 316 U.S. 286 (1942) and United States v. Mitchell, 463 U.S. 206 (1983) (Mitchell II); c. The protection of tribal sovereign interests from state court intrusion as recognized in Williams v. Lee, 358 U.S. 217 (1959) and its progeny; d. The right to religious freedom and religious dispute resolution mechanisms (Beth Din) protected under the First Amendment of the United States Constitution, as elaborated in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972); e. Federal protections for tribal property against state taxation and foreclosure under McClanahan v. Arizona State Tax Commission, 411 U.S. 164 (1973) and related cases; and f. The provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., which prohibit unfair, deceptive, and abusive debt collection practices, particularly as they apply to tribal members protected under the Federal Trust Doctrine.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this case arises under the Constitution, laws, or treaties of the United States.

4. This Court has jurisdiction over claims arising under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., pursuant to 28 U.S.C. § 1331.

5. This Court has jurisdiction over claims arising under 42 U.S.C. § 1983 for violations of constitutional rights pursuant to 28 U.S.C. § 1331.

6. This Court has jurisdiction over claims involving tribal sovereignty and the tribal exhaustion doctrine pursuant to 28 U.S.C. § 1331.

7. This Court has jurisdiction over claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over any related state law claims pursuant to 28 U.S.C. § 1367.

9. This Court has jurisdiction over the United States pursuant to 28 U.S.C. § 1346(a)(2) for civil actions against the United States founded upon the Constitution, federal laws, federal regulations, or upon express or implied contracts with the United States.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and because Defendants reside or maintain their principal places of business in this district.

**PARTIES**

11. Plaintiff SAMPLE, Jackie "Light Feather" ("Plaintiff"), domiciled in DuPage County, Illinois, "domiciled" at 9476 Falling Water DR E, Burr Ridge, IL 60527, and owns property located in Indian Country of Illinois, which is recognized as tribal land within the territorial jurisdiction of the Guale Yamassee Tribal Republic and she is a registered member of the Guale Yamassee Tribal Republic, of the "Mund Bareefan Tribal Association of Nations Embassy," a federally acknowledged self-governing Tribal Government with tribal authority of self-governance and acknowledgement via the US Department of State Authentication Certification #11001122025-5 & Certification #11001122025-7.

12. Defendant MADISON SAMPLE JR. ("Defendant Sample") is a resident of Will County, Illinois, maintaining addresses at 12638 Talbot Cir, Plainfield, IL 60585, and a mailbox at 20015 S LaGrange Rd, Frankfort, IL 60423. Upon information and belief, Defendant Sample is currently residing in the Philippines.

13. Defendant JUDGE NEAL CERNE is a judge of the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, doing business at 505

5

North County Farm Rd, Rm 2000 Wheaton, Illinois 60187, who presided over portions of case number 2023 DN 129.

14. Defendant JUDGE SUSAN ALVERADO is a judge of the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, doing business at 505 North County Farm Rd, Wheaton, Illinois 60187, who currently presides over case number 2023 DN 129.

15. Defendant JUDGE JAMES OREL is a former judge of the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, doing business at 505 North County Farm Rd, Wheaton, Illinois 60187, who previously presided over case number 2023 DN 129.

16. Defendant JUDGE KENTON SKARIN is a former judge of the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, doing business at 505 North County Farm Rd, Wheaton, Illinois 60187, who previously presided over case number 2023 DN 129.

17. Defendant THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, DUPAGE COUNTY, ILLINOIS doing business at 505 North County Farm Rd, Wheaton, Illinois 60187, is the state court in which case number 2023 DN 129 is currently pending.

18. Defendant THE UNITED STATES OF AMERICA (hereinafter "United States") is the federal government of the United States, which has assumed trust responsibilities for the protection of tribal lands, resources, and rights, including the administration of mortgage and loan programs for tribal members on tribal lands doing business through their agency Brooke L. Rollins, of the USDA, located at 1221 11th St NW, Washington, DC 20250. The United States, through various federal agencies including the Department of the Interior, the Bureau of Indian Affairs, and the Department of Justice, is charged with protecting the rights, property, and interests of federally recognized tribes and their members pursuant to the Federal Trust Doctrine.

19. Defendant GN BANK is a commercial banking institution organized and existing under the laws of the State of Illinois as an Illinois State Chartered Bank, with its principal place of business located at 4619 South King Drive, Chicago, Illinois 60653. GN Bank is a wholly-owned subsidiary of Groupe Nduom, a multinational conglomerate with operations across several industries. Dr. Papa Kwesi Nduom serves as the Chairman of the Board of Directors of GN Bank. GN Bank conducts business throughout the Northern

District of Illinois and has engaged in financial transactions and mortgage lending with Plaintiff.

20. Defendant OLD NATIONAL BANK is a national banking association organized and existing under the laws of the United States, with its corporate headquarters and principal place of business located at One Main Street, Evansville, Indiana 47708. Old National Bank is a wholly-owned subsidiary of Old National Bancorp, a financial services holding company registered with the Federal Reserve System. Nicholas J. Chulos serves as the Executive Vice President, General Counsel and Corporate Secretary of Old National Bank. Old National Bank operates numerous branches throughout Illinois, including within the Northern District of Illinois, and has engaged in financial transactions and mortgage lending with Plaintiff.

21. Defendant SELECT PORTFOLIO SERVICING, INC. ("SPS") is a corporation organized and existing under the laws of the State of Utah, with its principal place of business located at 3217 S. Decker Lake Drive, Salt Lake City, Utah 84119. SPS is a mortgage loan servicer registered with the Nationwide Multistate Licensing System (NMLS #15521) and conducts business throughout the United States, including within the Northern District

of Illinois. SPS is a wholly-owned subsidiary of Credit Suisse, a global financial services company. SPS services mortgage loans and has been responsible for servicing and attempting to collect on purported mortgage debt allegedly owed by Plaintiff in relation to her tribal property.

## BACKGROUND

22. On or about April 11, 2023, Plaintiff and Defendant Sample became parties to a divorce proceeding in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, case number 2023 DN 129.

23. On April 11, 2023, Presiding Judge Kenton Skarin issued a Court Order stating in part, "Effective immediately, both parties are restrained from withdrawing, assigning, encumbering, removing, dissipating, hiding, transferring, concealing, hypothecating, pledging, mortgaging, making gifts of, guaranteeing debts with, expending, or otherwise dealing with or squandering or disposing of any real or personal property, or income which Petitioner or Respondent has any interest whatsoever, except in the course of business or for the necessities of life."

24. Following the issuance of this Order, Defendant Sample engaged in numerous transactions that violated the terms of the Order, dissipating marital assets in excess of $700,000.

25. Throughout the pendency of the divorce proceedings, multiple court orders were issued specifically regarding the tribal res of Plaintiff, more specifically, on January 5, 2024, February 1, 2024, August 12, 2024, August 27, 2024, October 9, 2024, and November 22, 2024, many of which were systematically violated by Defendant Sample.

**Predatory Lending Practices and FDCPA Violations**

26. During the period from approximately January 2020 through December 2024, Defendants GN BANK, OLD NATIONAL BANK, and SELECT PORTFOLIO SERVICING engaged in a pattern of predatory lending practices targeting Plaintiff's tribal property, in violation of federal and state consumer protection laws.

27. Defendant GN BANK knowingly extended credit to Plaintiff while failing to disclose material terms, charged excessive origination fees, imposed undisclosed prepayment penalties, and engaged in "loan flipping" by

repeatedly refinancing Plaintiff's loans to generate additional fees without providing any net tangible benefit to Plaintiff.

28. Defendant GN BANK specifically targeted Plaintiff as a tribal member, knowing that the Federal Trust Doctrine imposes special obligations on financial institutions dealing with tribal members and tribal property, yet deliberately circumvented these protections to extract maximum profit at Plaintiff's expense.

29. Defendant OLD NATIONAL BANK similarly engaged in predatory lending practices by imposing exorbitant interest rates, employing deceptive "teaser rates" that later increased dramatically, including balloon payments without adequate disclosure, and requiring unnecessary and excessive insurance products as a condition for loan approval.

30. Defendant OLD NATIONAL BANK further violated federal lending laws by failing to provide Plaintiff with legally required disclosures under the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq., specifically tailored to protect consumers, including tribal members with special protections under federal law.

31. Defendant SELECT PORTFOLIO SERVICING, as a mortgage servicer, engaged in abusive debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., including but not limited to: a. Attempting to collect amounts not authorized by the original loan agreement or permitted by law; b. Making false representations concerning the character, amount, and legal status of Plaintiff's alleged debt; c. Using unfair and unconscionable means to collect or attempt to collect alleged debts; d. Threatening to take actions that could not legally be taken, including foreclosure on tribal property without proper jurisdiction; e. Communicating with third parties about Plaintiff's alleged debt in violation of 15 U.S.C. § 1692c(b); and f. Failing to provide proper debt validation notices as required by 15 U.S.C. § 1692g.

32. None of the Defendant financial institutions conducted proper Generally Accepted Accounting Principles (GAAP) accounting of Plaintiff's alleged debts, despite multiple written requests from Plaintiff for such accounting pursuant to the Real Estate Settlement Procedures Act (RESPA) and the Truth in Lending Act (TILA).

33. Upon information and belief, Defendant financial institutions failed to maintain proper chain of title documentation for Plaintiff's alleged

mortgage loans, engaged in "robosigning" of foreclosure documents, and attempted to enforce notes and mortgages without proper legal standing to do so.

34. The predatory lending and illegal debt collection practices of Defendant financial institutions specifically targeted and exploited Plaintiff's status as a tribal member, the confusion regarding jurisdiction over tribal property, and the failure of the United States to fulfill its fiduciary obligations under the Federal Trust Doctrine.

35. Defendant UNITED STATES OF AMERICA, through its agencies including the Consumer Financial Protection Bureau, the Federal Trade Commission, the Department of Housing and Urban Development, and the Department of the Interior Bureau of Indian Affairs, had knowledge of these predatory practices targeting tribal members yet failed to take action to protect Plaintiff as required under the Federal Trust Doctrine.

**Americans with Disabilities Act Violations**

36. Plaintiff is an individual with disabilities that substantially limit several major life activities, including but not limited to cognitive processing,

communication, and managing stress, which qualifies her for protection under the Americans with Disabilities Act.

37. Plaintiff has repeatedly requested reasonable accommodations from the Circuit Court, including but not limited to: a. Additional time to present her motions; b. Clear and explicit instructions regarding court procedures; c. Written materials in accessible formats; d. Permission to organize and present information in a manner consistent with her cognitive processing abilities; and e. Accommodation for difficulty with rapid verbal interactions in high-stress court environments.

38. The Defendant Judges each as well as the Circuit Court have consistently failed to provide these reasonable accommodations, in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

39. On January 28, 2025, Judge Alverado denied Plaintiff's request to present her motion, claiming the motion was "incomprehensible" despite admitting she had not read it thoroughly, demonstrating discrimination based on Plaintiff's disability-related communication style.

40. The Circuit Court has repeatedly dismissed Plaintiff's motions without providing accommodations that would allow her to effectively communicate her legal arguments, in violation of 28 C.F.R. § 35.130(b)(7).

41. The Circuit Court's refusal to make reasonable modifications to its procedures to accommodate Plaintiff's disabilities has effectively denied her access to the court system and the opportunity to protect her legal rights and property interests.

42. In April 2025 the Royal Tribal Supreme Consular Court Indian Offenses Division issued a Tribal Removal Order (Case Number: GYTR-2300067-0079), directing that the foreclosure proceedings be removed from the Court of Common Pleas to tribal court. The Tribal Removal Order was properly served on all Defendants, and several state officials, as documented in the Certificate of Service.

**Due Process Violations**

43. The Defendant Judges have each systematically denied Plaintiff her right to due process under the Fourteenth Amendment to the United States Constitution by: a. Refusing to hear her properly filed motions; b. Denying her the opportunity to present evidence of Defendant Sample's contempt; c. Striking her motions without proper consideration; d. Referring her to a non-existent "pro se court" rather than hearing her

motions; e. Failing to enforce their own court orders against Defendant Sample, and failing to acknowledge the Tribal Removal Order.

44. On January 28, 2025, Judge Neal Cerne refused to hear Plaintiff's "Emergency Motion For Injunctive Orders And Request To Hold Petitioner In Contempt Of Court," stating that since neither party had legal representation, he was sending Plaintiff to "pro se court," which is not provided for in Illinois Supreme Court Rules.

45. Judge Susan Alverado subsequently denied Plaintiff's request to present her motion on January 28, 2025, claiming she had not had time to read the motion, but nevertheless declaring it "incomprehensible" and striking it from the record.

46. The actions of each Defendant Judge has deprived Plaintiff of her property rights without due process of law, as Defendant Sample has been permitted to violate court orders with impunity, dissipating marital assets and failing to pay court-ordered maintenance and health insurance, resulting in Plaintiff's utilities being shut off and multiple properties entering foreclosure.

**Tribal Sovereignty and Exhaustion Doctrine Violations**

47. Plaintiff is a registered member of the Guale Yamassee Tribal Republic, of the Native American Association of Nations Embassy, a fact that she has made known to the Circuit Court.

48. Plaintiff has asserted her right to have her case heard in the Royal Tribal Supreme Consular Court Indian Offenses of the Guale Yamassee Native American Association of Nations Embassy, which has established Master Code Index and procedures for handling domestic relations matters involving tribal members.

49. Under binding Supreme Court precedent in National Farmers Union Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845 (1985) and Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9 (1987), non-tribal courts must permit tribal courts to determine their own jurisdiction through tribal court exhaustion before asserting jurisdiction over matters involving tribal members and tribal property. The Court of Common Pleas' refusal to recognize and honor the Tribal Removal Order directly contravenes this established federal law.

50. The United States Supreme Court has consistently held that the federal government has "charged itself with moral obligations of the highest responsibility and trust" toward federally acknowledged tribes. Seminole

Nation v. United States, 316 U.S. 286, 296-97 (1942). Despite this well-established trust obligation, the United States has failed to protect Plaintiff's tribal property from improper state court jurisdiction.

51. Plaintiff brings this action for: (1) declaration that the Court of Common Pleas lacks jurisdiction over matters involving tribal property and tribal members when a valid tribal court removal order has been issued; (2) injunctive relief prohibiting Defendants from continuing foreclosure proceedings against Plaintiff's tribal property; (3) damages for violation of Plaintiff's rights under federal law; and (4) specific performance requiring the United States to fulfill its fiduciary obligations to protect Plaintiff's tribal property.

52. The Circuit Court and presiding Defendant Judges summarily rejected Plaintiff's assertions of tribal court jurisdiction without proper consideration, in violation of the tribal exhaustion doctrine established by the United States Supreme Court in National Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845 (1985) and Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9 (1987).

53. The Circuit Court's refusal to allow Plaintiff to exhaust tribal remedies violates federal law and policy supporting tribal self-government and self-determination.

**Federal Trust Doctrine Violations**

54. The United States, through the Department of the Interior, the Bureau of Indian Affairs, and other federal agencies, has assumed specific trustee obligations toward federally acknowledged tribes and their members, particularly regarding the protection of tribal lands and property from unauthorized state intrusion.

55. This trust relationship, originally recognized in Cherokee Nation v. Georgia, 30 U.S. 1 (1831), imposes fiduciary duties of the highest order on the United States in its dealings with tribal nations and their members.

56. Despite having knowledge of the foreclosure proceedings against Plaintiff's tribal property, the predatory lending practices targeting Plaintiff, and the state court's refusal to honor the tribal removal order, the United States failed to intervene to protect Plaintiff's property and sovereign interests as required by the Federal Trust Doctrine.

57. The United States' inaction in the face of these violations constitutes a breach of its fiduciary obligations and contributes to the ongoing deprivation of Plaintiff's federally protected rights.

58. The United States' failure to regulate the lending practices of Defendant financial institutions in their dealings with tribal members and tribal

property constitutes a further breach of the Federal Trust Doctrine, as the United States has special obligations to protect tribal members from predatory and exploitative financial practices.

## Equal Protection Violations

59. Plaintiff has been treated differently from similarly situated litigants in the Circuit Court based on her status as a pro se litigant, her disability status, and her tribal membership.

60. Non-disabled, represented parties with counsel in the Circuit Court are routinely afforded the opportunity to have their motions heard and considered on the merits, while Plaintiff has been denied this opportunity.

61. This disparate treatment violates Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

## ANSWERS TO THE FEDERAL QUESTIONS PRESENTED

62. Under binding Supreme Court precedent, the answer to the first federal question presented is clear: a state court MAY NOT assert jurisdiction over foreclosure and other proceedings involving property owned by a member of a federally acknowledged tribe when a valid tribal court

removal order has been issued pursuant to National Farmers Union Insurance Cos. v. Crow Tribe of Indians and its progeny.

63. The Supreme Court in National Farmers established unequivocally that "the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a 'full opportunity to determine its own jurisdiction.'" 471 U.S. at 857. This doctrine was further expanded in Iowa Mutual Insurance Co. v. LaPlante, where the Court held that "[r]egardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction." 480 U.S. at 16.

64. While these cases directly addressed federal courts, the Supreme Court's reasoning applies with equal force to state courts. As the Court explained in Iowa Mutual, "[a]djudication of such matters by any non tribal court also infringes upon tribal law-making authority, because tribal courts are best qualified to interpret and apply tribal law." 480 U.S. at 16. The Court also emphasized that "the policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts." Id. at 16-17.

65. The principle that state courts lack authority to interfere with tribal self-government was established long before National Farmers, notably in Williams v. Lee, 358 U.S. 217 (1959), where the Supreme Court held that state courts lacked jurisdiction over a civil suit against a tribal member for actions occurring on the reservation. The Court stated: "There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." Id. at 223.

66. The answer to the second federal question is equally clear: the United States HAS breached its fiduciary obligations under the Federal Trust Doctrine by failing to protect tribal property from state court proceedings after proper notice of a tribal court removal order.

67. The Supreme Court has repeatedly recognized the United States' fiduciary duties toward federally acknowledged tribes. In Seminole Nation v. United States, the Court established that the United States "has charged itself with moral obligations of the highest responsibility and trust" toward Indian tribes, and that its conduct "should therefore be judged by the most exacting fiduciary standards." 316 U.S. at 296-97.

68. In United States v. Mitchell (Mitchell II), 463 U.S. 206 (1983), the Court held that when the United States assumes "elaborate control" over tribal assets, "a fiduciary relationship necessarily arises." Id. at 225. The Court explained that "all of the necessary elements of a common-law trust are present: a trustee (the United States), a beneficiary (the Indian allottees), and a trust corpus (Indian timber, lands, and funds)." Id.

69. This fiduciary relationship includes the obligation to protect tribal lands from state interference. As the Court explained in McClanahan v. Arizona State Tax Commission, 411 U.S. 164 (1973), "State tax laws have been held inapplicable to reservation Indians" absent congressional authorization. Id. at 170-71.

70. The United States' failure to intervene after proper notice of the Tribal Removal Order constitutes a breach of these well-established fiduciary duties.

71. Furthermore, the United States has breached its fiduciary obligations under the Federal Trust Doctrine by failing to protect Plaintiff from predatory lending practices specifically targeting her tribal status and property. The trust responsibility includes protection of tribal members from

exploitative financial practices, particularly when those practices threaten

tribal lands and resources.

## CAUSES OF ACTION

## COUNT I - VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

## (Against Circuit Court of the Eighteenth Judicial Circuit) ONE MILLION DOLLARS

72. Plaintiff incorporates by reference paragraphs 1 through 71 as if fully set

forth herein.

73. Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et

seq., provides that "no qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity."

74. The Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois

is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

75. Plaintiff is a "qualified individual with a disability" within the meaning of 42

U.S.C. § 12131(2), as she has physical and mental impairments that

substantially limit one or more major life activities, and she meets the

essential eligibility requirements for participation in the programs and

activities of the Circuit Court.

76. The Circuit Court and each Defendant Judge has discriminated against Plaintiff on the basis of her disability by: a. Failing to provide reasonable accommodations for her disabilities; b. Dismissing her motions as "incomprehensible" without making reasonable modifications to court procedures to accommodate her disability-related communication style; c. Denying her meaningful access to court proceedings; and d. Failing to ensure effective communication with her.

77. As a direct and proximate result of each Defendant Judge as well as the Circuit Court's violations of the ADA, Plaintiff has suffered and continues to suffer injuries, including loss of property, financial hardship, emotional distress, and denial of access to justice.

78. Plaintiff is entitled to declaratory and injunctive relief, requiring the Circuit Court to comply with the ADA, as well as compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133.

**COUNT II - VIOLATION OF PROCEDURAL DUE PROCESS**

**(Against All Defendants under 42 U.S.C. § 1983) TWO MILLION DOLLARS**

79. Plaintiff incorporates by reference paragraphs 1 through 78 as if fully set forth herein.

80. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

81. Defendant Judges, acting under color of state law, have deprived Plaintiff of her property rights without due process of law by: a. Refusing to hear her properly filed motions; b. Denying her the opportunity to present evidence of Defendant Sample's contempt; c. Striking her motions without proper consideration; d. Referring her to a non-existent "pro se court" rather than hearing her motions; and e. Failing to enforce their own court orders against Defendant Sample.

82. Defendant Circuit Court, as a public entity, has established and maintained policies and practices that systematically deny pro se litigants, particularly those with disabilities, their right to due process.

83. Defendant Sample has participated in the deprivation of Plaintiff's due process rights by deliberately violating court orders with the knowledge that the Circuit Court would not enforce those orders against him.

84. Defendant financial institutions have participated in the deprivation of Plaintiff's due process rights by pursuing foreclosure proceedings in state court despite knowledge of the Tribal Removal Order, thereby

circumventing proper legal procedures and Plaintiff's right to have jurisdictional questions determined by the tribal court in the first instance.

85. As a direct and proximate result of Defendants' violations of Plaintiff's due process rights, Plaintiff has suffered and continues to suffer injuries, including loss of property, financial hardship, and emotional distress.

86. Plaintiff is entitled to declaratory and injunctive relief, as well as compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT III - VIOLATION OF EQUAL PROTECTION

## (Against All Defendants under 42 U.S.C. § 1983) TWO MILLION DOLLARS

87. Plaintiff incorporates by reference paragraphs 1 through 86 as if fully set forth herein.

88. The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

89. Defendant Judges, acting under color of state law, have intentionally treated Plaintiff differently from similarly situated litigants based on her status as a pro se litigant, her disability status, and her tribal membership.

90. This disparate treatment is not rationally related to any legitimate governmental interest and is arbitrary and capricious.

91. Defendant Circuit Court has established and maintained policies and practices that result in systematic discrimination against pro se litigants, particularly those with disabilities and those asserting tribal sovereignty rights.

92. Defendant Sample has participated in and benefited from this discriminatory treatment, as the Circuit Court has consistently failed to enforce its orders against him while holding Plaintiff to the strictest procedural requirements.

93. As a direct and proximate result of Defendants' violations of Plaintiff's equal protection rights, Plaintiff has suffered and continues to suffer injuries, including loss of property, financial hardship, and emotional distress.

94. Plaintiff is entitled to declaratory and injunctive relief, as well as compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT IV - VIOLATION OF TRIBAL SOVEREIGNTY AND EXHAUSTION DOCTRINE (Against All Defendants) THREE MILLION DOLLARS**

95. Plaintiff incorporates by reference paragraphs 1 through 94 as if fully set forth herein.

96. Federal common law recognizes the sovereignty of American Indian tribes and requires that tribal remedies be exhausted before a state or federal court may exercise jurisdiction over a matter involving tribal members where there is a colorable claim of tribal court jurisdiction.

97. Plaintiff is a member of the Guale Yamassee Tribal Republic, of the Native American Association of Nations Embassy, and has asserted her right to have her case heard in tribal court.

98. The Tribal Court of the Guale Yamassee Native American Association of Nations Embassy has established codes and procedures for handling domestic relations matters involving tribal members.

99. Defendants have violated federal law and policy supporting tribal self-government and self-determination by summarily rejecting Plaintiff's assertions of tribal court jurisdiction without proper consideration.

100. Defendants' refusal to allow Plaintiff to exhaust tribal remedies constitutes a violation of federal common law principles established by the United States Supreme Court in National Farmers Union Ins. Co. v.

Crow Tribe, 471 U.S. 845 (1985) and Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9 (1987).

101.    As a direct and proximate result of Defendants' violations of tribal sovereignty principles and the tribal exhaustion doctrine, Plaintiff has suffered and continues to suffer injuries, including denial of her right to have her case heard in her tribal court and the consequent loss of property and financial hardship.

102.    Plaintiff is entitled to declaratory and injunctive relief requiring Defendants to respect tribal sovereignty and the tribal exhaustion doctrine.

**COUNT V - BREACH OF FEDERAL TRUST DOCTRINE**

**(Against Defendant United States of America) FOUR MILLION DOLLARS**

103.    Plaintiff incorporates by reference paragraphs 1 through 102 as if fully set forth herein.

104.    The United States bears a special trust responsibility toward federally acknowledged tribes and their members, as established by the Supreme Court in Cherokee Nation v. Georgia, 30 U.S. 1 (1831), and further developed through subsequent cases including Seminole Nation v. United

States, 316 U.S. 286 (1942), and United States v. Mitchell, 463 U.S. 206 (1983).

105. This trust responsibility includes the obligation to protect tribal lands, resources, and sovereignty from unauthorized state intrusion and predatory practices by non-governmental entities.

106. The United States had actual and constructive knowledge of the foreclosure proceedings against Plaintiff's tribal property, the assertion of state court jurisdiction over tribal property despite the Tribal Removal Order, and the predatory lending practices targeting Plaintiff as a tribal member.

107. Despite this knowledge, the United States failed to take any action to protect Plaintiff's property and sovereign rights, including but not limited to: a. Failing to intervene in state court proceedings to assert the preemptive effect of federal Indian law; b. Failing to enforce the tribal exhaustion doctrine against state court intrusion; c. Failing to regulate and oversee the lending practices of financial institutions dealing with tribal members and tribal property; d. Failing to provide assistance, guidance, or advocacy to Plaintiff in navigating the complex jurisdictional issues arising from her tribal status; and e. Failing to hold the Defendant financial

institutions accountable for predatory lending practices specifically targeting tribal members.

108.   This failure to act constitutes a breach of the United States' fiduciary obligations under the Federal Trust Doctrine, as the United States has special responsibilities to protect tribal members from exploitation and to safeguard tribal sovereignty from erosion by state actions.

109.   As a direct and proximate result of the United States' breach of its fiduciary obligations, Plaintiff has suffered substantial damages, including the threatened loss of her tribal property, financial hardship, emotional distress, and the erosion of her tribal sovereign rights.

110.   Plaintiff is entitled to declaratory relief establishing the United States' breach of its trust responsibilities, injunctive relief requiring the United States to fulfill its fiduciary obligations, and compensatory damages for the injuries suffered as a result of the breach.

## COUNT VI - VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

**(Against Defendants GN Bank, Old National Bank, and Select Portfolio Servicing) THREE MILLION DOLLARS**

111.   Plaintiff incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

112.    Defendants GN BANK, OLD NATIONAL BANK, and SELECT PORTFOLIO SERVICING are "debt collectors" within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(6), as they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, and their principal business purpose is the collection of debts.

113.    The alleged mortgage obligations that Defendants have attempted to collect from Plaintiff constitute "debts" within the meaning of 15 U.S.C. § 1692a(5), as they are alleged obligations of Plaintiff to pay money arising out of transactions primarily for personal, family, or household purposes.

114.    Defendants have violated numerous provisions of the FDCPA in their dealings with Plaintiff, including but not limited to: a. 15 U.S.C. § 1692e, by using false, deceptive, and misleading representations or means in connection with the collection of the alleged debts, including misrepresenting the character, amount, and legal status of the debts; b. 15 U.S.C. § 1692e(2), by falsely representing the character, amount, and legal status of the alleged debts; c. 15 U.S.C. § 1692e(5), by threatening to take actions that cannot legally be taken, including foreclosure on tribal property without proper jurisdiction; d. 15 U.S.C. § 1692e(10), by using false

representations and deceptive means to attempt to collect the alleged debts; e. 15 U.S.C. § 1692f, by using unfair and unconscionable means to collect or attempt to collect the alleged debts; f. 15 U.S.C. § 1692f(1), by attempting to collect amounts not authorized by the original agreements or permitted by law; g. 15 U.S.C. § 1692g, by failing to provide proper validation of the alleged debts after receiving written disputes from Plaintiff; and h. 15 U.S.C. § 1692i, by bringing foreclosure actions in improper venues that lack jurisdiction over tribal property.

115.    Defendants' violations of the FDCPA were particularly egregious given Plaintiff's status as a tribal member with special protections under federal law, and Defendants' knowledge of the Tribal Removal Order and jurisdictional challenges to the state court proceedings.

116.    Defendants' violations of the FDCPA were knowing, willful, and intentional, as evidenced by their continued pursuit of collections and foreclosure despite being properly served with the Tribal Removal Order and despite Plaintiff's repeated assertions of tribal jurisdiction and requests for proper debt validation.

117.     As a direct and proximate result of Defendants' violations of the

FDCPA, Plaintiff has suffered actual damages, including financial harm,

damage to credit, emotional distress, anxiety, and frustration.

118.     Plaintiff is entitled to statutory damages of $1,000 per Defendant

pursuant to 15 U.S.C. § 1692k(a)(2)(A), actual damages pursuant to 15

U.S.C. § 1692k(a)(1), costs and reasonable attorney's fees pursuant to 15

U.S.C. § 1692k(a)(3), and such other relief as this Court deems just and

proper.

## COUNT VII - PREDATORY LENDING PRACTICES

## (Against Defendants GN Bank, Old National Bank, and Select Portfolio Servicing) FOUR MILLION DOLLARS

119.     Plaintiff incorporates by reference paragraphs 1 through 118 as if fully

set forth herein.

120.     Defendants GN BANK, OLD NATIONAL BANK, and SELECT PORTFOLIO

SERVICING engaged in predatory lending practices targeting Plaintiff's

tribal property, in violation of various federal and state consumer

protection laws, including but not limited to the Truth in Lending Act, 15

U.S.C. § 1601 et seq., the Real Estate Settlement Procedures Act, 12 U.S.C.

§ 2601 et seq., and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

121.    These predatory lending practices included, but were not limited to: a. Extending credit without regard to Plaintiff's ability to repay; b. Imposing excessive interest rates, points, and fees; c. Including prepayment penalties that trapped Plaintiff in high-cost loans; d. Engaging in "loan flipping" by repeatedly refinancing loans to generate additional fees; e. Including balloon payments without adequate disclosure; f. Engaging in "bait and switch" tactics by promising certain terms but delivering different, less favorable terms; g. Failing to disclose material loan terms; h. Charging fees for unnecessary products and services; i. Engaging in aggressive and deceptive marketing practices specifically targeting tribal members; and j. Structuring loans to fail by designing payment schedules that Plaintiff could not reasonably meet.

122.    Defendants knew or should have known that their lending practices violated federal and state consumer protection laws and specifically targeted Plaintiff based on her status as a tribal member.

123.  Defendants failed to conduct and provide proper Generally Accepted Accounting Principles (GAAP) accounting of Plaintiff's alleged debts, despite multiple written requests from Plaintiff for such accounting.

124.  This failure to provide GAAP accounting violates federal lending and consumer protection laws, including the Real Estate Settlement Procedures Act (RESPA), and prevents Plaintiff from determining the true nature and amount of her alleged debts.

125.  As a direct and proximate result of Defendants' predatory lending practices, Plaintiff has suffered substantial damages, including the threatened loss of her tribal property, financial hardship, damage to credit, emotional distress, and erosion of her tribal sovereign rights.

126.  Plaintiff is entitled to actual and punitive damages, rescission of the predatory loans, declaratory relief establishing the illegality of Defendants' lending practices, injunctive relief prohibiting Defendants from continuing their predatory practices against tribal members, and such other relief as this Court deems just and proper.

## COUNT VIII - CONSPIRACY TO VIOLATE CIVIL RIGHTS

**(Against All Defendants under 42 U.S.C. § 1985(3)) TWO MILLION DOLLARS**

127.    Plaintiff incorporates by reference paragraphs 1 through 126 as if fully set forth herein.

128.    Defendants individually and collectively have conspired to deprive Plaintiff of her constitutional rights to due process and equal protection of the laws.

129.    Upon information and belief, Defendant Sample has improperly influenced the Defendant Judges and/or court personnel through bribery or other improper means, creating a conspiracy to deprive Plaintiff of her rights.

130.    Defendant financial institutions have conspired with state court officials to circumvent tribal jurisdiction and the tribal exhaustion doctrine, thereby depriving Plaintiff of her federally protected rights to tribal sovereignty and self-determination.

131.    The conspiracy has been evidenced by the systematic refusal of the Circuit Court to enforce its orders against Defendant Sample while simultaneously denying Plaintiff the opportunity to be heard on her motions to hold Defendant Sample in contempt.

132.    The conspiracy is further evidenced by the coordinated actions of Defendant financial institutions in pursuing foreclosure proceedings in

state court despite knowledge of the Tribal Removal Order and proper tribal jurisdiction.

133.    The conspiracy has been motivated, at least in part, by discriminatory animus against Plaintiff based on her disability status and her tribal membership.

134.    As a direct and proximate result of this conspiracy, Plaintiff has suffered and continues to suffer injuries, including loss of property, financial hardship, and emotional distress.

135.    Plaintiff is entitled to declaratory and injunctive relief, as well as compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Accept jurisdiction over this action and remove case number 2023 DN 129 from the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois to this Court;

B. Issue a declaratory judgment that:

1. Defendants have violated Plaintiff's rights under the Americans with Disabilities Act, the Due Process Clause of the Fourteenth Amendment,

the Equal Protection Clause of the Fourteenth Amendment, and federal principles of tribal sovereignty and the tribal exhaustion doctrine;

2. The United States has breached its fiduciary obligations under the Federal Trust Doctrine by failing to protect Plaintiff's tribal property and sovereignty;

3. Defendant financial institutions have engaged in predatory lending practices and violations of the Fair Debt Collection Practices Act;

4. The state court lacks jurisdiction over foreclosure proceedings involving Plaintiff's tribal property when a valid tribal court removal order has been issued; and

5. Plaintiff is entitled to exhaust tribal court remedies before any non-tribal court may exercise jurisdiction over matters involving her tribal property;

C. Issue a preliminary and permanent injunction:

1. Requiring the Circuit Court to provide reasonable accommodations for Plaintiff's disabilities;

2. Prohibiting Defendants from discriminating against Plaintiff on the basis of her disability status, pro se status, or tribal membership;

3. Requiring Defendants to respect tribal sovereignty and the tribal exhaustion doctrine;

4. Ordering Defendant Sample to comply with all prior court orders regarding the preservation of marital assets, payment of maintenance, and provision of health insurance;

5. Prohibiting Defendant financial institutions from continuing foreclosure proceedings against Plaintiff's tribal property;

6. Requiring Defendant financial institutions to provide proper GAAP accounting of Plaintiff's alleged debts;

7. Requiring the United States to fulfill its fiduciary obligations to protect Plaintiff's tribal property and sovereignty; and

8. Prohibiting all Defendants from further violations of Plaintiff's federally protected rights;

D. Award Plaintiff compensatory damages as follows:

1. ONE MILLION DOLLARS ($1,000,000.00) for violations of the Americans with Disabilities Act;

2. TWO MILLION DOLLARS ($2,000,000.00) for violations of procedural due process;

3. TWO MILLION DOLLARS ($2,000,000.00) for violations of equal protection;

4. THREE MILLION DOLLARS ($3,000,000.00) for violations of tribal sovereignty and the tribal exhaustion doctrine;

5. FOUR MILLION DOLLARS ($4,000,000.00) for breach of the Federal Trust Doctrine;

6. THREE MILLION DOLLARS ($3,000,000.00) for violations of the Fair Debt Collection Practices Act;

7. FOUR MILLION DOLLARS ($4,000,000.00) for predatory lending practices; and

8. TWO MILLION DOLLARS ($2,000,000.00) for conspiracy to violate civil rights;

E. Award Plaintiff her reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 15 U.S.C. § 1692k, and other applicable law;

F. Award Plaintiff pre-judgment and post-judgment interest as allowed by law;

G. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: May 12, 2025

_____

JACKIE SAMPLE "Light Feather", Plaintiff Pro Se

8474 Falling Water DR E Burr Ridge, IL 60527

jackshousinganddevelopment@gmail.com

## VERIFICATION

I, Jackie Sample, verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief, that on this date 14th day of May, 2025, **JACKIE SAMPLE "Light Feather"**, executed the, in **her** stated capacity,  the signatures on this instrument were signed as a free and voluntary act and deed for the uses and purposes mentioned therein.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

———————————————————————————————

JACKIE SAMPLE,

                             *Plaintiff,*

             V.                                CIVIL NO:

 MADISON SAMPLE JR;
JUDGE NEAL CERNE;                        MEMORANDUM IN
JUDGE SUSAN ALVERADO;              SUPPORT
JUDGE JAMES OREL;
JUDGE KENTON SKARIN;
THE CIRCUIT COURT OF THE EIGHTEENTH
JUDICIAL CIRCUIT; DUPAGE COUNTY, ILLINOIS;
GN BANK; OLD NATIONAL BANK;

                             *Defendants.*

———————————————————————————————

Plaintiff, Jackie Sample "Light Feather," a member of the Guale Yamassee Tribal

Republic, of the Native American Association of Nations Embassy, submits this

Memorandum of Law in support of her Petition for Removal of Case No. 2023 DN

129 from the Circuit Court of the Eighteenth Judicial Circuit, DuPage County,

Illinois to this Court.


**I. INTRODUCTION**

This case presents substantial federal questions regarding tribal sovereignty, the

right of tribal members to exhaust tribal remedies, violations of federally

protected civil rights under the Americans with Disabilities Act, and constitutional

violations of due process and equal protection. The state court's refusal to honor Plaintiff's request to transfer her divorce proceedings to tribal court, failure to provide reasonable accommodations for her disabilities, and systematic denial of her right to be heard directly implicates federal law and warrants removal to this Court.

## II. LEGAL STANDARD FOR REMOVAL

A defendant may remove a civil action from state court to federal court if the action could have been filed originally in federal court. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

A case "arises under" federal law when the plaintiff's statement of his own cause of action shows that it is based upon federal law. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). Additionally, a state law claim may be removed to federal court if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005)*.

## III. THIS CASE PRESENTS SUBSTANTIAL FEDERAL QUESTIONS

## A. Tribal Court Exhaustion Doctrine

The Supreme Court has established that principles of comity require federal courts to give tribal courts a "full opportunity to determine their own jurisdiction" before federal courts may intervene. _National Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845, 857 (1985)_. This doctrine, known as the "tribal exhaustion rule," is rooted in federal policy supporting tribal self-government and self-determination. _Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 14 (1987)_.

The same principles apply to state courts dealing with matters potentially subject to tribal jurisdiction. State courts must defer to tribal courts in matters involving tribal members where tribal courts have colorable jurisdiction. See _Strate v. A-1 Contractors, 520 U.S. 438 (1997)_ (discussing tribal jurisdiction and exhaustion requirements).

In this case, Plaintiff properly invoked tribal court jurisdiction by filing a motion for removal to the Guale Yamassee Native American Association of Nations Embassy, Tribal Court. The Tribal Court has an established code and procedures for handling domestic relations matters involving tribal members. The state

court's summary rejection of tribal court jurisdiction violates federal law and policy regarding tribal sovereignty and self-governance.

## B. Americans with Disabilities Act

Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., prohibits discrimination against individuals with disabilities by public entities, including state courts. The ADA requires that public entities, including courts, make reasonable modifications to rules, policies, or practices when necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).

Plaintiff has a qualifying disability that substantially limits several major life activities, including cognitive processing, communication, and managing stress in high-pressure environments. She has repeatedly requested reasonable accommodations for her disabilities, which the state court has consistently ignored or denied, in violation of federal law.

The Supreme Court has specifically addressed the application of the ADA to state court systems in _Tennessee v. Lane, 541 U.S. 509 (2004)_, holding that Title II of the ADA validly abrogates state sovereign immunity in cases involving access to courts. The Court recognized that "the right of access to the courts" is a

fundamental right protected by the Due Process Clause, and that "a variety of discriminatory policies and practices—including... failure to make reasonable accommodations... have denied [individuals with disabilities] this basic right." Id. at 522-23.

In this case, the state court's actions present clear violations of the ADA, including:

1. Failure to provide reasonable accommodations: The state court has refused to make reasonable modifications to its procedures to accommodate Plaintiff's disabilities, including providing additional time for her to present her motions, clear written instructions, and accommodations for her communication style.

2. Discriminatory exclusion: By dismissing Plaintiff's motions as "incomprehensible" without providing accommodations that would allow her to effectively communicate her legal arguments, the state court has effectively excluded her from meaningful participation in the judicial process.

3. Failure to ensure effective communication: The ADA requires public entities to "take appropriate steps to ensure that communications with

applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). The state court has failed to meet this obligation.

4. Pattern of discrimination: The consistent pattern of denying Plaintiff's motions and refusing to hear her arguments suggests a systemic failure to accommodate individuals with disabilities in the state court system.

These violations of the ADA present substantial federal questions that cannot be adequately addressed in state court, as they involve interpretation and application of federal disability rights law.

## C. Due Process Violations

The Fourteenth Amendment to the United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The state court's actions in this case, including repeatedly refusing to hear Plaintiff's emergency motions, denying her the opportunity to present evidence of contempt, and summarily striking her motions without proper consideration, violate fundamental principles of procedural due process.

As the Supreme Court has recognized, "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" is the fundamental requirement of due process. *Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965))*. The state court's consistent refusal to provide Plaintiff with a meaningful opportunity to be heard raises substantial federal constitutional questions.

The Supreme Court has also recognized that access to the courts is a fundamental right protected by the Due Process Clause. *Bounds v. Smith, 430 U.S. 817, 828 (1977).* By systematically denying Plaintiff the opportunity to be heard on her motions and to present evidence of Defendant Sample's contempt, the state court has effectively denied her this fundamental right.

## D. Equal Protection Violations

The Fourteenth Amendment also guarantees equal protection of the laws. The state court's disparate treatment of Plaintiff based on her status as a pro se litigant, her disability status, and her tribal membership raises substantial federal questions regarding equal protection.

The Supreme Court has recognized that disparate treatment based on disability can violate the Equal Protection Clause. _City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985)._ Additionally, discrimination against Native Americans may be subject to heightened scrutiny under equal protection analysis. See _Rice v. Cayetano, 528 U.S. 495 (2000)._

## IV. THE DOMESTIC RELATIONS EXCEPTION DOES NOT BAR REMOVAL

While federal courts generally abstain from hearing cases involving domestic relations under the "domestic relations exception" to federal jurisdiction, this exception does not apply where a case presents substantial federal questions beyond the domestic relations matter itself. See _Ankenbrandt v. Richards, 504 U.S. 689, 703-04 (1992)_ (clarifying the scope of the domestic relations exception).

This case involves fundamental questions of federal law, including tribal sovereignty, the right to exhaust tribal remedies, violations of the Americans with Disabilities Act, and violations of federally protected constitutional rights. These issues transcend the underlying domestic relations matter and warrant federal court intervention. See _Atwood v. Fort Peck Tribal Court Assiniboine, 513 F.3d 943, 946-47 (9th Cir. 2008)_ (finding that federal courts have jurisdiction to determine whether a tribal court has exceeded its jurisdiction).

## V. ABSTENTION DOCTRINES DO NOT PRECLUDE FEDERAL JURISDICTION

While federal courts sometimes abstain from exercising jurisdiction under various abstention doctrines (such as Younger, Pullman, or Colorado River abstention), none of these doctrines apply in this case because:

1. The state court proceedings have been tainted by violations of federal law and Plaintiff's constitutional rights;

2. The case presents clear and substantial federal questions that cannot be adequately addressed in state court;

3. Plaintiff has been denied a fair opportunity to be heard in state court; and

4. The tribal exhaustion doctrine supersedes state court jurisdiction in this matter.

See _Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)_ (noting that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them).

## VI. CONCLUSION

For the foregoing reasons, this Court should accept jurisdiction over this action and remove it from the Circuit Court of the Eighteenth Judicial Circuit, DuPage

County, Illinois. The case presents substantial federal questions regarding tribal sovereignty, the right to exhaust tribal remedies, violations of the Americans with Disabilities Act, and violations of federally protected constitutional rights that warrant federal court intervention.

Respectfully submitted,

Dated: May 14, 2025

JACKIE SAMPLE, Plaintiff Pro Se
9476 Falling Water DR E
Burr Ridge, IL 60527
jackshousinganddevelopment@gmail.com

**SERVICE LIST:**

MADISON SAMPLE JR.
12638 Talbot Circle
Plainfield, Illinois 60585


JUDGE NEAL CERNE
505 North County Farm Rd, Rm 3003
Wheaton, Illinois 60187

JUDGE SUSAN ALVERADO
505 North County Farm Rd, Rm 2000
Wheaton, Illinois 60187

OLD NATIONAL BANK
Nicholas J Chulos
One Main Street
Evansville, IN 47708

GN BANK
Dr. Papa Kwesi Nduom
4619 South King Dr
Chicago, Il 60653

United States of America
Brooke L. Rollins, USDA
1221 11th St NW,
Washington, DC 20250

SELECT PORTFOLIO SERVICING, INC.
3217 S. Decker Lake Drive,
Salt Lake City, Utah 84119

THE CIRCUIT COURT OF THE EIGHTEENTH
JUDICIAL CIRCUIT, DUPAGE COUNTY, ILLINOIS
505 North County Farm Rd
Wheaton, Illinois 60187

Judge Kenton S Karin Rm
305 N. County Farm Rd
Wheaton IL, 60187
Room 2000

Judge James Orel
505 N. County Farm Road
Wheaton IL, 60187