IC

# FILED

JUN 1 0 2025

June 9, 2025 11:44PM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT 1:25-CV-5329

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

------------------------------------------------------------------

CIVIL ACTION:

COMPLAINT

JACKIE JOHNSON SAMPLE "Light Feather"

Plaintiff,

Amended Complaint with Supporting Material: TRIAL BY JURY DEMAND

v.

MADISON SAMPLE JR.,
JUDGE NEAL CERNE,
JUDGE SUSAN ALVARADO,
JUDGE JAMES OREL,
JUDGE KENTON SKARIN,
THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT,
DUPAGE COUNTY, ILLINOIS,
UNITED STATES OF AMERICA, USDA
OLD NATIONAL BANK, GN BANK, SELECT
PORTFOLIO SERVICING, INC

Defendants.

------------------------------------------------------------------

NOW COMES Plaintiff, SAMPLE, Jackie Johnson "Light Feather," a member of the

Guale Yamassee Tribal Republic, of the Native American Association of Nations

Embassy, appearing pro se

And for her Complaint against Defendants, MADISON SAMPLE JR, in **individual**

**capacity claims and conspiracy claims** under § 1983 or RICO.**and official**

1

capacities, JUDGE KENTON SKARIN, in both **individual and official capacities**. JUDGE JAMES OREL, in both **individual and official capacities**, JUDGE NEAL CERNE in both **individual and official capacities**, JUDGE SUSAN ALVERADO, in both **individual and official capacities**. THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, DUPAGE COUNTY, ILLINOIS, UNITED STATES OF AMERICA, GN BANK and OLD NATIONAL BANK states as follows:

      1.    This action presents federal questions:

a. WHETHER a state court may assert jurisdiction over foreclosure proceedings involving property owned by a member of a federally acknowledged tribe when a valid tribal court removal order has been issued pursuant to National Farmers Union Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845 (1985) and its progeny; and

b. WHETHER the United States has breached its fiduciary obligations under the Federal Trust Doctrine by failing to protect tribal property and tribal members from state court proceedings after proper notice of a tribal court removal order.


2. This case presents substantial federal questions involving:

a. The doctrine of tribal court exhaustion established by the Supreme Court in National Farmers Union Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845 (1985) and Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9 (1987);

b. The Federal Trust Doctrine established by the Supreme Court in Cherokee Nation v. Georgia, 30 U.S. 1 (1831) and further developed in subsequent cases including Seminole Nation United States, 316 U.S. 286 (1942) and United States v. Mitchell, 463 U.S. 206 (1983) (Mitchell II);

2

c. The protection of tribal sovereign interests from state court intrusion as recognized in

Williams v. Lee, 358 U.S. 217 (1959) and its progeny;

d. The right to religious freedom and religious dispute resolution mechanisms (Beth Din)

protected under the First Amendment of the United States Constitution, as elaborated in

Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972);

and

e. Federal protections for tribal property against state taxation and foreclosure under

McClanahan v. Arizona State Tax Commission, 411 U.S. 164 (1973) and related cases.


JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331 as this case arises under the Constitution, laws, or treaties of

the United States.

4.  This Court has jurisdiction over claims arising under the Americans with

Disabilities Act, 42 U.S.C. § 12101 et seq., pursuant to 28 U.S.C. § 1331.

5.  This Court has jurisdiction over claims arising under 42 U.S.C. § 1983 for

violations of constitutional rights pursuant to 28 U.S.C. § 1331.

6.  This Court has jurisdiction over claims involving tribal sovereignty and the

tribal exhaustion doctrine pursuant to 28 U.S.C. § 1331.

7.  This Court has supplemental jurisdiction over any related state law claims

pursuant to 28 U.S.C. § 1367.

8.  This Court has jurisdiction over the United States pursuant to 28 U.S.C. §

1346(a)(2) for civil actions against the United States founded upon the

Constitution, federal laws, federal regulations, or upon express or implied contracts with the United States.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and because Defendants reside or maintain their principal places of business in this district.

PARTIES

10.    Plaintiff SAMPLE, Jackie "Light Feather" ("Plaintiff"), is a resident of DuPage County, Illinois, "domiciled" at 9476 Falling Water DR E, Burr Ridge, IL 60527, and owns property located in Indian Country of Illinois, which is recognized as tribal land within the territorial jurisdiction of the Guale Yamassee Tribal Republic and she is a registered member of the Guale Yamassee Tribal Republic, of the "Mund Bareefan Tribal Association of Nations Embassy," a federally acknowledged self-governing Tribal Government with tribal authority of self-governance and acknowledgement via the US Department of State Authentication Certification #11001122025-5 & Certification #11001122025-7.

11. Defendant MADISON SAMPLE JR. ("Defendant Sample") is a resident of Will County, Illinois, maintaining addresses at 12638 Talbot Cir, Plainfield, IL 60585, and a mailbox at 20015 S LaGrange Rd, Frankfort, IL 60423.

12. Defendant JUDGE NEAL CERNE is a judge of the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, doing business at 505

4

North County Farm Rd, Rm 2000 Wheaton, Illinois 60187, who presided over portions of case number 2023 DN 129.

13. Defendant JUDGE SUSAN ALVARADO is a judge of the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, doing business at 505 North County Farm Rd, Wheaton, Illinois 60187, who currently presides over case number 2023 DN 129.

14. Defendant JUDGE JAMES OREL is a former judge of the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, doing business at 505 North County Farm Rd, Wheaton, Illinois 60187, who previously presided over case number 2023 DN 129.

15. Defendant JUDGE KENTON SKARIN is a former judge of the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, doing business at 505 North County Farm Rd, Wheaton, Illinois 60187, who previously presided over case number 2023 DN 129.

16. Defendant THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, DUPAGE COUNTY, ILLINOIS doing business at 505 North County Farm Rd, Wheaton, Illinois 60187, is the state court in which case number 2023 DN 129 is currently pending.

17. Defendant THE UNITED STATES OF AMERICA (hereinafter "United States") is the federal government of the United States, which has assumed trust responsibilities for the protection of tribal lands, resources, and rights, including the administration of mortgage and loan programs for tribal members on tribal lands doing business through their agency Brooke

L. Rollins, of the USDA, located at 1221 11th St NW, Washington, DC 20250.

18. OLD NATIONAL BANK

Nicholas J Chulos

One Main Street

Evansville, IN 47708


GN BANK

19. Dr. Papa Kwesi Nduom

4619 South King Dr

Chicago, Il 60653


20. SELECT PORTFOLIO SERVICING

3217 S. DECKER LAKE DRIVE

SALT LAKE CITY, UT 84119


BACKGROUND:

21. On or about April 11, 2023, Plaintiff and Defendant Sample became parties to a divorce proceeding in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, case number 2023 DN 129.

22. On April 11, 2023, Presiding Judge Kenton Skarin issued a Court Order stating in part, "Effective immediately, both parties are restrained from withdrawing, assigning, encumbering, removing, dissipating, hiding,

6

transferring, concealing, hypothecating, pledging, mortgaging, making gifts

of, guaranteeing debts with, expending, or otherwise dealing with or

squandering or disposing of any real or personal property, or income

which Petitioner or Respondent has any interest whatsoever, except in the

course of business or for the necessities of life."

23. Following the issuance of this Order, Defendant Sample engaged in

numerous transactions that violated the terms of the Order, dissipating

marital assets in excess of $700,000.

24. Throughout the pendency of the divorce proceedings, multiple court

orders were issued specifically regarding the tribal res of Plaintiff, more

specifically, on January 5, 2024, February 1, 2024, August 12, 2024,

August 27, 2024, October 9, 2024, and November 22, 2024, many of

which were systematically violated by Defendant Sample.

Americans with Disabilities Act Violations

25. Plaintiff is a qualified individual with disabilities that substantially limit several major

life activities, including but not limited to cognitive processing, communication,

and managing stress, which qualifies her for protection under the Americans with

Disabilities Act.

26. Plaintiff has repeatedly requested reasonable accommodations from the Circuit

Court, including but not limited to: a. Additional time to present her motions; b.

Clear and explicit instructions regarding court procedures; c. Written materials in

accessible formats; d. Permission to use electronic devices during court to

organize and present information in a manner consistent with her cognitive

processing abilities; and e. Accommodation for difficulty with rapid verbal interactions in high-stress court environments.

27. The Defendants Judges as well as the Circuit Court have consistently failed to provide these reasonable accommodations, in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

28. On January 28, 2025, Judge Alverado denied Plaintiff's request to present her motion, claiming the motion was "incomprehensible" despite admitting she had not read it thoroughly, demonstrating discrimination based on Plaintiff's disability-related communication style.

29. The Circuit Court has repeatedly dismissed Plaintiff's motions without providing accommodations that would allow her to effectively communicate her legal arguments, in violation of 28 C.F.R. § 35.130(b)(7).

30. The Circuit Court's refusal to make reasonable modifications to its procedures to accommodate Plaintiff's disabilities has effectively denied her access to the court system and the opportunity to protect her legal rights and property interests.

31. In April 2025 the Royal Tribal Supreme Consular Court Indian Offenses Division issued a Tribal Removal Order (Case Number: GYTR-2300067-0079), directing that the foreclosure proceedings be removed from the Court of Common Pleas to tribal court. The Tribal Removal Order was properly served on all Defendants, and several state officials, as documented in the Certificate of Service.

Due Process Violations

32. The Defendant Judges have each systematically denied Plaintiff her right to due process under the Fourteenth Amendment to the United States Constitution by: a.

8

Refusing to hear her properly filed motions; b. Denying her the opportunity to present evidence of Defendant Sample's contempt; c. Striking her motions without proper consideration; d. Referring her to a non-existent "pro se court" rather than hearing her motions; e. Failing to enforce their own court orders against Defendant Sample, and failing to acknowledge the Tribal Removal Order.

33. On January 28, 2025, Judge Neal Cerne refused to hear Plaintiff's "Emergency Motion For Injunctive Orders And Request To Hold Petitioner In Contempt Of Court," stating that since neither party had legal representation, he was sending Plaintiff to "pro se court," which is not provided for in Illinois Supreme Court Rules.

34. Judge Susan Alverado subsequently denied Plaintiff's request to present her motion on January 28, 2025, claiming she had not had time to read the motion, but nevertheless declaring it "incomprehensible" and striking it from the record.

35. The actions of each Defendant Judge has deprived Plaintiff of her property rights without due process of law, as Defendant Sample has been permitted to violate court orders with impunity, dissipating marital assets and failing to pay court-ordered maintenance and health insurance, resulting in Plaintiff's utilities being shut off and multiple properties entering foreclosure.

Tribal Sovereignty and Exhaustion Doctrine Violations

36. Plaintiff is a registered member of the Guale Yamassee Tribal Republic, of the Native American Association of Nations Embassy, a fact that she has made known to the Circuit Court.

37. Plaintiff has asserted her right to have her case heard in the Royal Tribal Supreme Consular Court Indian Offenses of the Guale Yamassee Native

American Association of Nations Embassy, which has established Master Code Index and procedures for handling domestic relations matters involving tribal members.

38. Under binding Supreme Court precedent in National Farmers Union Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845 (1985) and Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9 (1987), non-tribal courts must permit tribal courts to determine their own jurisdiction through tribal court exhaustion before asserting jurisdiction over matters involving tribal members and tribal property. The Court of Common Pleas' refusal to recognize and honor the Tribal Removal Order directly contravenes this established federal law.

39. The United States Supreme Court has consistently held that the federal government has "charged itself with moral obligations of the highest responsibility and trust" toward federally acknowledged tribes. Seminole Nation v. United States, 316 U.S. 286, 296-97 (1942). Despite this well-established trust obligation, the United States has failed to protect Plaintiff's tribal property from improper state court jurisdiction.

40. Plaintiff brings this action for: (1) declaration that the Court of Common Pleas lacks jurisdiction over matters involving tribal property and tribal members when a valid tribal court removal order has been issued; (2) injunctive relief prohibiting Defendants from continuing foreclosure proceedings against Plaintiff's tribal property; (3) damages for violation of Plaintiff's rights under federal law; and (4) specific performance requiring the United States to fulfill its fiduciary obligations to protect Plaintiff's tribal property.

41. The Circuit Court and presiding Defendant Judge _____
    summarily rejected Plaintiff's assertions of tribal court jurisdiction without proper
    consideration, in violation of the tribal exhaustion doctrine established by the
    United States Supreme Court in <u>National Farmers Union Ins. Co. v. Crow Tribe,
    471 U.S. 845 (1985) and Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9 (1987)</u>.

42. The Circuit Court's refusal to allow Plaintiff to exhaust tribal remedies violates
    federal law and policy supporting tribal self-government and self-determination.

Equal Protection Violations

43. Plaintiff has been treated differently from similarly situated litigants in the Circuit
    Court based on her status as a pro se litigant, her disability status, and her tribal
    membership.

44. Non-disabled, represented parties with counsel in the Circuit Court are routinely
    afforded the opportunity to have their motions heard and considered on the
    merits, while Plaintiff has been denied this opportunity.

45. This disparate treatment violates Plaintiff's right to equal protection under the
    Fourteenth Amendment to the United States Constitution.

ANSWERS TO THE FEDERAL QUESTIONS PRESENTED

46. Under binding Supreme Court precedent, the answer to the first federal question
    presented is clear: a state court MAY NOT assert jurisdiction over foreclosure
    and other proceedings involving property owned by a member of a federally
    acknowledged tribe when a valid tribal court removal order has been issued
    pursuant to National Farmers Union Insurance Cos. v. Crow Tribe of Indians and
    its progeny.

11

47. The Supreme Court in National Farmers established unequivocally that "the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a 'full opportunity to determine its own jurisdiction.'" 471 U.S. at 857. This doctrine was further expanded in Iowa Mutual Insurance Co. v. LaPlante, where the Court held that regardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction." 480 U.S. at 16.

48. While these cases directly addressed federal courts, the Supreme Court's reasoning applies with equal force to state courts. As the Court explained in Iowa Mutual, "adjudication of such matters by any non-tribal court also infringes upon tribal law-making authority, because tribal courts are best qualified to interpret and apply tribal law." 480 U.S. at 16. The Court also emphasized that "the policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts." Id. at 16-17.

49. The principle that state courts lack authority to interfere with tribal self-government was established long before National Farmers, notably in Williams v. Lee, 358 U.S. 217 (1959), where the Supreme Court held that state courts lacked jurisdiction over a civil suit against a tribal member for actions occurring on the reservation. The Court stated: "There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." Id. at 223.

12

50. The answer to the second federal question is equally clear: the United States HAS breached its fiduciary obligations under the Federal Trust Doctrine by failing to protect tribal property from state court proceedings after proper notice of a tribal court removal order.

51. The Supreme Court has repeatedly recognized the United States' fiduciary duties toward federally acknowledged tribes. In Seminole Nation v. United States, the Court established that the United States "has charged itself with moral obligations of the highest responsibility and trust" toward Indian tribes, and that its conduct "should therefore be judged by the most exacting fiduciary standards." 316 U.S. at 296-97.

52. In <u>United States v. Mitchell (Mitchell II), 463 U.S. 206 (1983)</u>, the Court held that when the United States assumes "elaborate control" over tribal assets, "a fiduciary relationship necessarily arises." Id. at 225. The Court explained that "all of the necessary elements of a common-law trust are present: a trustee (the United States), a beneficiary (the Indian allottees), and a trust corpus (Indian timber, lands, and funds)." Id.

53. This fiduciary relationship includes the obligation to protect tribal lands from state interference. As the Court explained in <u>McClanahan v. Arizona State Tax Commission, 411 U.S. 164 (1973)</u>, "State tax laws have been held inapplicable to reservation Indians" absent congressional authorization. Id. at 170-71.

54. The United States' failure to intervene after proper notice of the Tribal Removal Order constitutes a breach of these well-established fiduciary duties.

CAUSES OF ACTION

13

COUNT I - VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

(Against Circuit Court of the Eighteenth Judicial Circuit)

55. Plaintiff incorporates by reference paragraphs 1 through 33 as if fully set forth herein.

56. Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

57. The Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

58. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2), as she has physical and mental impairments that substantially limit one or more major life activities, and she meets the essential eligibility requirements for participation in the programs and activities of the Circuit Court.

59. The Circuit Court and each Defendant Judge has discriminated against Plaintiff on the basis of her disability by: a. Failing to provide reasonable accommodations for her disabilities; b. Dismissing her motions as "incomprehensible" without making reasonable modifications to court procedures to accommodate her disability-related communication style; c. Denying her meaningful access to court proceedings; and d. Failing to ensure effective communication with her.

14

60. As a direct and proximate result of each Defendant Judge as well as the Circuit Court's violations of the ADA, Plaintiff has suffered and continues to suffer injuries, including loss of property, financial hardship, emotional distress, and denial of access to justice.

61. Plaintiff is entitled to declaratory and injunctive relief, requiring the Circuit Court to comply with the ADA, as well as compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133.

COUNT II - VIOLATION OF PROCEDURAL DUE PROCESS

(Against All Defendants under 42 U.S.C. § 1983)

62. Plaintiff incorporates by reference paragraphs 1 through 40 as if fully set forth herein.

63. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

64. Defendant Judges, acting under color of state law, have deprived Plaintiff of her property rights without due process of law by: a. Refusing to hear her properly filed motions; b. Denying her the opportunity to present evidence of Defendant Sample's contempt; c. Striking her motions without proper consideration; d. Referring her to a non-existent "pro se court" rather than hearing her motions; and e. Failing to enforce their own court orders against Defendant Sample.

65. Defendant Circuit Court, as a public entity, has established and maintained policies and practices that systematically deny pro se litigants, particularly those with disabilities, their right to due process.

15

66. Defendant Sample has participated in the deprivation of Plaintiff's due process rights by deliberately violating court orders with the knowledge that the Circuit Court would not enforce those orders against him.

67. As a direct and proximate result of Defendants' violations of Plaintiff's due process rights, Plaintiff has suffered and continues to suffer injuries, including loss of property, financial hardship, and emotional distress.

68. Plaintiff is entitled to declaratory and injunctive relief, as well as compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

COUNT III - VIOLATION OF EQUAL PROTECTION

(Against All Defendants under 42 U.S.C. § 1983)

69. Plaintiff incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

70. The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

71. Defendant Judges, acting under color of law, have intentionally treated Plaintiff differently from similarly situated litigants based on her gender, racial background and her status as a pro se litigant, her disability status, and her tribal membership.

72. This disparate treatment is not rationally related to any legitimate governmental interest and is arbitrary and capricious.

16

73. Defendant Circuit Court has established and maintained policies and practices that result in systematic discrimination, sexism and racism against Jackie Sample, a pro se litigant, particularly with her disability and her asserting tribal sovereignty rights.

74. Defendant Madison Sample has participated in and benefited from this discriminatory treatment, as the Circuit Court has consistently failed to enforce its orders against him while holding Plaintiff to the strictest procedural requirements.

75. As a direct and proximate result of Defendants' violations of Plaintiff's equal protection rights, Plaintiff has suffered and continues to suffer injuries, including foreclosure of property, financial hardship, and emotional distress.

76. Plaintiff is entitled to declaratory and injunctive relief, as well as compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

COUNT IV - VIOLATION OF TRIBAL SOVEREIGNTY AND EXHAUSTION DOCTRINE
(Against All Defendants)

77. Plaintiff incorporates by reference paragraphs 1 through 55 as if fully set forth herein.

78. Federal common law recognizes the sovereignty of American Indian tribes and requires that tribal remedies be exhausted before a state or federal court may exercise jurisdiction over a matter involving tribal members where there is a colorable claim of tribal court jurisdiction.

17

79. Plaintiff is a member of the Guale Yamassee Tribal Republic, of the Native American Association of Nations Embassy, and has asserted her right to have her case heard in tribal court.

80. The Tribal Court of the Guale Yamassee Native American Association of Nations Embassy has established codes and procedures for handling domestic relations matters involving tribal members.

81. Defendants have violated federal law and policy supporting tribal self-government and self-determination by summarily rejecting Plaintiff's assertions of tribal court jurisdiction without proper consideration.

82. Defendants' refusal to allow Plaintiff to exhaust tribal remedies constitutes a violation of federal common law principles established by the United States Supreme Court in National Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845 (1985) and Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9 (1987).

83. As a direct and proximate result of Defendants' violations of tribal sovereignty principles and the tribal exhaustion doctrine, Plaintiff has suffered and continues to suffer injuries, including denial of her right to have her case heard in her tribal court and the consequent loss of property and financial hardship.

84. Plaintiff is entitled to declaratory and injunctive relief requiring Defendants to respect tribal sovereignty and the tribal exhaustion doctrine.

COUNT V - CONSPIRACY TO VIOLATE CIVIL RIGHTS

(Against All Defendants under 42 U.S.C. § 1985(3))

18

85. Plaintiff incorporates by reference paragraphs 1 through 63 as if fully set forth herein.

86. Defendants individually and collectively have conspired to deprive Plaintiff of her constitutional rights to due process and equal protection of the laws.

87. Upon information and belief, Defendant Madison Sample has improperly influenced the Defendant Judges and/or court personnel through bribery or other improper means, creating a conspiracy to deprive Plaintiff of her rights.

88. The conspiracy has been evidenced by the systematic refusal of the Circuit Court to enforce its orders against Defendant Madison Sample while simultaneously denying Plaintiff due process, ignoring her motions to hold Defendant Madison Sample in contempt.

89. The conspiracy has been motivated, at least in part, by discriminatory animus against Plaintiff based on her disability status and her tribal membership.

90. As a direct and proximate result of this conspiracy, Plaintiff has suffered and continues to suffer injuries, including loss of property, financial hardship, and emotional distress.

91. Plaintiff is entitled to declaratory and injunctive relief, as well as compensatory damages and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

92. The Plaintiff alleges judicial interference with her obtaining adequate legal representation with former attorneys and obtaining a new attorney for any of her ongoing court cases.

19

93. Around January 2025, Jackie Sample's personal injury attorney filed a fraudulent/misleading motion to withdraw from the petitioner's personal injury case, withdrawing from representing Jackie Sample on both of her personal injury cases during a crucial period of the case.

94. Although the personal injury attorney filed a motions containing falsified statement, The Judge presiding over the petitioner's personal injury case granted the attorney's withdrawal.

95. Legal Shield abruptly cancelled my subscription without cause. Legal Shield's cancellation happened shortly after contacting Legal Shield seeking representation in my civil complaint against officers of the court

96. Prairie State Legal Aid first stated they couldn't take my case because I am located in Burr Ridge. Then Prairie State Legal Aid Stated they were unable to take my case because I have too many assets, although they are aware of my indigent status.

97. METROPOLITAN Legal Aid stated they were unable to represent me due to a conflict of interest, stating they had previously been contacted about my case.

98. Many attorneys stating "I can't risk my other clients in DuPage", "I have to practice in DuPage County", "If you get your case moved, then I'll take it" "I have to go before other judges in DuPage"

99. An attorney who agreed to take my case. I was forced to tell the court the name of the attorney. Shortly after being forced to divulge the identity of the attorney, I received an email from the attorney stating he could no longer take my case.

100.     Attorney Dean Taradash stating that opposing counsel, John Conniff would file another motion against me if I did not retain Dean Taradash "bring him unto the team". Upon information and belief, John Conniff's actions were sanctioned by the judge.

101.     An attorney telling me I'd be held in contempt on a pending motion regardless if the motion was fraudulent. The attorney stated the judge was going to hold me in contempt regardless of the motion's validity and I may as well accept it.

102.     Although my case was viewed as a high conflict divorce case, many attorneys were initially eager to accept the case. Many welcomed taking on a case like mine stating they would correct the inactions of my former attorneys.

103.     Shortly after meeting with many attorneys who were initially eager to not only provide legal representation, each attorney expressed concern regarding my spouse's financial affidavits and my former attorney's underrepresentation.

104.     A few days later, these same attorney who eagerly agreed to represent me then contacted me either by phone or email. Each informed me that they could no longer proceed due to a sudden medical emergency."

105.     Attorneys eagerly accepting my case then days later contacting me claiming a medical emergency was a repeated pattern.

106.     One attorney stated "Judge Orel retaliates, I would never take a case in his courtroom".

107.     Many attorneys who were once eager to take my case abruptly changed their mind within days, stating:

a. "I'm sorry, I can't help you. I can't risk my other clients, I have too much to lose".

b. "This is how I make a living. This is how I feed my family. I'm sorry, I'm unable to help you."

c. "I can't get involved. I can't put my other clients at risk."

d. "I am sorry this is happening to you. I have other cases in DuPage. I can't get involved"

e. "I'm sorry this is happening but I can't take this on. I will tell you how to file a complaint with the JIB and ARDC"

f. "I can't take this case. It's too much going on. Find an attorney far away from DuPage and Chicago. Look for an attorney in a neighboring state that practice law in Illinois"

g. I can't take the case, but you should look for an attorney downstate that don't practice anywhere near DuPage".

Violation of Civil Rights Under 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law

V. Under 18 U.S.C. § 242, it is a federal crime for any person acting "under color of law", including judges, law enforcement, prosecutors, and other government officials to willfully deprive any individual of rights, privileges, or immunities secured by the Constitution or laws of the United States. The statute applies regardless of whether the actor is state or federal and is intended to hold public officials accountable for misconduct that violates civil rights. The actions described herein constitute willful

22

deprivation of Plaintiff's constitutional and statutory rights while acting under color of law, in violation of this provision.

VI. Limits of Judicial Immunity Under 42 U.S.C. § 1983

Judges are generally immune from civil suits for actions taken in their judicial capacity. However, this immunity is not absolute. Judicial immunity does not apply when a judge:

- Acts outside of their jurisdiction;
- Engages in conduct that is nonjudicial in nature;
- Violates clearly established federal statutory or constitutional rights while acting under color of law.

As established in Stump v. Sparkman, 435 U.S. 349, 356–57 (1978), and clarified in Mireles v. Waco, 502 U.S. 9, 11–12 (1991), judges are not immune for actions taken in the clear absence of jurisdiction or for nonjudicial acts.

VII. Moreover, under 42 U.S.C. § 1983, judicial immunity does not protect officials who, while acting under color of law, willfully deprive a person of federally protected rights outside their judicial role. These principles apply directly to the conduct at issue.

VIII. Judicial Misconduct and Collusion under Color of Law: DuPage County Judiciary

Plaintiff submits that the conduct of Judges Kenton Skarin, James Orel, Neal Cerne, and Susan Alvarado of the DuPage County Circuit Court constitutes a pattern of egregious judicial misconduct, rising to the level of a coordinated conspiracy under the

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.

IX. Throughout the course of one divorce proceeding, these judges have:

- Failed to enforce valid and lawful court orders;

- Ignored material evidence and obstructed the discovery process;

- Denied Plaintiff's constitutional right to due process and equal protection

- Intentionally interfered with Plaintiff's ability to retain legal counsel, including intimidating Plaintiff's legal representatives (as documented in court transcripts);

- Shielded the opposing party, Dr. Madison Sample, from consequences despite his perjury, financial fraud, and violation of multiple court orders, refusal to show up to court although court ordered to do so and more;

- Refused to require truthful financial disclosures or asset verification from Madison Sample, enabling the dissipation of hundreds of thousands and concealment of millions of dollars in marital assets;

- Appointed an unqualified individual, a divorce attorney with no financial expertise as a purported "financial expert," in what appears to assist in a intentionally cover-up of Dr. Sample's fraudulent activities and marital dissipation in violation of court orders.

X. This sustained misconduct supports a finding of civil RICO conspiracy and collusion under color of law. The judges' actions have been administrative, coercive, retaliatory, and conspiratorial in nature, not judicial and therefore fall outside the scope of judicial immunity.

24

XI. Nonjudicial Conduct and Retaliation

Plaintiff further alleges the following nonjudicial and unconstitutional acts committed by the aforementioned judges:

- Intimidation and unreasonable threats of incarceration for engaging in protected First Amendment activity, including being interviewed by independent journalists;

- Retaliation for speaking out about judicial misconduct and advocating for her rights as a pro se litigant;

- Targeted Bullying, Judges targeted the plaintiff while showing bias to her spouse, Madison Sample. Using court bailiffs to harass Plaintiff and her supporters,

- Witness tampering, including the use of court bailiffs to harass Plaintiff and her supporters;

- Intentional infliction of emotional distress, and enabling prolonged financial and emotional abuse by refusing to enforce lawful court orders and hold Dr. Sample accountable for violating them;

- Failure to report attorney misconduct as required by the Illinois Code of Judicial Conduct and Supreme Court Rules, despite receiving notice of fraud, being made aware of court order alteration by opposing counsel, being made aware of fraudulent motions being filed by opposing counsel.

- Acceptance and endorsement of fraudulent financial affidavits and filings by Dr. Sample and his counsel, including knowingly proceeding on false pretenses and fraudulent financial affidavits and documentation.

25

- Conspiring to initiate an unlawful petition for guardianship against Jackie Sample

- Consistently Conspiring going well beyond protecting the Rights of Madison Sample while consistently violating Jackie Sample's Rights for over two years

XII. These acts, in their totality, strip these judges of the protections afforded by judicial immunity and render them liable under:

- 42 U.S.C. § 1983 – Deprivation of civil rights under color of law;

- Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.) – Denial of reasonable accommodations and access to justice;

- 18 U.S.C. § 242 – Criminal deprivation of rights under color of law;

- RICO, 18 U.S.C. §§ 1961–1968 – Civil conspiracy to obstruct justice and defraud Plaintiff of millions in marital assets and equity in her primary home;

- Violating the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment.

XIII. Conclusion

Judicial immunity does not apply to nonjudicial acts, conduct taken in the absence of jurisdiction, or retaliatory and conspiratorial behavior intended to suppress constitutional rights, inflict harm, or deny fair access justice in the courts. The conduct of these judges has caused irreparable harm, emotional trauma, financial devastation, and systemic obstruction of justice.

26

Accordingly, Plaintiff respectfully submits that these officials are not shielded by judicial immunity, and must be held accountable under federal civil rights law, constitutional provisions, and federal criminal statutes.

Jackie Sample

Notary

RAVINDER CHAHAL
Official Seal
Notary Public - State of Illinois
My Commission Expires Mar 2, 2026

27

PRAYER FOR RELIEF WHEREFORE, Plaintiff Jackie Sample respectfully prays that this Honorable Court grant the following relief:

1. Emergency Injunctive Relief and Contempt Order

Issue emergency injunctive relief and an order holding Petitioner Madison Sample in contempt of court including issuance of a bench warrant to prevent further financial harm and irreparable financial and business loss and emotional injury.  As a direct and proximate result of the unlawful conduct of Defendants Judges Kenton Skarin, James Orel, Neal Cerne, and Susan Alvarado, committed outside the scope of judicial authority and in clear absence of jurisdiction, Plaintiff has suffered ongoing egregious intentional infliction of emotional distress domestic abuse and financial harm for more than two years.

 2. Findings of Constitutional and Statutory Violations

Declare that the acts and omissions of Dr. Madison Sample and the judicial Defendants including collusion with opposing and former counsel, suppression of material financial evidence, refusal to enforce their own lawful court orders, coercive threats of incarceration, Targeted bullying, and systemic sex-based, racial, and disability-related bias, as well as obstruction of Plaintiff's right to self-representation and obstruction of obtaining adequate legal representation, and obstruction of religious practice constitute violations of Plaintiff's clearly established rights under:

- First Amendment – Freedom of speech and ability to practice religion;

- Fifth and Fourteenth Amendments – Due process and equal protection under the law;

- 42 U.S.C. § 1983 – Civil action for deprivation of rights under color of law;

28

- 18 U.S.C. § 242 – Criminal deprivation of rights under color of law;
- 42 U.S.C. § 12131 et seq. – Title II of the Americans with Disabilities Act;
- Federal tribal sovereignty principles and the tribal exhaustion doctrine.

3. Further, these acts violate international human rights obligations recognized by the United States, including:

- International Covenant on Civil and Political Rights (ICCPR) – Guarantees due process, equal protection, freedom of expression, and fair trial rights (ratified by the U.S.);
- Convention Against Torture (CAT) – Prohibits cruel, inhuman, or degrading treatment or punishment (ratified by the U.S.
- Convention on the Elimination of All Forms of Racial Discrimination (CERD) – Prohibits racial and ethnic discrimination (ratified by the U.S.);
- Convention on the Rights of Persons with Disabilities (CRPD) – Supports disability rights consistent with the ADA (signed but not ratified by the U.S.).

4. These violations, committed under color of state law but outside the protections of judicial immunity, have caused Plaintiff severe emotional distress, financial loss, reputational damage, religious interference, and substantial obstruction of legal rights leading to significant financial loss.

5. Plaintiff respectfully requests the following relief:

A. Jurisdiction and Removal

29

Assume jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 1443;

Order removal of Case No. 2023-DN-129 from the Circuit Court of the Eighteenth

Judicial Circuit, DuPage County, Illinois, to this Court for adjudication.

B. Declaratory Judgment

Declare that Defendants—including judicial officers and court personnel violated

Plaintiff's rights under:

42 U.S.C. § 1983 – Provides a civil remedy for individuals whose constitutional or

federal rights are violated by someone acting under color of state law.

18 U.S.C. § 242 – Criminal statute prohibiting the willful deprivation of constitutional or

legal rights under color of law.

42 U.S.C. § 12131 et seq. (ADA Title II) – Prohibits public entities from discriminating

against individuals with disabilities in services, programs, or activities.

First and Fourteenth Amendments;

Federal tribal law;

International human rights treaties to which the United States is a party, including the

ICCPR, CAT, and CERD.

C. Injunctive Relief

Issue preliminary and permanent injunctive relief, including but not limited to:

Prohibiting Defendants from further acts of discrimination, retaliation, collusion, or

disparate treatment based on: Possible contracts written or verbal with Defendant,

Madison Sample

- o     Sex, race, ethnicity, or national origin;

- o     Disability status (actual or perceived);

o      Pro se litigant status;

o      Actual or perceived tribal affiliation.

6. Requiring Defendants to:

o      Respect tribal sovereignty and the tribal exhaustion doctrine under federal law.

7.  Provide reasonable accommodations under the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794, including accommodations for ADHD-related communication impairments, consistent with Volume 5, § 255 of the Guide to Judiciary Policy and the constitutional guarantee of access to the courts.

8.  Cease all retaliation and discrimination against Plaintiff for exercising federally protected rights, including but not limited to filing ADA accommodation requests, civil rights complaints, and federal legal actions.

9.  Preserve and disclose all relevant case-related records and evidence in their possession or control, including but not limited to financial disclosures, transcripts, internal communications, and judicial decisions that form the basis for Plaintiff's constitutional claims, as required under the Federal Rules of Civil Procedure and the Due Process Clause of the Fourteenth Amendment.

31

10. Declare that the conduct of the judicial defendants, as alleged herein, violated Plaintiff's rights under the U.S. Constitution and federal law, and that such conduct was not judicial in nature or was taken in the clear absence of jurisdiction, thereby not protected by absolute judicial immunity.

11. Issue injunctive relief to prevent further irreparable harm to Plaintiff, including but not limited to:(a) staying enforcement of state court actions that were taken in violation of federal rights; (b) preserving Plaintiff's access to housing and health care while federal claims are adjudicated; and (c) ensuring Plaintiff is not subjected to further discriminatory or unconstitutional treatment in ongoing or future proceedings.

12. Refer documented misconduct to the appropriate authorities, including the Illinois Judicial Inquiry Board, the Office of Inspector General, and the U.S. Department of Justice Civil Rights Division, for investigation of constitutional, ethical, and statutory violations.

13. Compelling Defendants Judges Kenton Skarin, James Orel, Neal Cerne, and Susan Alvarado to:

14. Plaintiff respectfully requests that this Court issue declaratory, injunctive, and equitable relief against the above-named judicial defendants, in their individual capacities and to the extent that their actions constituted nonjudicial conduct, undertaken outside the protection of judicial immunity,

in violation of Plaintiff's federally protected rights. Plaintiff specifically seeks to:

15. Compel disclosure and preservation of all ex parte communications, internal communications, and sealed records relating to Plaintiff's case (DuPage County Case No. 2023DN000129), particularly those between the Defendants and opposing counsel, as such communications are directly relevant to Plaintiff's claims under the First and Fourteenth Amendments, ADA, and RICO.

16. Enjoin all ongoing and future retaliatory acts or selective enforcement by these judicial officers, and all other officer of the court at the DuPage County Courthouse, including threats of incarceration, refusal to enforce court orders favorable to Plaintiff, or actions taken in reprisal for Plaintiff's invocation of ADA accommodations, objections to misconduct, or pursuit of federal redress.

17. Order Defendants to produce and preserve all relevant evidence, including hearing transcripts, financial affidavits, docket entries, and judicial orders where evidence was suppressed, altered, or fraudulently accepted without scrutiny, in violation of Plaintiff's rights under the Fourteenth Amendment, 42 U.S.C. § 1983, and 42 U.S.C. § 12132 (ADA Title II).

18. Enjoin further interference with Plaintiff's access to federal protections, including the right to petition for redress, the right to be free from disability-based discrimination in court proceedings, and the right to due process and equal protection under law, especially where Plaintiff has been treated less favorably based on race, sex, and disability status, in violation of the Equal Protection Clause and federal anti-discrimination statutes.

19. Declare that Defendants' nonjudicial acts—including willful refusal to enforce lawful financial orders, enabling perjury and fraud, selective denial of relief, and discriminatory treatment based on race, gender, and disability—constitute violations of the U.S. Constitution, the Americans with Disabilities Act, the Rehabilitation Act, and actionable misconduct under:

o  42 U.S.C. § 1983 (deprivation of rights under color of law);

o  42 U.S.C. § 1985(3) (conspiracy to deprive civil rights based on race or class-based animus);

o  and 18 U.S.C. §§ 1961–1968 (RICO), as part of a pattern of unlawful conduct used to obstruct justice, deprive Plaintiff of protected interests, and shield the misconduct of Defendant Madison Sample.

20. Refer the matter to the U.S. Department of Justice Civil Rights Division and the Illinois Judicial Inquiry Board for further investigation into allegations of judicial misconduct under color of law, aiding and abetting financial and emotional abuse, and engaging in racially and sexually discriminatory practices that have inflicted long-term

34

harm upon Plaintiff.

21.  Compelling Defendant Madison Sample to:

Cease all actions that violate Plaintiff's federally protected rights, including constitutional

rights under the Fourteenth Amendment (Due Process and Equal Protection), and rights

under federal statutes including the Americans with Disabilities Act, 42 U.S.C. § 12101

et seq., and 42 U.S.C. § 1983.

22.  Produce full and complete financial disclosures relevant to the allegations of

concealment, fraud, and dissipation of marital property, including but not limited

to: (a) all business interests, including CareSkore and Sample Anesthesia; (b)

digital currency and cryptocurrency accounts; (c) real and personal property

holdings; and (d) financial records from January 1, 2023, to present.

23. Preserve all marital and financial assets relevant to this litigation and refrain

from further dissipation, concealment, or transfer of such assets during the

pendency of these proceedings.

24.Disclose and reinstate health insurance coverage and identify any life insurance

policies from which Plaintiff was wrongfully removed, in connection with Plaintiff's

constitutional and statutory rights, including claims under 42 U.S.C. § 1983 and

potential RICO claims.

a. Compensate Plaintiff for the unlawful deprivation and concealment of marital assets, including assets misappropriated or fraudulently withheld in violation of court orders, where such actions were facilitated by conspiracy or color of law, as alleged under 42 U.S.C. § 1983 and 18 U.S.C. §§ 1961–1968 (RICO).

b. Relief Sought Against Defendant Madison Sample

Plaintiff respectfully seeks both injunctive and monetary relief against Defendant Madison Sample for his role in a pattern of unlawful conduct that has resulted in the deprivation of Plaintiff's constitutionally and statutorily protected rights. Specifically, Plaintiff requests that this Court:

25. Enjoin Defendant Madison Sample from engaging in any further actions that violate Plaintiff's federally protected rights under the Fourteenth Amendment (Due Process and Equal Protection), the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and 42 U.S.C. § 1983, including ongoing deprivation of financial security, healthcare access, and equal protection in legal proceedings.

26. Compel full financial disclosure in connection with Plaintiff's claims of fraudulent concealment, asset dissipation, and civil conspiracy in violation of 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. Such disclosures shall include, but are not

limited to: (a) ownership interests in businesses, including CareSkore and Sample Anesthesia; (b) all digital assets and cryptocurrency holdings; (c) domestic and international bank accounts and property holdings; and (d) financial records from January 1, 2023, to the present.

27. Preserve and prevent the further concealment, transfer, or dissipation of marital assets or business income that are material to Plaintiff's claims, pending resolution of this federal litigation.

28. Disclose and reinstate Plaintiff's access to health insurance, and fully identify any life insurance policies from which Plaintiff was unlawfully removed, as such deprivation has directly impacted Plaintiff's medical access and well-being in violation of federal protections, including the ADA and 42 U.S.C. § 1983.

29. Award compensatory damages to Plaintiff for the intentional deprivation of property without due process, economic harm, and emotional distress resulting from Defendant's conduct, including collusion with judicial officers under color of law and acts undertaken in furtherance of a civil conspiracy in violation of federal law.

30. Award punitive damages, as permitted by law, to deter Defendant and others acting in concert from continuing or replicating similar unlawful conduct.

31. Compensatory Damages against Defendant Madison Sample

Plaintiff respectfully seeks compensatory damages from Defendant Madison Sample for his egregious, intentional, and unlawful actions that resulted in extensive harm to

Plaintiff's constitutional, statutory, financial, and human rights. Acting individually and in conspiracy with judicial actors under color of law, Madison Sample willfully engaged in conduct that deprived Plaintiff of due process, equal protection, property rights, and access to medical care.

32. Pursuant to 42 U.S.C. § 1983, § 1985(3), the Americans with Disabilities Act (ADA), and other applicable federal law, Plaintiff seeks monetary compensation for the following non-exhaustive list of harms:

- Intentional infliction of emotional distress and irreparable psychological harm;

- Domestic violence, coercive control, and prolonged abuse, exacerbated by misuse of legal proceedings;

- Financial fraud, including misappropriation, concealment, and dissipation of marital property;

- Retaliation and economic abuse, including deprivation of spousal support and housing security, food, clothing, utilities medical care, all basic human necessities;

- Loss of medical access through unlawful removal from health insurance;

- Damage to Plaintiff's credit, reputation, and professional opportunities;

- Loss of income and assets related to business ventures and properties held individually, jointly, and aquired during the marriage, etc.

- Violation of religious liberty, access to court, and denial of accommodations under the ADA, right to liberties and life without Domestic Abuse. Comparable federal case law supports substantial damage awards under similar circumstances:

38

- Morris v. Eversley, 282 F. Supp. 2d 196 (S.D.N.Y. 2003) – $2 million for emotional distress and constitutional violations;

- Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004) – $1 million for wrongful detention and abuse;

- Phillips v. Monroe County, 311 F.3d 369 (5th Cir. 2002) – affirming damages for abuse under color of law.

Plaintiff reserves the right to amend this claim and specify additional or updated damage amounts as evidence is revealed through discovery and trial.

33.. Punitive Damages against Defendant Madison Sample

Plaintiff further seeks punitive damages against Defendant Madison Sample for his willful, malicious, and reckless disregard of Plaintiff's federally protected rights. His conduct includes but is not limited to:

34. Deliberate concealment and fraudulent affidavits submitted under penalty of perjury;

35. Ongoing financial coercion and intentional deprivation of Plaintiff's medical coverage;

36. Willful defiance of lawful court orders, including orders of support and property division;

37. Collusion with judicial actors to suppress evidence and retaliate against Plaintiff.

38. Such conduct justifies an award of punitive damages to deter similar misconduct by Defendant and others acting with impunity under legal protection.

39. Punitive damages are appropriate under 42 U.S.C. § 1983 and related doctrines when defendants act with callous indifference to the rights of others. Plaintiff respectfully requests that this Court award an amount sufficient to punish and deter such behavior.

40. Compelling Defendant Madison Sample to Disclose and Preserve Assets Plaintiff respectfully requests that this Court issue an order compelling Defendant Madison Sample to:

41. Produce full and complete financial disclosures, including:

o Ownership interests in businesses including CareSkore and Sample Anesthesia;

o Digital currency and cryptocurrency holdings;

o Real estate and property holdings, domestic and international;

o All bank, brokerage, and investment account statements from December 7, 2023 to present.

40

42. Refrain from further dissipation, concealment, or transfer of any marital or joint assets during the pendency of these proceedings;

43. Reinstate Plaintiff's health insurance and disclose any active or canceled life insurance policies in which Plaintiff was a beneficiary;

44. Comply with all prior financial and property-related court orders, and cease obstruction of Plaintiff's access to marital assets, financial support, and medical resources.

45. These acts are necessary to enforce Plaintiff's rights under 42 U.S.C. § 1983 and § 1985(3), the ADA, and to prevent ongoing irreparable harm caused by Defendant's misconduct.

46. Additional Declaratory and Injunctive Relief against Defendant Madison Sample

47. Plaintiff respectfully seeks further declaratory and injunctive relief to:

48. Prevent Defendants from engaging in any future coercion, harassment, retaliation, or obstruction of Plaintiff's rights under federal law;

49. Enforce previously entered financial, health, and property-related orders;

50. Compel ongoing ADA compliance with respect to Plaintiff's access to legal processes, communication aids, and accommodation requests;

41

51. Ensure Plaintiff's ability to retain and communicate with legal counsel, and fairly participate in all legal proceedings.

Such relief is necessary to prevent continued abuse and preserve Plaintiff's constitutional rights.

52. Other Relief against Defendant Madison Sample

Plaintiff respectfully requests that this Court grant any such further relief as it deems just, equitable, and necessary to:

- Redress ongoing and future harm stemming from Defendant's conduct;
- Prevent future violations of Plaintiff's constitutional and statutory rights;
- Remedy irreparable harm to Plaintiff's health, emotional well-being, financial stability, and legal interests;

52. Compensate for all losses caused by Defendant's pattern of coercive control, fraud, and malicious interference with Plaintiff's life and liberty.

53. This relief is authorized under 28 U.S.C. § 2201, 42 U.S.C. §§ 1983 and 1985, the ADA, and the Court's equitable powers to redress constitutional violations and protect the integrity of federal proceedings.

54. Relief Sought Against Defendants Judges Kenton Skarin, James Orel, Neal Cerne, and Susan Alvarado, Plaintiff respectfully seeks monetary, declaratory, and equitable relief for the egregious harm inflicted by the Defendants through sustained nonjudicial misconduct, willful collusion, and repeated violations of Plaintiff's civil and constitutional rights. The conduct at issue was not merely negligent but exhibited a pattern of retaliatory, discriminatory, and oppressive abuse under color of law that rises to the

42

level of criminal complicity, facilitating Domestic abuse, Financial abuse, etc.

Accordingly, Plaintiff requests that this Court:

55. Declare that Defendants, in their official and individual capacities and acting outside the scope of judicial immunity, engaged in nonjudicial acts that constitute:

o      Violations of Plaintiff's Due Process and Equal Protection rights under the Fourteenth Amendment;

o      Retaliation and discriminatory denial of disability accommodations under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq. and the Rehabilitation Act of

o      Civil conspiracy and deprivation of civil rights under 42 U.S.C. §§ 1983 and 1985(3);

o      Participation in a racketeering enterprise under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, by aiding and abetting Madison Sample's ongoing financial fraud;

o      Racial and gender-based discrimination in violation of federal Equal Protection guarantees, where judicial actors exhibited a consistent pattern of sexist disregard and disparate treatment rooted in Plaintiff's race and gender.

Award compensatory damages for:

o      Intentional infliction of emotional distress caused by prolonged exposure to judicially enabled domestic violence, systemic inaction, and gas lighting, resulting in psychological trauma and clinical distress;

43

o    Damage to Plaintiff's personal credit and financial standing due to Defendants' refusal to enforce court orders or restrain asset dissipation, despite possessing evidence of deliberate fraud and noncompliance;

o    Lost business and employment income due to reputational damage and prolonged instability caused by the court's enabling of malicious litigation tactics;

o    Physical and psychological suffering as a direct consequence of having essential medical care, income, and housing withheld or obstructed by judicial actors operating in concert with an abusive spouse;

o    Irreparable harm to Plaintiff's dignity, safety, and equal standing under the law, sustained through repeated denials of basic court access, discriminatory treatment, and abuse of process.

56. Award punitive damages to punish and deter future misconduct by judicial officers who act with deliberate indifference, malice, or reckless disregard for federally protected rights.

Enjoin the named Defendants from engaging in or authorizing further:

o    Retaliation, coercion, or selective enforcement targeting Plaintiff;

o    Suppression or alteration of pleadings, motions, or judicial orders;

o    Discriminatory denial of disability accommodations, including communication-related accommodations for ADHD.

Compel production and preservation of all:

o    Ex parte communications, sealed documents, docket entries, and internal memoranda showing potential coordination with opposing counsel or other parties;

44

     o     Judicial communications or orders relating to the suppression of financial evidence, unlawful threats of incarceration, or obstruction of appellate remedies.

Refer this matter to appropriate oversight and prosecutorial authorities, including:

     o     The U.S. Department of Justice Civil Rights Division;

     o     The Office of Inspector General for the Judiciary;

     o     The Illinois Judicial Inquiry Board, for formal investigation and disciplinary proceedings.

57. Damages and Reservation of Amount Specification

Plaintiff seeks compensatory and punitive damages for the egregious, unlawful, and unconstitutional acts committed by the named judicial Defendants, acting outside the bounds of judicial immunity and under color of law. These acts include violations of Plaintiff's rights under the Fourteenth Amendment (due process and equal protection), the Americans with Disabilities Act (ADA), the Rehabilitation Act, and federal civil rights statutes including 42 U.S.C. §§ 1983 and 1985(3).


58. The severity and continuing impact of Defendants' misconduct—including emotional trauma, reputational harm, financial deprivation, and prolonged exposure to domestic abuse—demonstrate the need for significant monetary relief. These harms have been compounded by unlawful collusion, ex parte communications, selective enforcement, and systemic disregard for Plaintiff's rights.

Similar awards in federal civil rights litigation support substantial damages in cases involving wrongful abuse of authority and misconduct by public officials:

- Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004): $1 million awarded for emotional distress caused by wrongful detention and official misconduct;

- Morris v. Eversley, 282 F. Supp. 2d 196 (S.D.N.Y. 2003): $2 million in compensatory damages for emotional distress and civil rights violations;

- Phillips v. Monroe County, 311 F.3d 369 (5th Cir. 2002): damages upheld for egregious abuse of power by officials under color of law.

These precedents reflect federal courts' recognition that deliberate misconduct by public officials—including judges acting in nonjudicial capacities—warrants meaningful financial accountability.

59. Plaintiff respectfully reserves the right to amend this Complaint and specify exact damage amounts following discovery, expert analysis, and the presentation of full evidentiary records. The following list is non-exhaustive and represents damages currently known; additional damages will be entered as they are confirmed through litigation:

60. Compensatory Damages

Compensatory Damages and Reservation of Amount Specification

Plaintiff respectfully seeks an award of compensatory damages for the extensive, ongoing harm resulting from the egregious, unlawful, and unconstitutional acts committed by Defendants Judges Kenton Skarin, James Orel, Neal Cerne, and Susan Alvarado, each of whom acted outside the bounds of judicial immunity and under color of law in their nonjudicial capacities.

61. These Defendants willfully participated in, permitted, or failed to prevent a pattern of misconduct that included:

- Violation of Due Process and Equal Protection under the Fourteenth Amendment;

- Disability-based discrimination and retaliation, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and the Rehabilitation Act, 29 U.S.C. § 794;

- Civil conspiracy to deprive rights under 42 U.S.C. §§ 1983 and 1985(3);

- Financial and procedural fraud upon the court, including the knowing concealment of assets and repeated collusion with Defendant Madison Sample;

- Systemic denial of meaningful court access, legal redress, and fundamental fairness.


62. The Defendants' conduct resulted in severe personal, professional, and financial injury to the Plaintiff, including irreparable psychological harm, emotional distress, loss of property, destruction of business operations, and persistent exposure to domestic violence, all under the protection or inaction of the court.

Plaintiff cites the following precedents as legal justification for a substantial compensatory award:

- Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004): $1 million awarded for emotional distress resulting from wrongful detention and official misconduct;

- Morris v. Eversley, 282 F. Supp. 2d 196 (S.D.N.Y. 2003): $2 million awarded for emotional distress and civil rights violations;

- Phillips v. Monroe County, 311 F.3d 369 (5th Cir. 2002): damages upheld for egregious abuse by public officials under color of law.

These cases support the federal judiciary's role in holding officials—including judicial officers acting outside their jurisdiction—financially accountable for serious misconduct and constitutional violations.

63. Non-Exhaustive List of Compensatory Damages Sought

Plaintiff respectfully reserves the right to amend this Complaint and specify exact damage amounts following discovery, expert evaluation, and evidentiary review. The following damages are known at this time:

- Intentional Infliction of Emotional Distress, prolonged emotional abuse, and irreparable psychological harm;

- Fraud upon the court, including knowing acceptance of false pleadings and fraudulent financial disclosures;

- Constitutional and civil rights violations, including race, gender, and disability-based discrimination;

- Financial, business, and housing losses, including:

  o ~$300,000 – 641 W. 119th St., Chicago, IL;

  o ~$150,000 – 645 W. 119th St., Chicago, IL;

  o Fines and foreclosure at 7439 S. Prairie Ave, Chicago, IL;

  o Property tax sales of: 645, 647, 649, and 651–53 W. 119th St., Chicago, IL;

- o    Rental/business income loss from all properties above.

- •    Loss of professional reputation, including:

- o    Interference with Plaintiff's licensed general contracting and development businesses;

- o    Loss of multiple LLCs and contracts;

- o    Impaired credit, defamation, and reduced financial stand

- o    Reputational harm in the nonprofit, religious, and professional community.

- •    Violation of religious rights, access to justice, and interference with adequate legal representation.


64.  Punitive Damages

Plaintiff also seeks an award of punitive damages against all named Defendants—including Judges Kenton Skarin, James Orel, Neal Cerne, and Susan Alvarado—to the extent they acted outside the protections of judicial immunity and engaged in willful, malicious, and grossly negligent conduct under color of law.

Punitive damages are warranted under the following authorities and principles:

- •    Smith v. Wade, 461 U.S. 30 (1983): punitive damages are available in § 1983 cases where a defendant acted with "reckless or callous indifference to the federally protected rights of others";

- •    Zelman v. Simmons-Harris, 536 U.S. 639 (2002): punitive damages may apply when public officials abuse their position to deprive individuals of constitutional protections;

- 42 U.S.C. § 1983: permits punitive damages where officials act outside their official capacity and with malice or gross disregard for individual rights;

- 18 U.S.C. §§ 1961–1968 (RICO): allows treble damages and punitive recovery where parties are shown to have engaged in a racketeering enterprise that includes fraud, coercion, and obstruction of justice.

65. Grounds for Punitive Damages

Defendants' misconduct includes:

- Knowingly facilitating and concealing financial fraud by Madison Sample;

- Engaging in or allowing ex parte communications, suppression of evidence, and selective denial of Plaintiff's pleadings;

- Retaliating against Plaintiff's use of ADA accommodations;

- Refusing to enforce orders beneficial to Plaintiff while selectively enforcing punitive actions;

- Systemic racial, gender-based, and disability-based discrimination resulting in economic devastation, emotional breakdown, and prolonged trauma;

- Intentional and coordinated misconduct, obstructing due process and redress, amounting to a racketeering enterprise under RICO.

66. The actions of the Defendants were not merely negligent—they reflect deliberate, malicious intent to harm, silence, and disempower Plaintiff through abuse of legal process and authority.

Punitive damages are therefore necessary to:

50

- Deter similar misconduct by other public officials and judicial officers;

- Reaffirm that judicial office does not shield intentional unlawful acts;

- Serve as a strong public condemnation of institutional abuse and systemic discrimination.

67. Nominal Damages

- Plaintiff further seeks an award of nominal damages against all named Defendants to affirm the clear and unlawful violation of Plaintiff's constitutional, statutory, and civil rights, including those protected under the Fourteenth Amendment, the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), the Rehabilitation Act (29 U.S.C. § 794), and 42 U.S.C. §§ 1983 and 1985(3).

- Even where specific compensatory damages may not be fully quantifiable at this stage of litigation, nominal damages are appropriate and necessary to vindicate the principle that no violation of fundamental rights should go unacknowledged by the Court.

- As affirmed in Carey v. Piphus, 435 U.S. 247 (1978), the award of nominal damages serves to recognize the importance of constitutional protections, even where actual financial harm cannot yet be measured. It further supports declaratory and injunctive relief and underscores the gravity of the Defendants' misconduct.

- Plaintiff respectfully requests that nominal damages be awarded in accordance with federal law, to ensure a judicial finding that Plaintiff's rights were violated as a matter of law.

51

68. Attorneys' Fees and Costs

Award attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988, including

reasonable expenses incurred by Plaintiff as a pro se litigant to the extent permitted by

law.

69. Additional Declaratory and Injunctive Relief

Plaintiff respectfully requests that this Court grant such additional declaratory and

injunctive relief as may be necessary and proper to:

- Prevent ongoing and future retaliation, targeted harassment, coercion, or interference by Defendants Judges Kenton Skarin, James Orel, Neal Cerne, and Susan Alvarado, including interference with Plaintiff's right to obtain legal representation;

- Enforce all valid financial, health-related, and property orders previously entered but unlawfully disregarded, obstructed, or selectively enforced by Defendants;

- Compel full compliance with the Americans with Disabilities Act (ADA) and the Rehabilitation Act, including appropriate communication access, courtroom accommodations, and procedural modifications;

- Ensure Plaintiff's meaningful access to the courts, including the ability to retain counsel, file motions, access court records, and fully participate in all legal proceedings without discrimination, retaliation, or obstruction.

Grant any additional declaratory and injunctive relief necessary to:

- Prevent future retaliation, Targeted bullying, coercion, interference with me obtaining legal representation and any other unlawful acts or misconduct by Judges Kenton Skarin, James Orel, Neal Cerne, and Susan Alvarado;

52

- Enforce all financial, health, and property-related orders previously entered and unlawfully ignored;

- Compel full ADA compliance, including communication and access accommodations;

- Ensure Plaintiff's ability to secure counsel, file motions, and fairly participate in legal proceedings.


70. Other Relief

Plaintiff respectfully requests that this Court grant such other and further relief as it deems just, equitable, and proper in light of the egregious misconduct and constitutional violations alleged herein. This includes, but is not limited to, redress for:

- The ongoing intentional infliction of emotional distress;

- Irreparable harm to Plaintiff's physical and psychological health resulting from prolonged judicially enabled abuse and systemic misconduct;

- Severe financial injury, including but not limited to loss of income, dissipation of marital assets, property foreclosure, and credit damage;

- Violations of federally protected rights, including rights secured by the U.S. Constitution, the Americans with Disabilities Act (ADA), the Rehabilitation Act, and 42 U.S.C. §§ 1983 and 1985(3).

Plaintiff further prays that this Court retain jurisdiction to ensure full compliance with any orders issued and to provide any additional relief warranted by the evolving record and continued injury.

Grant such other and further relief as this Court deems just, equitable, and proper to redress the ongoing intentional infliction of emotional distress, irreparable harm to health, financial harm and constitutional violations alleged herein.

Respectfully submitted,

Dated: May 12, 2025

_____

JACKIE SAMPLE "Light Feather", Plaintiff Pro Se

9476 Falling Water DR E Burr Ridge, IL 60527

jackshousinganddevelopment@gmail.com

VERIFICATION

I, Jackie Sample, verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief

That on this date 12th day of May, 2025, JACKIE SAMPLE, executed the, in her stated capacity, the signatures on this instrument were signed as a free and voluntary act and deed for the uses and purposes mentioned therein.

Notary

54

RAVINDER CHAHAL
Official Seal
Notary Public - State of Illinois
My Commission Expires Mar 2, 2026