IC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

1:25-CV-5329

---

JACKIE SAMPLE, Plaintiff,

V. CIVIL NO:

MADISON SAMPLE JR; JUDGE NEAL CERNE;

FILED

JUN 10 2025 JXM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MEMORANDUM IN JUDGE SUSAN ALVARADO; SUPPORT JUDGE JAMES OREL; JUDGE KENTON SKARIN; THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT; DUPAGE COUNTY, ILLINOIS;

GN BANK; OLD NATIONAL BANK; Defendants.

---

Plaintiff, Jackie Sample "Light Feather," a member of the Guale Yamassee Tribal Republic, of the Native American Association of Nations Embassy, submits this Memorandum of Law in support of her Petition for Removal of Case No. 2023 DN 129 from the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois to this Court.

I. INTRODUCTION

This case presents substantial federal questions regarding tribal sovereignty, the right of tribal members to exhaust tribal remedies, violations of federally protected civil rights under the Americans with Disabilities Act, and constitutional violations of due process

55

and equal protection. The state court's refusal to honor Plaintiff's request to transfer her divorce proceedings to tribal court, failure to provide reasonable accommodations for her disabilities, and systematic denial of her right to be heard directly implicates federal law and warrants removal to this Court.

## II. LEGAL STANDARD FOR REMOVAL

A defendant may remove a civil action from state court to federal court if the action could have been filed originally in federal court. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

A case "arises under" federal law when the plaintiff's statement of his own cause of action shows that it is based upon federal law. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). Additionally, a state law claim may be removed to federal court if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

## III. THIS CASE PRESENTS SUBSTANTIAL FEDERAL QUESTIONS

A. Tribal Court Exhaustion Doctrine

The Supreme Court has established that principles of comity require federal courts to give tribal courts a "full opportunity to determine their own jurisdiction" before federal courts may intervene. National Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845, 857

56

(1985). This doctrine, known as the "tribal exhaustion rule," is rooted in federal policy supporting tribal self-government and self-determination. Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 14 (1987).

The same principles apply to state courts dealing with matters potentially subject to tribal jurisdiction. State courts must defer to tribal courts in matters involving tribal members where tribal courts have colorable jurisdiction. See Strate v. A-1 Contractors, 520 U.S. 438 (1997) (discussing tribal jurisdiction and exhaustion requirements).

In this case, Plaintiff properly invoked tribal court jurisdiction by filing a motion for removal to the Guale Yamassee Native American Association of Nations Embassy, Tribal Court. The Tribal Court has an established code and procedures for handling domestic relations matters involving tribal members. The state court's summary rejection of tribal court jurisdiction violates federal law and policy regarding tribal sovereignty and self-governance.

B. Americans with Disabilities Act

Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., prohibits discrimination against individuals with disabilities by public entities, including state courts. The ADA requires that public entities, including courts, make reasonable modifications to rules, policies, or practices when necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7).

Plaintiff has a qualifying disability that substantially limits several major life activities, including cognitive processing, communication, and managing stress in high-pressure environments. She has repeatedly requested reasonable accommodations for her

57

disabilities, which the state court has consistently ignored or denied, in violation of federal law.

The Supreme Court has specifically addressed the application of the ADA to state court systems in <u>Tennessee v. Lane, 541 U.S. 509 (2004)</u>, holding that Title II of the ADA validly abrogates state sovereign immunity in cases involving access to courts. The Court recognized that "the right of access to the courts" is a fundamental right protected by the Due Process Clause, and that "a variety of discriminatory policies and practices—including... failure to make reasonable accommodations... have denied [individuals with disabilities] this basic right." Id. at 522-23.

In this case, the state court's actions present clear violations of the ADA, including:

    1.    Failure to provide reasonable accommodations: The state court has refused to make reasonable modifications to its procedures to accommodate Plaintiff's disabilities, including providing additional time for her to present her motions, clear written instructions, and accommodations for her communication style.

    2.    Discriminatory exclusion: By dismissing Plaintiff's motions as "incomprehensible" without providing accommodations that would allow her to effectively communicate her legal arguments, the state court has effectively excluded her from meaningful participation in the judicial proc

    3.    Failure to ensure effective communication: The ADA requires public entities to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). The state court has failed to meet this obligation.

58

4. Pattern of discrimination: The consistent pattern of denying Plaintiff's motions and refusing to hear her arguments suggests a systemic failure to accommodate individuals with disabilities in the state court system.

These violations of the ADA present substantial federal questions that cannot be adequately addressed in state court, as they involve interpretation and application of federal disability rights law.

C. Due Process Violations

The Fourteenth Amendment to the United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The state court's actions in this case, including repeatedly refusing to hear Plaintiff's emergency motions, denying her the opportunity to present evidence of contempt, and summarily striking her motions without proper consideration, violate fundamental principles of procedural due process.

As the Supreme Court has recognized, "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" is the fundamental requirement of due process. Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). The state court's consistent refusal to provide Plaintiff with a meaningful opportunity to be heard raises substantial federal constitutional questions. The Supreme Court has also recognized that access to the courts is a fundamental right protected by the Due Process Clause.

Bounds v. Smith, 430 U.S. 817, 828 (1977).

59

By systematically denying Plaintiff the opportunity to be heard on her motions and to present evidence of Defendant Sample's contempt, the state court has effectively denied her this fundamental right.

D. Equal Protection Violations

The Fourteenth Amendment also guarantees equal protection of the laws. The state court's disparate treatment of Plaintiff based on her status as a pro se litigant, her disability status, and her tribal membership raises substantial federal questions regarding equal protection.

The Supreme Court has recognized that disparate treatment based on disability can violate the Equal Protection Clause. City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985). Additionally, discrimination against Native Americans may be subject to heightened scrutiny under equal protection analysis. See Rice v. Cayetano, 528 U.S. 495 (2000).

E. THE DOMESTIC RELATIONS EXCEPTION DOES NOT BAR REMOVAL

While federal courts generally abstain from hearing cases involving domestic relations under the "domestic relations exception" to federal jurisdiction, this exception does not apply where a case presents substantial federal questions beyond the domestic relations matter itself. See Ankenbrandt v. Richards, 504 U.S. 689, 703-04 (1992) (clarifying the scope of the domestic relations exception).

60

This case involves fundamental questions of federal law, including tribal sovereignty, the right to exhaust tribal remedies, violations of the Americans with Disabilities Act, and violations of federally protected constitutional rights. These issues transcend the underlying domestic relations matter and warrant federal court intervention. See Atwood v. Fort Peck Tribal Court Assiniboine, 513 F.3d 943, 946-47 (9th Cir. 2008) (finding that federal courts have jurisdiction to determine whether a tribal court has exceeded its jurisdiction).

F. ABSTENTION DOCTRINES DO NOT PRECLUDE FEDERAL JURISDICTION

While federal courts sometimes abstain from exercising jurisdiction under various abstention doctrines (such as Younger, Pullman, or Colorado River abstention), none of these doctrines apply in this case because:

1. The state court proceedings have been tainted by violations of federal law and Plaintiff's constitutional rights;

2. The case presents clear and substantial federal questions that cannot be adequately addressed in state court;

3. Plaintiff has been denied a fair opportunity to be heard in state court; and

4. The tribal exhaustion doctrine supersedes state court jurisdiction in this matter.

See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) (noting that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them).

61

V. Willful Deprivation of Rights under Color of Law – 18 U.S.C. § 242

Pursuant to 18 U.S.C. § 242, it is a federal crime for any person acting under color of law—including judges, police officers, prosecutors, or other government officials—to willfully deprive another of any rights, privileges, or immunities secured by the Constitution or federal law. This provision applies regardless of whether the official is acting at the state or federal level and is intended to deter and penalize the misuse of government authority to violate civil rights.

The actions described herein constitute clear and willful deprivations of Plaintiff's constitutional and statutory rights by judicial officers acting under color of law. These actions, including the denial of due process, retaliation targeted bullying, and systemic bias, are criminally sanctionable under this statute.

VI. Judicial Misconduct, Collusion, and Civil Conspiracy –

Plaintiff alleges that Judges Kenton Skarin, James Orel, Neal Cerne, and Susan Alvarado of the DuPage County Circuit Court engaged in a deliberate pattern of coordinated judicial misconduct rising to the level of a civil conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and actionable misconduct under 42 U.S.C. § 1983.

Over the course of a single divorce case, these judges, in succession, have:

- Failed to enforce valid and lawful court orders;
- Ignored material financial and evidentiary submissions;
- Obstructed discovery and access to legal remedies;

62

- Denied Plaintiff's rights to due process, equal protection, and have obstructed self-representation, blatantly showing bias, favoring her spouse, Dr. Madison Sample consistently for two years;
- Actively interfered with Plaintiff's efforts to retain legal counsel, including judicial intimidation of Plaintiff's representatives;
- Shielded the opposing party, Dr. Madison Sample, from sanctions despite repeated perjury, financial fraud, hundreds of thousands of dollars in financial dissipation, asset concealment, and refusal to comply with court orders or show up to court;
- Refused to lawfully compel accurate asset disclosures, enabling the dissipation of hundreds of thousands of dollars and concealment of millions in marital assets;
- Deceptively Appointed a divorce attorney who is unqualified as a "financial expert" with no relevant credentials, contributing to the intentional cover-up of Dr. Sample's marital dissipation and financial fraud committed against the court and myself, further defrauding me out of millions in marital assets;
- After being made aware, Judges continued Ignoring or endorsed fraudulent financial affidavits and pleadings knowingly submitted by Dr. Sample and his counsel.

This concerted misconduct constitutes nonjudicial acts executed outside the bounds of lawful judicial authority, reflecting administrative, retaliatory, and conspiratorial conduct, rather than impartial adjudication. These acts remove the protection of judicial immunity under both 42 U.S.C. § 1983 and RICO.

63

VII. Retaliation, Nonjudicial Acts, collusion, Systemic Bias, systematic gender-based, racial, and disability-related bias and Constitutional Violations

Plaintiff further alleges that the following nonjudicial and unconstitutional actions were committed by the aforementioned judges:

- Repeated Retaliation and threats of incarceration for exercising First Amendment rights, including granting interviews to independent journalists and speaking about fraudulent affidavits submitted by my spouse, Dr. Madison Sample;

- Targeted bullying, intimidation, judicial bullying, consistent hostility treatment from Judges inside of the courtroom including using court bailiffs to harass Plaintiff and her courtroom supporters;

- Allowing a stranger who is unknown to the Petitioner to use his cell phone and record Plaintiff, Jackie Sample while testifying on the witness stand.

- Witness tampering via coercive actions and interference by court personnel;

- Intentional infliction of emotional distress, enabling prolonged Domestic violence against the plaintiff, Jackie Sample, intentional infliction of emotional distress, legal abuse through failure to enforce lawful orders and protect petitioner from asset dissipation; ongoing domestic abuse for over two years and more.

- Failure to report known attorney misconduct, despite documented evidence of:
  - Fraud upon the court;
  - Alteration of court orders by opposing counsel;

64

- - o Filing of fraudulent motions
  - o Willfully accepting fraudulent financial affidavits from Dr. Madison Sample, Jr;
- Conspiring to initiate an unlawful guardianship petition against the Plaintiff, Jackie Sample
- Conspiring to assist my spouse, Dr. Madison steal equity in the marital home.
- Consistently protecting Dr. Madison Sample's interests while violating Plaintiff's rights over a two-year period, demonstrating a sustained pattern of collusion, systematic gender-based, racial, and disability-related bias.

Such conduct was carried out under color of law and is not judicial in nature. Therefore these actions are not protected by judicial immunity. These violations implicate multiple legal authorities.

VIII. Limits of Judicial Immunity Under 42 U.S.C. § 1983

Judges are generally immune from civil suits for actions taken in their judicial capacity. However, this immunity is not absolute. Judicial immunity does not apply when a judge:

- Acts outside of their jurisdiction;
- Engages in conduct that is nonjudicial in nature;
- Violates clearly established federal statutory or constitutional rights while acting under color of law.

As established in Stump v. Sparkman, 435 U.S. 349, 356–57 (1978), and clarified in Mireles v. Waco, 502 U.S. 9, 11–12 (1991), judges are not immune for actions taken in

65

the clear absence of jurisdiction or for nonjudicial acts. Moreover, under 42 U.S.C. § 1983, judicial immunity does not protect officials who, while acting under color of law, willfully deprive a person of federally protected rights outside their judicial role. These principles apply directly to the conduct at issue.

These acts, in their totality, strip these judges of the protections afforded by judicial immunity and render them liable under:

- 42 U.S.C. § 1983 – Civil liability for deprivation of rights under color of law;
- 18 U.S.C. § 242 – Criminal liability for willful deprivation of rights;
- 42 U.S.C. § 12131 et seq. – Denial of access to court and reasonable accommodations under Title II of the Americans with Disabilities Act;
- 18 U.S.C. §§ 1961–1968 (RICO) – Civil conspiracy to obstruct justice and facilitate financial fraud;
- The Fourteenth Amendment – Violations of the Equal Protection and Due Process Clauses.

IX. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court assume jurisdiction over this matter and remove it from the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois. The record presents substantial federal questions involving:

66

- Deprivation of constitutional rights under color of law;

- Disability discrimination and denial of access under the ADA;

- Systemic judicial misconduct and conspiracy under RICO;

- Violations of tribal sovereignty and the exhaustion of tribal remedies doctrine.

These issues warrant urgent federal court intervention to halt ongoing abuse, restore Plaintiff's rights, and prevent further irreparable harm.

Respectfully submitted,

JACKIE SAMPLE, Plaintiff Pro Se 9476 Falling Water Dr. E Burr Ridge, IL 60527

jackshousinganddevelopment@gmail.com

Dated: ~~May 12~~ June 10, 2025

_____  6/10/2025

Jackie Sample


Notary _____  6/10/2025

RAVINDER CHAHAL
Official Seal
Notary Public - State of Illinois
My Commission Expires Mar 2, 2026

67