IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

JACKIE JOHNSON SAMPLE,

      Plaintiff,

v.

MADISON SAMPLE JR., et al.,

Case No. 1:25-cv-05329

Judge Andrea R. Wood

      Defendants.

FILED

MAY 13 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65 TO HALT UNLAWFUL EVICTION, STOP ONGOING DOMESTIC VIOLENCE AND COERCION, AND PRESERVE PLAINTIFF'S PROPERTY RIGHTS PENDING RESOLUTION OF FEDERAL CIVIL RIGHTS CLAIMS

STAY OR VACATE EVICTION - DATED MAY 4th 2026

NOW COMES Plaintiff Jackie Johnson Sample, pro se, and respectfully moves this

Court pursuant to Federal Rule of Civil Procedure 65(b), 42 U.S.C. § 1983, 42 U.S.C. §

1985(3), and the Due Process and Equal Protection Clauses of the Fifth and Fourteenth

Amendments, for an Emergency Temporary Restraining Order and Preliminary

Injunction halting the unlawful eviction proceeding currently pending against Plaintiff in

1

DuPage County, Illinois, and enjoining Defendant Madison Sample Jr. from further acts of coercion, domestic violence, and interference with Plaintiff's property rights pending the resolution of this federal civil rights action. In support, Plaintiff states:

## INTRODUCTION

Plaintiff Jackie Johnson Sample is facing the imminent and irreversible loss of her home — the marital residence at 9476 Falling Water Drive E, Burr Ridge, Illinois 60527 — through what this motion will demonstrate is not a lawful eviction proceeding but the final act of a multi-year civil rights conspiracy. The same pattern of coordinated judicial conduct that this Court is currently asked to adjudicate in the pending Motion to Dismiss *is now being carried out in real time through a DuPage County eviction court* — stripping Plaintiff of her last remaining marital asset without due process, without proper service, and in direct coordination with Defendant Madison Sample Jr.'s private demands.

This is not a domestic relations dispute that belongs in state court. It is a federal civil rights emergency. The loss of a home is irreversible. Once Plaintiff is evicted, no court order can undo the harm. This Court has both the authority and the obligation under Rule 65 to act before that irreversible harm occurs.

## LEGAL STANDARD

A temporary restraining order is warranted where the moving party demonstrates: (1) a likelihood of success on the merits; (2) no adequate remedy at law; (3) irreparable harm

2

absent injunctive relief; and (4) that the balance of harms and public interest favor relief. Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008); Cassell v. Snyders, 990 F.3d 539, 544-45 (7th Cir. 2021). In the Seventh Circuit, these factors are weighed on a sliding scale — the more likely the plaintiff is to succeed on the merits, the less the balance of harms need favor her. Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health, 896 F.3d 809, 816 (7th Cir. 2018). All four factors are satisfied here.

## FACTUAL BACKGROUND

### I. THE FOUR-YEAR PATTERN OF COORDINATED JUDICIAL AND PRIVATE CONDUCT

1. This case arises from the dissolution of Plaintiff's marriage to Defendant Madison Sample Jr., Case No. 2023 DN 129, which has been pending since 2023. Throughout those proceedings, four DuPage County judges — Skarin, Orel, Cerne, and Alvarado — each refused to enforce the April 11, 2023 anti-dissipation order, refused to hold Madison Sample accountable for the submission of falsified financial affidavits, and refused to restore the financial status quo — resulting in the dissipation of marital assets exceeding $700,000.

2. Critically, each of the four presiding judges, immediately upon assignment to this case, moved to force the sale of the marital home — without first establishing the value of assets, income, or the true value of the marital estate as required by the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/503. Illinois

3

law requires a full accounting of marital assets before any property disposition. Not one of the four judges followed that requirement. Each arrived at the same outcome — forced sale of the home — by a different procedural path, but always without the legal predicate Illinois law demands.

3. Madison Sample Jr. expressed on multiple occasions, in advance of the judicial conduct that followed, that the judges would not follow Illinois law, would not enforce financial orders, and would not hold him accountable. He stated repeatedly that he knew his attorneys and the judges would not make him do anything. He expressed his personal connections to the judiciary and his confidence that the outcome was already determined. These statements — made before the judicial decisions that confirmed them — are direct evidence of the coordinated conspiratorial relationship between Madison Sample Jr. and the Judicial Defendants under 42 U.S.C. § 1985(3) and Dennis v. Sparks, 449 U.S. 24, 27 (1980).

4. The obstruction of Plaintiff's access to legal representation is itself evidence that the conspiracy alleged herein remains actively in effect. During Plaintiff's repeated and diligent efforts to retain legal counsel, a third party who was actively assisting Plaintiff in identifying and approaching attorneys reported to Plaintiff that a prospective attorney declined to take her case after being advised by counsel for the Judicial Defendants — from the Office of the Illinois

4

Attorney General — to stand down and not become involved in this matter. If accurate, this communication constitutes an extraordinary interference with Plaintiff's constitutional right to retain counsel of her choosing and her right of meaningful access to the courts. It also demonstrates that the coordinated effort to deprive Plaintiff of her property rights and her access to justice is not limited to the courtroom — it extends to preventing Plaintiff from obtaining the legal representation necessary to challenge that conduct in federal court. This allegation is raised in good faith based on information directly conveyed to Plaintiff and is subject to further development through discovery.

5. That same pattern now continues before DuPage County Judge Leah Bendik in an eviction proceeding purportedly brought on behalf of the Falling Water Homeowners Association. Judge Bendik issued an eviction order against Plaintiff without proper service — a fundamental due process violation that renders the order void. When Plaintiff appeared and raised the service issue, Judge Bendik initially referenced notice being posted around the courthouse, then after Plaintiff left the courtroom — nearly an hour later — amended her order to state that service had been effected inside the marital home. No such service occurred. The amended order was issued the day after Plaintiff filed an emergency motion on April 27, 2026, raising the service defect. A certified letter

5

sent to Plaintiff's email address was returned undeliverable. The procedural sequence, the post-hearing amendment, and the unexplained shift in the service theory all reflect the same pattern of coordinated conduct against Plaintiff that underlies the claims in this case.

## II. MADISON SAMPLE'S THREATENING TEXT MESSAGE CONSTITUTES ONGOING DOMESTIC VIOLENCE, COERCION, AND OBSTRUCTION OF FEDERAL PROCEEDINGS

In or about May 2026, while this federal case was pending, Defendant Madison Sample Jr. sent Plaintiff a written text message communication. That communication is attached hereto as Exhibit A and is incorporated by reference. A full analysis of its contents follows, because each component of the message constitutes an independent act of coercion, financial abuse, and obstruction:

### A. 'Or you can continue doing what you are doing right now'

This statement is a direct and calculated threat. 'What you are doing right now' means living without court-ordered health insurance that Madison Sample is required to maintain; without food security; without consistent utility service; without financial support for basic human needs; under threat of eviction; and without access to medical care and treatment that Plaintiff requires and cannot obtain because Madison Sample has exercised unlawful sole control over all marital assets and income. Madison Sample is explicitly telling Plaintiff: comply with my demands, or I will continue allowing you to

6

suffer. This is coercive control. This is financial abuse. This is domestic violence communicated in writing.

### B. 'If this is done, it will be done my way'

This statement asserts that Madison Sample — not this Court, not Illinois law, not Plaintiff's rights as an equal marital partner — controls the outcome of the marital dissolution and its consequences. This is the language of an abuser who believes he holds unchecked power and that no legal authority will constrain him. It reflects the same confidence in impunity that Madison Sample expressed verbally in advance of the judicial conduct Plaintiff has documented throughout these proceedings.

### C. The Demand That the Home Be Listed Exclusively With His Chosen Realtor

Madison Sample demanded that the marital home be listed within seven days, exclusively with his chosen realtor, Jorie Pierce, under a previous contract of his choosing, with access to the home at any time of his choosing, and that Plaintiff would have no voice in the selection of any other realtor. This demand mirrors precisely what each of the four DuPage County judges was attempting to accomplish judicially — forced disposition of the marital home on terms favorable to Madison Sample, without proper legal process, without proper asset valuation, and without Plaintiff's equal participation. The private demand and the judicial conduct are accomplishing the same end simultaneously.

7

## D. Conditioning Basic Human Necessities on Compliance

Madison Sample conditioned the restoration of Plaintiff's health insurance, food support, utility payments, and medical care on Plaintiff's compliance with his demands. He has withheld these necessities — which he is under court order to provide — as leverage to coerce Plaintiff into surrendering her property rights and legal claims while this federal case is pending. Withholding court-ordered financial support, health insurance, food, and medical care from a disabled domestic violence survivor to force compliance with unlawful demands is financial abuse and coercive control under any definition. It is also contempt of the court orders requiring him to maintain those obligations.

## E. The Indemnification and Waiver Demand

Madison Sample demanded that Plaintiff sign a marital settlement agreement containing a clause permanently waiving both parties' right to bring any legal claims arising from the marriage — including claims relating to assets stolen, misappropriated, or otherwise taken. This demand — made while Plaintiff is financially desperate, medically vulnerable, facing imminent eviction, and without legal counsel — is an attempt to obtain a coerced waiver of Plaintiff's federal civil rights claims while this litigation is pending. Obtaining a legal waiver of pending federal claims through financial coercion and domestic violence is obstruction of federal proceedings. It is independently actionable. It also confirms that Madison Sample is aware of the strength of Plaintiff's claims and is attempting to extinguish them through coercion rather than face them in court.

### F. 'Whatever Assets Were Stolen, Misappropriated, or Otherwise Owned Will Not Now or Ever Be in Contention'

This statement characterizes Plaintiff's legal claims to marital assets — assets that Madison Sample has dissipated, concealed, and taken sole control of in violation of court orders — as theft by Plaintiff. He is stating his own documented financial misconduct as Plaintiff's wrongdoing, while simultaneously demanding she release all claims to those assets. This is gaslighting in written form. It is also an admission that he knows the assets are in contention and that he is attempting to secure their permanent disposition in his favor through coercion and threats to force Plaintiff to remain in a domestic violence and financially abusive state controlled by Madison Sample, because Madison believes that the judiciary will honor their ex party agreement, granting him impunity for the prearrangement of diverting the home and its' equity to a third party, which is the last of my assets that I maintain, the home in Burr Ridge.

### G. 'The White Man Won'

This statement — appearing at the end of the communication — reflects Madison Sample's belief that the outcome of these proceedings has already been determined in his favor through his connections and coordination with the judiciary. It is consistent with his prior statements that the judges would not hold him accountable. It reflects the confidence of a party who believes the legal system has been arranged to protect him — the precise

9

allegation that 42 U.S.C. § 1985(3), Dennis v. Sparks, and Griffin v. Breckenridge were enacted to address.

G. The irreparable harm Plaintiff faces extends beyond the loss of the marital residence itself. Plaintiff has no financial means to relocate — Madison Sample Jr. has maintained sole control over all marital assets and income, leaving Plaintiff without the resources necessary to secure alternative housing. She has nowhere to go. An eviction would not only remove Plaintiff from the marital home but would result in the loss of her personal belongings and household property contained within it, which she equally has no means to store or transport. Further, the eviction is being pursued to enforce an HOA balance of approximately $11,800 — an amount that is grossly disproportionate to the value and equity of the marital estate, which includes a home whose market value far exceeds that balance by hundreds of thousands of dollars. Pursuing eviction and forced removal over $11,800 against a marital estate of that value — while simultaneously blocking Plaintiff from accessing any marital funds to satisfy that balance — is not a legitimate debt collection proceeding. It is the weaponization of a procedural mechanism to accomplish the forced transfer of the home that every presiding judge in this case has attempted to achieve through judicial means. The harm to Plaintiff is total, immediate, and irreversible.

## III. THE ONGOING DOMESTIC VIOLENCE PLAINTIFF IS EXPERIENCING

10

5. Plaintiff is a survivor of domestic violence. The conduct described in this motion is not historical — it is ongoing and escalating. Madison Sample has used financial control as a primary instrument of abuse throughout the marriage and the dissolution proceedings. He has withheld health insurance, leaving Plaintiff without access to medical care and treatment she requires. He has withheld financial support for food, utilities, and basic human necessities. He has exercised sole control over millions of dollars in marital assets in violation of court orders. He has made repeated statements threatening that Plaintiff's suffering will continue unless she complies with his demands.

6. The judicial defendants have enabled and facilitated this abuse. Their collective refusal to enforce the April 11, 2023 anti-dissipation order, their refusal to hold Madison Sample in contempt despite documented violations, their refusal to restore the financial status quo, and their coordinated movement toward forcing sale of the marital home — all without proper legal process — have given Madison Sample the judicial cover to continue his abuse with impunity. The eviction proceeding before Judge Bendik is not separate from this abuse. It is its continuation by judicial means.

7. Plaintiff has experienced utility shutoffs. She has experienced an unexplained water bill spike of approximately $5,000 in a single month — a billing anomaly that has never been investigated — followed by shutoff of water service. She

11

has faced imminent foreclosure. She has been denied medical care and treatment. She has been subjected to intimidation by courthouse security at multiple hearings. She has been threatened with incarceration for invoking her legal rights. Every motion she has filed seeking emergency relief has been denied. These are not coincidences. They are the documented consequences of a coordinated campaign to deprive Plaintiff of her property, her liberty, and her access to the courts.

## ARGUMENT

## I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

Plaintiff's claims are grounded in well-established federal law. The Judicial Defendants' conduct — denying court-approved ADA accommodations, directing intimidating bailiff conduct, interfering with Plaintiff's ability to retain counsel, and failing to implement standing financial orders — constitutes administrative and ministerial acts outside the scope of absolute judicial immunity. Forrester v. White, 484 U.S. 219, 229 (1988). The conspiratorial conduct between the Judicial Defendants and Madison Sample Jr. is independently actionable regardless of judicial immunity. Dennis v. Sparks, 449 U.S. 24, 27 (1980). The coordinated deprivation of Plaintiff's property rights through refusal to enforce the anti-dissipation order, the acceptance of fraudulent financial affidavits, and the facilitation of the unlawful eviction constitutes a conspiracy actionable under 42 U.S.C. § 1985(3). Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Madison

12

Sample's written demands — conditioning Plaintiff's access to health insurance, food, utilities, and medical care on her surrender of property rights — constitute coercion, financial abuse, and obstruction of federal proceedings, all independently actionable under 42 U.S.C. § 1983 and 18 U.S.C. § 241.

## II. PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT IMMEDIATE RELIEF

The loss of a home is irreparable harm. Once Plaintiff is evicted from the marital residence — the last remaining marital asset to which she has access — no subsequent court order can restore that loss. She will lose not only her home but also her equity interest in the property, her ability to maintain it for the benefit of the marital estate, and her physical safety and stability as a domestic violence survivor. The Seventh Circuit has consistently recognized that the loss of real property constitutes irreparable harm for purposes of Rule 65 relief. The eviction proceeding is imminent. Time is of the essence.

## III. THE BALANCE OF HARMS OVERWHELMINGLY FAVORS PLAINTIFF

A temporary restraining order halting the eviction pending resolution of this motion imposes no cognizable harm on any defendant. Madison Sample Jr. retains full use of all marital assets he currently controls. The Falling Water HOA retains its legal remedies and its ability to pursue them through proper legal process with proper service. The judicial defendants are not affected by a TRO halting a collateral eviction proceeding. By

13

contrast, the harm to Plaintiff of denial is total and permanent — loss of her home, her equity, her stability, and her safety. The balance is not close.

## IV. THE PUBLIC INTEREST FAVORS RELIEF

The public interest is served by ensuring that federal civil rights proceedings are not mooted by the very conduct those proceedings challenge. The public interest is served by halting an eviction proceeding that Plaintiff credibly alleges is the product of a conspiracy to deprive her of constitutionally protected property rights. The public interest is served by protecting a disabled domestic violence survivor from losing her home through proceedings tainted by the same coordinated misconduct that is the subject of this federal lawsuit. And the public interest is served by this Court exercising the authority Congress gave it under Rule 65 to preserve the status quo while serious federal civil rights claims are adjudicated on their merits.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Jackie Johnson Sample respectfully requests that this Court enter an Order:

1. Immediately staying and enjoining the eviction proceeding against Plaintiff currently pending in DuPage County, Illinois, including any writ of possession, lockout order, or enforcement action arising from the proceeding before Judge

14

Leah Bendik, pending resolution of this motion and the underlying federal civil rights claims;

2. Enjoining Defendant Madison Sample Jr. from: (a) taking any action to list, sell, transfer, or encumber the marital residence at 9476 Falling Water Drive E, Burr Ridge, Illinois 60527, pending resolution of this case; (b) further withholding health insurance, financial support, utility payments, or other court-ordered obligations as leverage or coercion; and (c) further communication threatening, coercing, or pressuring Plaintiff regarding the marital home or any settlement of her legal claims;

3. Preserving the status quo with respect to the marital residence and all remaining marital assets pending resolution of this federal civil rights action;

4. Setting an expedited briefing schedule on Plaintiff's motion for preliminary injunction; and

5. Granting such other and further emergency relief as this Court deems just, equitable, and necessary to prevent irreparable harm to Plaintiff and preserve the integrity of these federal proceedings.

## CONCLUSION

Plaintiff Jackie Johnson Sample stands to lose her home — the last remaining marital asset to which she has access — through a proceeding that she credibly alleges is the final

act of a multi-year conspiracy to deprive her of her constitutionally protected property rights. That conspiracy involves four DuPage County judges, now continuing through Judge Leah Bendik, coordinated with Defendant Madison Sample Jr.'s private demands that Plaintiff surrender her home, her legal claims, and her dignity or continue to suffer domestic violence, financial abuse, deprivation of medical care, and loss of basic human necessities. This Court has the authority and the obligation under Rule 65 to stop this harm before it becomes permanent. Plaintiff respectfully urges this Court to exercise that authority now.

Respectfully submitted,

_____

Jackie Johnson Sample, Plaintiff, Pro Se
9476 Falling Water Drive E
Burr Ridge, Illinois 60527
jackshousinganddevelopment@gmail.com
(773) 719-0337
Date: May _____, 2026

## EXHIBIT A

## TEXT MESSAGE COMMUNICATION FROM MADISON SAMPLE JR.

### (On or about May 2026)

FROM MADISON SAMPLE JR.:

"Jackie I wonder if you finally want to END this divorce. Or do you want to be married to me forever. I would be surprised since you say I am the worse human who ever walked the planet. According to you. I know you LOVE white men who benefitted the most from your divorce tactics. If you want to end this I will send you a list of my non negotiable conditions. This will benefit us both; NOT white men. Maybe you can live with that. Maybe not. Madison"

FROM PLAINTIFF:

"Hello Madison, I would like to move forward with finalizing the divorce so that we may both move on with our lives. In the immediate term, I am requesting the following time-sensitive matters: 1. Restore my health insurance immediately. 2. Payment of the homeowners association balance (approximately $11,000) to prevent eviction. 3. Payment of the current utilities to ensure continued utility service this month. 4. Financial support for basic human needs, including food. These matters directly impact my ability to maintain dignity. I look forward to a resolution on resolving our marital estate and finalizing the divorce. Thank you, Jack"

FROM MADISON SAMPLE JR.:

17

"Jack You misread my message. You controlled the few last years of marriage and the divorce process. If this is done, it will be done my way. Or you can continue doing what you are doing right now. These are my demands: 1. File divorce petition with DuPage court with the following settlement terms. I will sign once the Court stamps it. 2. Court order that all cryptocurrency in Jackie Johnson Sample Coinbase account is to immediately be returned and sent to Madison Sample Jr crypto address as he provides. A copy of this order will be sent to Detective Chris Allen of the Plainfield police department to facilitate transfer. This includes cryptocurrencies XRP and ETH. 3. The marital home will be listed within 7 (seven) days of this order on the MLS. We will use Realtor Jorie Pierce ONLY. We will use the previous contract. She will need access to a clean well maintained house for showings at ANY time. I will accept no one except Jorie. Proceeds from the sale will be used to settle all attorneys fees, realtor fees, HOA fees and other fees linked to the property. All profits from the sale after fee settlements will be split 50/50 between the plaintiff and the defendant. I will NOT sign the closing document until after the divorce is FINAL. 4. I will have my cousin review the document once you have completed it. 5. All my diplomas, awards, licenses AND the USA flag presented to me at my father's funeral will be delivered to my brother's house by you on Sangamon St. 6. There is no required spousal support from either party to the other. 7.

18

Whatever other assets were stolen, misappropriated, or otherwise owned will not now or ever be in contention between the parties. This includes your Real estate properties, your multiple businesses and my remaining assets. They are ours alone. 8. Indemnification clause which states both parties have reviewed the provisions in this MSA (marital settlement agreement) and agree. We relinquish our right to sue over any and all provisions in this settlement going forward. 9. Whatever you sale from the house not required from typical sale of a mansion house is yours. Each item will have to be approved by me or Jorie. Examples include garage freezer or electric snow blower. All proceeds from these sales will be yours alone. *This is the best time of year to list our house and get a decent offer. This will allow us to receive some money from the sale and live. Or you can continue doing what you are doing. The white man won."

## CERTIFICATE OF SERVICE

I, Jackie Johnson Sample, hereby certify that on May 13, 2026, a true and correct

copy of the foregoing Emergency Motion was served upon counsel of record via the

Court's CM/ECF electronic filing system, including Michael J. Bradtke, Assistant

Attorney General, 115 S. LaSalle Street, Suite 2700, Chicago, Illinois 60603, counsel for

Judicial Defendants, and upon Defendant Madison Sample Jr.

_____

Jackie Johnson Sample, Plaintiff, Pro Se

## DECLARATION UNDER 28 U.S.C. § 1746

I, Jackie Johnson Sample, declare under penalty of perjury pursuant to 28 U.S.C. § 1746

that I am a victim of ongoing domestic violence and financial abuse by Defendant

Madison Sample Jr.; that I face imminent and irreversible loss of my home through an

eviction proceeding I allege is unlawful and part of the civil rights conspiracy described

herein; that the text message communication described in this motion and attached as

Exhibit A is a true and accurate copy of a communication I received from Madison

Sample Jr.; and that all facts stated in this Motion are true and correct to the best of my

knowledge and belief.

_____

Jackie Johnson Sample

From: jaimew79@aol.com
Subject: Re: Formal Grievance Regarding Judicial Misconduct and Due Process Violations
Date: May 4, 2026 at 12:47 PM
To: Bonnie.Wheaton@18thjudicial.org, chair@dupagecounty.gov
Cc: Cindy.CroninCahill@dupagecounty.gov, Michael.Childress@dupagecounty.gov, sadia.covert@dupagecounty.gov, dawn.desart@dupagecounty.gov, grant.eckhoff@dupagecounty.gov, Lucy.Evans@dupagecounty.gov, kari.galassi@dupagecounty.gov, paula.deacongarcia@dupagecounty.gov, saba.haider@dupagecounty.gov, andrew.honig@dupagecounty.gov, brian.krajewski@dupagecounty.gov, lynn.laplante@dupagecounty.gov, melissa.martinez@dupagecounty.gov, mary.ozog@dupagecounty.gov, greg.schwarze@dupagecounty.gov, sam.tornatore@dupagecounty.gov, Yeena.Yoo@dupagecounty.gov, james.zay@dupagecounty.gov, tips@nbcuni.com, wls.desk@abc.com, desk@wgntv.com, investigates@cbsnews.com, tips@chicagotribune.com, newstips@fox.com, USAILN.Citizens@usdoj.gov, jackshousinganddevelopment@gmail.com

REPORT ON THE OBSERVATION OF PSYCHOLOGICAL TORTURE BY A SITTING JUDGE

TO: Office of the Chief Judge, 18th Judicial Circuit, DuPage County Board

FROM: Jaime Walton, Illinois Resident and Independent Court Observer

DATE: May 3, 2026

RE: Falling Water HOA v. Jackie Johnson-Sample I Case No: 2025EV003508
JUDGE: Hon. Leah M. Bendik, Courtroom 1004

IMMINENT EVICTION DATE: TODAY May 4, 2026

I. STATEMENT OF GRAVE CONCERN

I am writing to formally sound an alarm regarding the egregious judicial misconduct and psychological torture I witnessed on April 29, 2026. Jackie Johnson Sample, a disabled Black woman, is in immediate physical and medical danger. She faces an unlawful eviction scheduled for TODAY, May 4, 2026, following a hearing that was a complete farce of due process and a violation of her basic human, civil, and disability rights.

II. TACTICAL GASLIGHTING AND PSYCHOLOGICAL CRUELTY

The most disturbing element of this hearing was Judge Leah M. Bendik's deliberate use of abuse and deception to pacify a litigant in crisis. While Ms. Sample fought to prevent her immediate homelessness, Judge Bendik repeatedly, and without solicitation, advised and tried to console Jackie that she would not be evicted on May 4th. Judge Bendik even stated that she was trying to put her (Jackie's) mind at ease.

This was a direct contradiction of the Judge's own existing court order. To tell a disabled litigant to "be at ease" while actively upholding the order that will displace her is a level of psychological cruelty that constitutes a deprivation of rights under color of law (18 U.S.C. § 242) and a flagrant violation of Rule 1.2 of the Code of Judicial Conduct.

III. PROCEDURAL INVERSION AND TARGETED HOSTILITY

I observed a blatant procedural inversion and what was functionally a "trap" set for the defendant. When the case was first called and opposing counsel was absent, the Judge refused to rule on the merits, instead forcing Ms. Sample to either wait indefinitely or reschedule for a date past the eviction deadline. This weaponization of the court calendar essentially converted opposing counsel's failure to appear into a punishment for the defendant.

I noted that Judge Bendik also reserved a uniquely hostile, condescending, and dismissive tone exclusively for Ms. Sample. When Ms. Sample asked the Judge to stop interrupting because it was frustrating and disabling her ability to communicate and advocate for herself, the Judge responded by aggressively demanding that the litigant "Talk, talk."

This egregious abuse and humiliation of Ms. Sample, in front of Judge Bendik's declared 70+ person caseload, triggered the litigant's disability, rendering her defenseless. This abusive behavior functioned as a silencing tactic and prevented Ms. Sample from placing facts on the record, a violation of the Right to Be Heard (Rule 2.6A) and an Obstruction of Justice (18 U.S.C. § 1512).

IV. SELECTIVE ENFORCEMENT AND "LAND GRAB" ALLEGATIONS

The legal basis for this eviction is a debt of $11,843.49 that this circuit has already ordered Ms. Sample's spouse to pay. It is a shocking display of selective enforcement to aggressively pursue an $11k debt against a disabled woman while multimillion-dollar contempt rulings against her spouse remain unenforced across five judicial assignments.

Evicting a woman from a home with $1,000,000 in equity over such a small amount—while ignoring ADA requests—has all the hallmarks of a predatory "land grab" and Official Misconduct (720 ILCS 5/33-3).

V. INSTITUTIONAL FRAUD AND COLLUSION

The judicial hostility I witnessed mirrors the systemic abuse found in the court's ADA office. Based on my observations and experience, the ADA Coordinator's role appears to be a fraud upon the community; rather than providing access, the office functions as a manipulator to obstruct accommodations and protect judicial corruption.

Given the history of this case—including the resignation of James Orel and the federal RICO lawsuit (18 U.S.C. § 1961) against the Beermann Law Group— it would be warranted to investigate whether Judge Bendik is acting under outside orders or receiving financial compensation to facilitate this removal, in violation of Rule 2.11.

VI. URGENT CONCLUSION

Justice requires an immediate intervention and a stay of the May 4th, 2026 order before Ms. Sample is forced onto the street, based on a hearing predicated on misinformation. This matter warrants immediate review by the Chief Judge and referral to federal authorities for investigation of RICO violations and civil rights abuses.

Sincerely,

Jaime Walton
Citizen at Large

CC:
Open Letter

On Mon, Apr 13, 2026 at 7:22 PM, jaimew79@aol.com
<jaimew79@aol.com> wrote:

Hon. Bonnie M. Wheaton, Chief Judge
18th Judicial Circuit Court
505 N. County Farm Road, Room 2015
Wheaton, IL 60187

DuPage County Board
JTK Administration Building
421 N. County Farm Road
Wheaton, IL 60187

Formal Grievance Regarding Judicial Misconduct and Due Process Violations in Sample v. Sample (Observed Hearing on March 30, 2026) and Request for Redress

Dear Chief Judge Wheaton and Members of the DuPage County Board:

I am writing as a concerned observer to formally report serious irregularities I observed in open court on March 30, 2026, before Associate Judge Neal W. Cerne in the 18th Judicial Circuit Court, of DuPage County. These observations raise substantial concerns regarding procedural fairness, due process, the appearance of impropriety, and potential criminal judicial misconduct in the matter of Sample v. Sample.

On the date in question, I was present in the courtroom (via the public Zoom feed) as a neutral observer with no personal interest in the case. Judge Cerne initiated proceedings in the Sample v. Sample matter without clearly calling the full case caption in a manner audible or visible to observers. Neither named litigant—Jackie Sample nor Madison Sample—was present at that time.

An attorney appeared and represented that Jackie Sample had been served in connection with an alleged debt exceeding $5,500. However, no proof of service—such as an affidavit or return of service—was presented to the court, as required under Illinois Supreme Court Rules 11 and 12 governing service and proof of service. Despite the absence of both parties and the apparent lack of evidentiary support for proper notice, the court proceeded with the matter and entered an order permitting access to or liquidation of funds that had previously been restricted from Ms. Sample's use. (See Sample v. Sample, case number 2023-DN000129, including filings and transcripts.)

Judge Cerne's entry of such an order against Ms. Sample, in her absence and without proof of verified service, effectively deprived Ms. Sample of the opportunity to be heard, implicating fundamental due process protections under the Fourteenth Amendment to the United States Constitution.

During this same proceeding, I believe I heard Judge Cerne state that he intended to "recall" the case as he and the attorney were concluding the exchange. The attorney appeared to acknowledge this before departing. This statement and acknowledgment suggested an awareness by both parties that proceeding in the absence of both litigants—particularly without confirmed service being provided to the court for Ms. Sample—may have been procedurally improper and would require correction. Despite this, the court issued a substantive ruling.

Additionally, because this is a matter titled "Sample v. Sample," it raises further due process concerns that neither party appeared to have been present. Both litigants have a legal interest in marital assets and liabilities and are entitled to notice and an opportunity to respond before any court-ordered disposition of funds.

Shortly after the hearing concluded, I learned from Ms. Sample's sister that Ms. Sample had been delayed and prevented from entering the courtroom by personnel from the DuPage County Sheriff's Office. The stated reason involved restrictions on bringing a laptop, despite Ms. Sample reportedly having prior authorization through the court's disabilities coordinator to use such a device as an accommodation. If accurate, this raises potential concerns under Title II of the Americans with Disabilities Act (42 U.S.C. § 12132), which requires public entities, including courts, to provide reasonable accommodations to ensure access to proceedings. Ms. Sample was not permitted entry until after the matter had already been heard and ruled upon.

Following this, additional events raised further concern. After a period of silence in the courtroom in which no other cases were being actively heard, Judge Cerne referenced a case number without stating the full case caption and indicated that it was a divorce matter that had been dismissed in 2023 and therefore required no hearing.

I understood that case to be the Sample v. Sample matter that had been called earlier that morning with the attorney present and without Ms. Sample, which the court had indicated it would recall.

It was unclear why Judge Cerne was recalling that case with no one present in the courtroom, including the attorney who had previously acknowledged the recall.

Judge Cerne then stated that this was a divorce case that had been dismissed in 2023 and that no hearing was necessary. This appeared to be the same case on which a hearing had just been conducted.

This appeared inconsistent with the earlier proceeding, in which the Sample v. Sample matter had just been heard and ruled upon.

The omission of the case caption and the contradictory characterization created the appearance of an incomplete or inaccurate record, raising concerns under the Illinois Code of Judicial Conduct (Illinois Supreme Court Rule 63), which requires judges to perform duties

raising concerns under the Illinois Code of Judicial Conduct (Illinois Supreme Court Rule 63), which requires judges to perform duties competently, diligently, and in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

A short time later, Judge Cerne spoke up to note that I was present in the courtroom, as was another observer, and that we were there for the Sample v. Sample case which he stated he had already heard. Judge Cerne suggested terminating the feed to disconnect us if no one spoke up. I then respectfully stated that I could speak to that, and asked how a hearing could have proceeded when one of the litigants had been physically prevented by the Sheriff's Office staff from entering the courtroom. Judge Cerne responded by referencing Zoom availability, which did not address the substance of my question. When I restated my question and asked for clarification, the judge became visibly unsettled and stated, "I don't even know who you are," after which the Zoom feed was abruptly terminated.

Later that same day, Ms. Sample was allowed into the courtroom, at which time there was no Zoom feed for witnesses to observe. She later reported that Judge Cerne treated her differently than on prior court dates, and even advised her to file a motion to vacate the order he entered earlier in her absence, which she did. This subsequent acknowledgment further underscores the irregularity of the earlier proceedings.

Taken together, these events raise serious concerns, including:

* Proceeding without verified proof of service, as required under Illinois Supreme Court Rules 11 and 12;
* Conducting a hearing in the absence of both litigants;
* Entering orders affecting property rights without affording an opportunity to be heard, implicating violations of due process protections under the Fourteenth Amendment;
* Failure to ensure reasonable access to the courtroom, including potential violations of the Americans with Disabilities Act (42 U.S.C. § 12132); and
* The appearance of inconsistent or potentially misleading statements on the record, raising concerns under the Illinois Code of Judicial Conduct (Rule 63).

I respectfully request that the Office of the Chief Judge and the DuPage County Board to each:

1. Conduct thorough and independent investigations into the events of March 30, 2026, in Sample v. Sample, including review for potential criminal conduct;

2. Determine whether referral to appropriate federal law enforcement authorities for potential criminal investigation is warranted; and

3. Provide written confirmation of receipt of this complaint and any actions taken for redress.

As a formal recording of the Zoom proceedings was captured by the Court, I am confident that it can provide an objective record of the events described.

Thank you for your attention to this matter.

Public confidence in the judicial system depends on adherence to due process and the consistent application of procedural safeguards. You are an important part of this process and it's integrity.


Sincerely,

Jaime Walton
Citizen at Large

CC:
Open Letter

**From:** **Almer Nwannewuihe** almerjean63@gmail.com
**Subject:** HOA Illegal Eviction
**Date:** May 2, 2026 at 8:23 PM
**To:** Jack Johnson jackshousinganddevelopment@gmail.com



I, Almer J. Nwannewuihe, Jackie Sample's sister, declare under penalty of perjury that the following observations are true and accurate:

I was present in court with Jackie Sample as a supporter and court advocate in the matter of *Homeowners Association v. Madison Sample Jr. and Jackie Sample*, Case No. 2025EV003508, in DuPage County Court, Room 104. The conduct of Presiding Judge Leah Bendik was extremely disturbing. As Judge Bendik became more hostile, she leaned so far forward that I thought she was about to stand. I have grave concerns that the case was predetermined.

Judge Bendik continued to interrupt Jackie, not allowing her to speak, often cutting her off mid-sentence. At the start of the hearing, before the Plaintiff or Plaintiff's counsel had arrived, the Judge repeatedly interrupted Jackie Sample.

Jackie Sample stated that she has a disability and requested to be allowed to speak without interruption. The Judge repeatedly referenced the sheriff's eviction timeline. At the start of the hearing, when the Plaintiff and their counsel were not yet present, the Judge constantly interrupted Jackie Sample, stating that "the Sheriff would not evict you for at least 30 days from May 4 and that should ease you." At that moment, Jackie Sample was attempting to request a stay of eviction. The Judge did not address that request before making statements about the sheriff. The Judge's statements were alarming, and her tone and body language were aggressive.

When Jackie Sample repeatedly asked to be allowed to speak, the Judge leaned forward from the bench in a rapid motion and said in a fast, pressuring tone: "Talk. Talk." The Judge also said, "Go ahead … and tell me when you are ready," but then interrupted Jackie Sample again before she could complete a sentence.

Later in the hearing, the Judge stated, "I'm not trying to be hostile," and attributed her behavior to her caseload. I observed that in other cases heard on the same docket that day, the Judge did not interrupt other litigants in the same manner and did not use a similar tone.

Regarding the issue of service, Jackie Sample stated more than once that she had not been properly served. The Judge responded more than once by stating that she had "double-checked" and that service was proper. The Judge repeatedly stated that the notice was placed in the court building. After the Judge ruled that Jackie Sample's motion was "past 30 days," Ms. Sample stated that it was not past 30 days. The Judge immediately replied, "My ruling does not change," without pausing or asking Ms. Sample to explain her calculation.

As I observed, the Judge prevented Jackie Sample from fully participating in the hearing. Jackie Sample frequently paused mid-sentence and repeatedly asked the Judge for permission to finish speaking. During the first half of the hearing, Jackie Sample was not able to complete her sentences without interruption, nor did she participate accurately or equally without ADA accommodations.

I declare under penalty of perjury that the foregoing is true and correct.


Almer Nwannewuihe



From: Horbach Helena fransevna@yahoo.com
Subject: Declaration with Request for Administrative Review
Date: May 4, 2026 at 9:51 PM
To: Jack Johnson jackshousinganddevelopment@gmail.com

## DECLARATION OF ALENA KRILEY (UNDER PENALTY OF PERJURY)

I, Alena Kriley, declare under penalty of perjury under the laws of the United States and the State of Illinois that the following is true and correct:

1. **Presence and Basis of Knowledge**
   I observed the court proceedings held on April 29, 2026, via Zoom in the matter of *Falling Water Homeowners Association v. Madison Sample Jr. and Jackie Johnson-Sample*, Case No. 2025EV003508, in DuPage County Court. My observations are based on what I personally witnessed during the hearing.

2. **Judge's Conduct Preventing Jackie Johnson-Sample from Being Heard**
   During the hearing, I observed that Jackie Johnson-Sample was not afforded a meaningful opportunity to be heard. This occurred in multiple ways:

   **a. Repeated interruptions preventing completion of statements**
   When Ms. Sample began speaking, the Court repeatedly interrupted her mid-sentence, preventing her from completing her statements. Each time she attempted to continue, the interruption resumed. As a result, she was effectively prevented from presenting her arguments.

   **b. Pressuring and rushing when she attempted to assert her right to speak**
   When Ms. Sample stated that she was not being given an opportunity to speak, the Court responded by repeatedly directing her to "talk" in a rapid and pressuring manner, while continuing to interrupt her. This created a rushed and fragmented exchange that did not allow her to complete her statements or develop her legal and factual arguments.

   **c. Directing her to wait**
   On multiple occasions, the Court directed Ms. Sample to wait while other matters were addressed. During those proceedings, other litigants were permitted to speak and complete their statements without interruption. In contrast, when Ms. Sample attempted to resume speaking, the same pattern of interruption continued, preventing her from completing her statements.

3. **Disparate Treatment Compared to Other Litigants**
   While observing the same docket, I saw that other litigants were permitted to speak, complete their statements, and present their positions without interruption or pressure. In contrast, Ms. Sample was repeatedly interrupted and not permitted to complete her statements. The difference in treatment was clear and observable.

4. **Overall Effect on Ability to Be Heard**
   Based on my observations, the Court's conduct prevented Ms. Sample from meaningfully participating in the hearing. She was not able to complete her arguments or fully respond to the Court due to repeated interruptions, time pressure, and the structure of the interaction.

5. **Observation of Tone and Demeanor**
   The Court's tone, body language, and manner toward Ms. Sample were markedly different from its treatment of other litigants on the same docket. The Court spoke to Ms. Sample in a rapid, pressuring manner, repeatedly interrupted her, and used directive statements such as "Talk. Talk." while leaning forward from the bench. Based on these observable behaviors, the Court's manner toward Ms. Sample was hostile. This contrasted with the Court's treatment of other litigants, who were permitted to speak without interruption or pressure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 4, 2026

/s/Alena Kriley
Alena Kriley
72 Pine Ave, #3C
Riverside IL 60546

I can also submit this request to Chief Judge via email:

# REQUEST FOR ADMINISTRATIVE REVIEW AND ENFORCEMENT

PURSUANT TO ILLINOIS SUPREME COURT RULE 21(b)

Pursuant to Illinois Supreme Court Rule 21(b), which vests the Chief Judge with general administrative authority over the court, including supervision of courtroom conduct and the administration of justice, the undersigned respectfully requests administrative review of the proceedings held on April 29, 2026, in the above-captioned matter.

## I. BASIS FOR REQUEST

Multiple independent witnesses observed conduct during the April 29, 2026 hearing indicating that Defendant Jackie Johnson-Sample was not afforded a meaningful opportunity to be heard.

As set forth in the attached declarations, the Court:

- Repeatedly interrupted Ms. Sample mid-sentence, preventing her from completing her statements;
- Responded to her attempts to speak by directing her to "talk" in a rapid and pressuring manner while continuing to interrupt her;
- Directed her to wait while other matters were heard, during which other litigants were permitted to speak without interruption; and
- Maintained a tone and demeanor toward Ms. Sample that differed markedly from its treatment of other litigants on the same docket.

Taken together, this conduct prevented Ms. Sample from presenting her arguments in a continuous manner and created a clear disparity in treatment compared to other litigants.

## II. APPLICABLE JUDICIAL CONDUCT STANDARDS

Under **Rule 1.1 (Compliance with the Law)** of the Illinois Code of Judicial Conduct, a judge is required to comply with the law, including the Code itself. Accordingly, the provisions of the Code are binding standards governing judicial conduct and are enforceable through the Court's supervisory authority under Rule 21(b).

The conduct described in Exhibits A–C raises concerns under the Illinois Code of Judicial Conduct, including:

- **Rule 2.2 (Impartiality and Fairness)** – requiring judges to perform duties fairly and impartially;
- **Rule 2.3 (Bias, Prejudice, and Harassment)** – prohibiting conduct that manifests bias or prejudice, including through differential treatment. The observable disparity in how Ms. Sample was treated compared to other litigants raises concerns regarding the appearance of bias or prejudice;
- **Rule 2.6(A) (Right to Be Heard)** – requiring that every person with a legal interest in a proceeding be accorded the right to be heard according to law;

proceeding be accorded the right to be heard according to law;

- **Rule 2.8(B) (Decorum, Demeanor, and Courtesy)** – requiring that a judge be patient, dignified, and courteous to litigants. The repeated interruptions, pressuring tone, and directive manner observed are inconsistent with this requirement;
- **Rule 1.2 (Promoting Confidence in the Judiciary)** and **Canon 1** – requiring judges to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary and to avoid impropriety and the appearance of impropriety. The conduct observed would create in reasonable minds a perception that impartiality may be compromised.

As reflected in Comment [1] to Rule 2.8, the duty to dispose promptly of court business does not justify conduct that deprives a litigant of a fair and deliberate opportunity to be heard.

## III. NEED FOR ADMINISTRATIVE INTERVENTION

The concerns presented are not limited to a specific ruling, but relate to the manner in which the proceedings were conducted.

The observed pattern of repeated interruptions, pressuring directives, and disparate treatment raises concerns regarding:

- Whether the proceeding was conducted in a manner consistent with the requirement that litigants be meaningfully heard;
- Whether similarly situated litigants were treated equally; and
- Whether the conduct observed undermines public confidence in the integrity and impartiality of the judicial process.

These concerns are supported by consistent observations across multiple independent witnesses.

## IV. REQUESTED ACTION

WHEREFORE, the undersigned respectfully requests that the Chief Judge:

1. Review the conduct of the April 29, 2026 proceedings in this matter;
2. Take appropriate administrative action to ensure compliance with Rules 1.1, 1.2, 2.2, 2.3, 2.6(A), and 2.8(B);
3. Ensure that Ms. Sample is afforded a full and fair opportunity to be heard in accordance with Illinois law.
4. Ensure Ms. Sample's ADA accommodation requests under Title II are addressed before any further proceedings

<u>**DECLARATION OF COURT WATCHER UNDER PENALTY OF PERJURY**</u>

I, Sossamma George, declare under penalty of perjury that the following observations are true and accurate:

**1. My presence in court**

I was present in court on April 29, 2026, and observed the proceedings for the case *Falling Water Homeowners Association V. Madison Sample Jr. And Jackie Johnson-Sample*, Case No.: 2025EV003508 in DuPage County Court. I have no personal interest in the outcome of this case, and I am not a party to this case. I took handwritten notes during the proceedings, and my observations are as a lay person.

**2. The Judge's conduct I witnessed**

I personally observed the following conduct by the Judge toward Jackie Johnson-Sample:

- **Interruptions:** At the start of the hearing, before Plaintiff or Plaintiff's counsel had arrived, the Judge repeatedly interrupted Ms. Sample while she was speaking – often in the middle of a sentence. This occurred repeatedly. Ms. Sample also stated that she has a disability and requested that she be allowed to talk without being interrupted.

- **Statement about sheriff's eviction timeline:** At the start of the hearing, when Plaintiff and their counsel were not even present, the Judge while constantly interrupting Ms. Sample, kept repeating that *"Sheriff would not evict her for at least 30 days from May 4 And that should not ease you"*. At that moment, Ms. Sample was trying to request a stay of eviction. The Judge did not address that request before making the statement about the sheriff. I do not know what legal purpose the Judge's statement served.

- **Tone and body language:** When Ms. Sample repeatedly asked to be allowed to speak, the Judge leaned forward from the bench in a rapid motion and said in a fast, pressuring tone: *"Talk. Talk."* The Judge also said, *"Go ahead ... and tell me when you are ready,"* but then interrupted Ms. Sample again before she could complete a sentence.

- **Statement about hostility:** Later in the hearing, the Judge said, *"I'm not trying to be hostile"* and attributed her behavior to her caseload. I observed that in other cases heard on the same docket that day, the Judge did not interrupt other litigants in the same manner and did not use a similar tone with them.
- **Treatment of service argument:** Ms. Sample stated more than once that she had not been properly served. The Judge responded more than once by saying she *"double checked that service was proper"*.
- **Ruling on timeliness:** After the Judge ruled that Ms. Sample's motion was *"past 30 days,"* Ms. Sample stated that it was not past 30 days. The Judge immediately replied, *"my ruling does not change,"* without pausing or asking Ms. Sample to explain her calculation.

### 3. Observed effect on Ms. Sample

Based on my observation, the Judge's conduct appeared to prevent Ms. Sample from fully participating in the hearing:

- Ms. Sample frequently paused mid-sentence and repeatedly asked the Judge for permission to finish speaking.
- During the first half of the hearing, Ms. Sample was not able to complete her sentences without the Judge interrupting.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signature: _____

**Printed Name:** Sossamma George

**Date:** 30 Apr 2026