

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

**F I L E D**

**JUL 20 2026** V W

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JACKIE JOHNSON SAMPLE,

    Plaintiff,

v.

MADISON SAMPLE JR., et al.,

    Defendants.

Case No. 1:25-cv-5329

Hon. Andrea R. Wood

Hon. Heather K. McShain, Magistrate Judge

**PLAINTIFF JACKIE JOHNSON SAMPLE'S RESPONSE IN OPPOSITION TO JUDICIAL DEFENDANTS' RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS**

1. Plaintiff Jackie Johnson Sample, appearing pro se, respectfully submits this Response in Opposition to Judicial Defendants Neal Cerne, Susan Alvarado, James Orel, and Kenton Skarin's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss.

## I. PRELIMINARY STATEMENT

2. Plaintiff does not seek liability merely because a judge issued an adverse ruling.

3. Plaintiff does not ask this Court to treat lawful rulings, ordinary courtroom management, or protected adjudicative decisions as actionable merely because Plaintiff disagrees with the result.

4. Plaintiff acknowledges that judicial immunity is broad for judicial acts performed within jurisdiction.

Page 1

5. Plaintiff preserves that judicial immunity does not apply to nonjudicial acts or acts taken in the clear absence of all jurisdiction. See Forrester v. White, 484 U.S. 219 (1988); Mireles v. Waco, 502 U.S. 9 (1991).

6. Plaintiff alleges that the Complaint is not limited to adverse rulings.

7. Plaintiff alleges nonjudicial conduct, administrative obstruction, ex parte collusion, ex parte coordination, retaliation, disability-access interference, interference with counsel, discriminatory treatment, intimidation, obstruction of meaningful court access, and deprivation of property rights. Compl. ¶¶ 21–35, 43–45, 55–61, 64–75, 85–107.

8. Plaintiff alleges that the repeated conduct of all four Judicial Defendants, participating attorneys, court personnel, and Madison Sample, Jr. over approximately two and one-half years was not isolated, accidental, or coincidental. Compl. ¶¶ 21–35, 64–75, 85–107.

9. Plaintiff alleges that Madison Sample, Jr. made threats and predicted outcomes before key court events, including that the financial status quo would not be reinstated and that Plaintiff's attorneys and the judges would not make him comply. Compl. ¶¶ 21–24, 32–35, 66–67, 74, 86–88, 92–107.

10. Plaintiff alleges that later conduct by all four Judicial Defendants followed the same pattern and same behavior and aligned with Madison Sample, Jr.'s threats and predicted outcomes. Compl. ¶¶ 21–35, 64–75, 85–107.

11. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion and ex parte coordination based on circumstantial evidence.

12. Plaintiff alleges that the circumstantial evidence includes the same pattern and same behavior by all four Judicial Defendants, Madison Sample, Jr.'s prior threats and predicted outcomes, the matching court conduct that followed, repeated obstruction of Plaintiff's filings and accommodations, interference with counsel, and deprivation of property rights. Compl. ¶¶ 21–35, 55–61, 64–75, 85–107.

13. Plaintiff alleges that direct private communications are not required before discovery where Defendants' own repeated actions, shared pattern and practice, timing, and matching outcomes support a reasonable inference of ex parte collusion and ex parte coordination.

14. Plaintiff alleges that the specific private communications, internal records, and coordinated acts confirming that pattern are uniquely within Defendants' possession and are proper subjects for discovery.

15. Plaintiff alleges that the Judicial Defendants' Motion improperly reduces the Complaint to disagreement with domestic-relations rulings while ignoring allegations of nonjudicial, administrative, private, off-record, retaliatory, discriminatory, ADA-access, counsel-interference, security-intimidation, and coordinated conduct outside the ordinary adjudicative function.

16. Plaintiff respectfully requests denial of the Motion to Dismiss.

17. In the alternative, Plaintiff requests leave to amend under Federal Rule of Civil Procedure 15(a)(2).

## A. RULE 8 REQUIRES PLAUSIBLE FACTS, NOT PROOF BEFORE DISCOVERY

18. At the Rule 12(b)(6) stage, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rule 8 does not require Plaintiff to plead the evidence needed to prove each allegation. Bell Atlantic Corp. v. Twombly explains that a complaint may proceed when its factual allegations raise a reasonable expectation that discovery will reveal evidence supporting the alleged agreement, even if ultimate proof appears improbable. 550 U.S. 544, 556 (2007).

19. The Seventh Circuit likewise recognizes that pleading expectations are commensurate with the information available to the plaintiff before discovery, particularly when critical records are controlled by defendants. Bausch v. Stryker Corp., 630 F.3d 546, 558, 561–62 (7th Cir. 2010). Plaintiff therefore need not possess Defendants' private communications, internal

accommodation records, filing and assignment records, clerk notes, security records, metadata, or communications with attorneys before discovery.

20. Plaintiff does not contend that discovery substitutes for pleading facts already known to her. The Complaint alleges the facts presently available, including: the April 11, 2023 anti-dissipation order and alleged transfers exceeding $700,000 afterward (Compl. ¶¶ 22–24); Plaintiff's disability and identified accommodation requests (Compl. ¶¶ 25–30); Judge Cerne's January 28, 2025 refusal to hear an emergency motion and direction to a purported "pro se court" (Compl. ¶ 33); Judge Alvarado's same-day statement that she lacked time to read the motion, characterization of it as "incomprehensible," and striking of it (Compl. ¶ 34); and the identified statements and withdrawals of retained or prospective counsel (Compl. ¶¶ 92–107). These allegations supply the factual basis for reasonable inferences. Discovery is sought to test those inferences and obtain evidence uniquely controlled by Defendants—not to replace the pleading requirement.

21. Where the Court concludes that a claim still lacks sufficient defendant-specific facts, the appropriate alternative is leave to amend after identifying the deficiency. See Fed. R. Civ. P. 15(a)(2); Bausch, 630 F.3d at 562.

## II. THE ADA CLAIM SHOULD NOT BE DISMISSED WITH PREJUDICE

22. Judicial Defendants argue that Title II of the Americans with Disabilities Act does not permit individual-capacity liability against individual judges.

23. Plaintiff acknowledges that Title II ADA claims are generally directed to public entities.

24. Plaintiff acknowledges that individual-capacity damages claims under Title II may be limited or unavailable.

25. Plaintiff does not abandon her ADA-access allegations.

26. Plaintiff alleges that she was denied meaningful access to court services, proceedings, filings, hearings, communications, accommodations, and judicial processes after her health

Page 4

conditions, disability barriers, and need for reasonable accommodations were made known. Compl. ¶¶ 25–30, 55–61.

27. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion and ex parte coordination used to carry out disability-access interference, which was not isolated and violated federally protected rights. Compl. ¶¶ 25–30, 55–61, 64–65, 71–75.

28. Plaintiff alleges that disability-access interference included disregard, obstruction, denial, rescission, or ineffective implementation of accommodations by court actors and the public court system. Compl. ¶¶ 25–30, 55–61.

29. Plaintiff alleges that the ADA claim should be understood as involving denial of meaningful access to a public court system, including the Eighteenth Judicial Circuit of DuPage County, court services, court programs, and court proceedings. Compl. ¶¶ 16, 25–30, 55–61.

30. Title II protects meaningful access to courts. See Tennessee v. Lane, 541 U.S. 509 (2004).

31. If the Court concludes that Count I is not pleaded against the proper public entity, official-capacity defendant, or prospective-relief theory, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

32. For clarity, Plaintiff does not oppose dismissal of a Title II individual-capacity damages theory against the four judges because Title II imposes duties on a "public entity." 42 U.S.C. §§ 12131(1), 12132. That concession does not dispose of Count I against the public court entity named in the Complaint, nor does it eliminate Plaintiff's factual allegations concerning denial of court access. The January 28, 2025 allegations are relevant to whether the public entity furnished meaningful access, even if a damages claim against an individual judge is unavailable. See Tennessee v. Lane, 541 U.S. 509, 531–34 (2004).

## III. ROOKER-FELDMAN, YOUNGER, HADZI-TANOVIC, AND GENERAL ABSTENTION DO NOT BAR PLAINTIFF'S INDEPENDENT FEDERAL CLAIMS

33. Judicial Defendants argue that Plaintiff asks this Court to review state-court domestic-relations decisions.

34. Plaintiff does not ask this Court to enter a divorce decree.

35. Plaintiff does not ask this Court to divide marital property.

36. Plaintiff does not ask this Court to decide custody.

37. Plaintiff does not ask this Court to supervise domestic relations.

38. Plaintiff does not ask this Court to sit as an appellate court over a final state-court judgment.

39. Plaintiff alleges independent federal injuries caused by nonjudicial conduct, administrative obstruction, ex parte collusion, ex parte coordination, retaliation, disability-access interference, interference with counsel, discriminatory treatment, intimidation, obstruction of court access, and deprivation of property rights under color of law. Compl. ¶¶ 21–35, 43–45, 55–61, 64–75, 85–107.

40. Rooker-Feldman is narrow and applies only where a federal plaintiff complains of injuries caused by a state-court judgment rendered before the federal action and asks the district court to review and reject that judgment. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005).

41. Plaintiff alleges injuries not caused merely by state-court judgments, but by a separate pattern of nonjudicial, administrative, private, retaliatory, discriminatory, ex parte, and coordinated conduct. Compl. ¶¶ 21–35, 55–61, 64–75, 85–107.

42. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion and ex parte coordination used to carry out retaliation, which was not isolated and violated federally protected rights. Compl. ¶¶ 32–35, 64–68, 85–107.

43. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion and ex parte coordination used to carry out administrative obstruction, which was not isolated and violated federally protected rights. Compl. ¶¶ 28–35, 64–65.

Page 6

44. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion and ex parte coordination used to carry out disability-access interference, which was not isolated and violated federally protected rights. Compl. ¶¶ 25–30, 55–61.

45. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion and ex parte coordination used to carry out interference with counsel, which was not isolated and violated federally protected rights. Compl. ¶¶ 85–107.

46. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion and ex parte coordination used to carry out deprivation of property rights, which was not isolated and violated federally protected rights. Compl. ¶¶ 21–24, 35, 64–68, 74–75, 88–90.

47. Younger abstention does not require dismissal.

48. Under Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013), Younger is limited to exceptional categories and does not apply merely because a related state proceeding exists.

49. Judicial Defendants' reliance on Hadzi-Tanovic v. Johnson does not require dismissal.

50. Plaintiff distinguishes Hadzi-Tanovic because Plaintiff does not seek federal management of a divorce case, review of domestic-relations rulings, or substitution of this Court for the state domestic-relations court.

51. Plaintiff alleges independent federal civil-rights injuries arising from nonjudicial conduct, administrative obstruction, retaliation, disability-access interference, interference with counsel, deprivation of property rights, ex parte collusion, and ex parte coordination outside ordinary adjudication.

52. Plaintiff acknowledges that federal courts are cautious in domestic-relations matters.

53. Plaintiff seeks to preserve federal civil-rights claims based on alleged nonjudicial, administrative, private, retaliatory, discriminatory, ex parte, coordinated, and jurisdictionally unauthorized conduct.

Page 7

54. Plaintiff does not seek relief based merely on disagreement with lawful rulings.

55. If the Court concludes that any portion of the Complaint overlaps too closely with state-court adjudication, Plaintiff requests leave to amend so she may separate independent federal claims from protected adjudicative rulings with greater particularity.

56. Hadzi-Tanovic does not authorize a federal district court to revise or supervise a state domestic-relations order. Hadzi-Tanovic v. Johnson, 62 F.4th 394 (7th Cir. 2023). Plaintiff therefore clarifies that she does not seek adjudication of any request that would require this Court to reverse, modify, or enforce a state-court divorce order. To the extent the Complaint's prayer can be read to request such relief, Plaintiff asks the Court to sever or permit amendment of that request rather than dismiss independent claims for injuries caused by conduct separate from a state judgment.

57. Loubser also requires a claim-by-claim analysis. It preserves judicial immunity for the judge's judicial acts, even where corruption is alleged, but it recognizes that Rooker-Feldman does not automatically bar independent claims against nonjudicial participants for an alleged scheme that caused injury separate from the state judgment. Loubser v. Thacker, 440 F.3d 439, 441–42 (7th Cir. 2006). Plaintiff relies on Loubser only for that limited jurisdictional distinction, not to argue that allegations of conspiracy remove immunity from judicial rulings.

## IV. JUDICIAL IMMUNITY DOES NOT REQUIRE DISMISSAL AT THE PLEADING STAGE

58. Judicial Defendants argue that absolute judicial immunity bars Plaintiff's claims because the challenged conduct allegedly involved rulings in Plaintiff's domestic-relations case.

59. Plaintiff does not seek damages for protected judicial acts taken in a judge's ordinary adjudicative capacity.

60. Plaintiff alleges that the Complaint challenges nonjudicial conduct, administrative conduct, private conduct, off-record conduct, ex parte collusion, ex parte coordination, retaliation,

disability-access interference, interference with counsel, discriminatory treatment, intimidation, and deprivation of property rights. Compl. ¶¶ 21–35, 43–45, 55–61, 64–75, 85–107.

61. Judicial immunity must be analyzed by function, not title alone.

62. Under Forrester v. White, 484 U.S. 219 (1988), the relevant question is the nature of the function performed.

63. Under Mireles v. Waco, 502 U.S. 9 (1991), judicial immunity does not apply to nonjudicial actions or to actions taken in the clear absence of all jurisdiction.

64. Under Dennis v. Sparks, 449 U.S. 24 (1980), a judge's immunity does not automatically immunize private parties alleged to have conspired or jointly acted with a judge.

65. Judicial Defendants' reliance on Loubser v. Thacker does not require dismissal at the pleading stage.

66. Plaintiff distinguishes Loubser because Plaintiff does not sue merely over ordinary divorce rulings.

67. Plaintiff alleges a repeated pattern and practice by all four Judicial Defendants involving nonjudicial conduct, administrative obstruction, ex parte collusion, ex parte coordination, disability-access interference, retaliation, interference with counsel, and deprivation of property rights. Compl. ¶¶ 21–35, 55–61, 64–75, 85–107.

68. The domestic-relations immunity cases cited by Judicial Defendants, including Anderson, Davenport, Eberhardt, and Brzowski, are distinguishable for the same reason.

69. Plaintiff is not relying merely on dissatisfaction with rulings in a divorce case.

70. Plaintiff alleges the same pattern and same behavior by all four judges, Madison Sample, Jr.'s threats and predicted outcomes, matching court conduct, obstruction of filings and accommodations, interference with counsel, and deprivation of property rights.

71. Plaintiff alleges that Defendants' own repeated actions, shared pattern and practice, timing, and matching outcomes reasonably infer ex parte collusion and ex parte coordination. Compl. ¶¶ 21–35, 55–61, 64–75, 85–107.

72. Plaintiff alleges that the Motion should not be granted simply by labeling all conduct as "judicial rulings."

73. Plaintiff alleges conduct outside the ordinary adjudicative function.

74. Plaintiff alleges that the conduct was nonjudicial because it was not performed as neutral adjudication between parties, but as administrative obstruction, private coordination, retaliation, interference, intimidation, or coordinated deprivation of rights. Compl. ¶¶ 21–35, 64–75, 85–107.

75. Each challenged act must be reviewed act by act, based on the function performed, the setting, the actor's role, whether the conduct occurred on or off the record, whether the conduct was administrative or private rather than adjudicative, whether the conduct involved ex parte collusion or ex parte coordination, and whether the actor functioned as a neutral decision-maker or as a participant, advocate, coordinator, administrator, investigator, enforcer, retaliator, or private conspirator.

76. As a general matter, the judicial function that judicial immunity protects is the function of deciding matters presented to the court on the record, with notice to and participation by all parties. See Forrester, 484 U.S. at 227 (immunity attaches to the paradigmatic judicial act of "resolving disputes between parties who have invoked the jurisdiction of a court"). Plaintiff alleges that the conduct challenged in this section did not occur during a hearing, was not noticed to Plaintiff, and did not afford Plaintiff the opportunity to be heard that is the defining feature of adjudication. Compl. ¶¶ 21–24, 66–67, 74, 86–88, 92–107. Plaintiff alleges that conduct conducted ex parte and outside of any court hearing, where one party is heard and the other is not, is not the exercise of the adjudicative function that judicial immunity exists to protect, regardless of whether a judge is among the participants. This is distinct from a judge's ordinary case-management contact with court staff or scheduling functions, which remain judicial; Plaintiff's allegation is limited to private, one-sided

contact used to reach or influence the outcome of a matter without the participation, notice, or presence of Plaintiff as the opposing party.

## A. THE COMPLAINT IDENTIFIES ACTS BY ACTOR; IMMUNITY STILL TURNS ON FUNCTION

77. The present pleading identifies the following conduct. Plaintiff offers this act-by-act statement to separate factual allegations from legal conclusions and to avoid treating every adverse ruling as nonjudicial.

78. Judge Skarin. Plaintiff alleges that Judge Skarin entered an anti-dissipation order on April 11, 2023, and that Madison Sample thereafter transferred or dissipated more than $700,000. Compl. ¶¶ 22–24. Entry and enforcement of orders are ordinarily judicial functions. Plaintiff uses these allegations as factual context and does not contend that failure to enforce an order, standing alone, defeats judicial immunity.

79. Judge Cerne. Plaintiff alleges that on January 28, 2025, Judge Cerne refused to hear her emergency motion and stated that because neither party had counsel she would be sent to "pro se court." Compl. ¶ 33. Docket and hearing decisions ordinarily are judicial or case-management functions. These facts remain relevant to the public entity's alleged denial of meaningful court access and to Plaintiff's request for leave to plead any related administrative policy with greater specificity.

80. Judge Alvarado. Plaintiff alleges that later on January 28, 2025, Judge Alvarado stated that she lacked time to read Plaintiff's motion, described it as "incomprehensible," and struck it after Plaintiff had requested disability accommodations, including additional time, clear instructions, accessible written materials, permission to use an electronic device, and accommodation for rapid verbal exchanges. Compl. ¶¶ 25–30, 34. Striking a motion is judicial, but the pleaded facts are also relevant to whether the public court entity implemented an accessible process. Plaintiff does not rely on the ruling itself as an individual-capacity damages claim under Title II.

Page 11

81. Judge Orel. Plaintiff alleges that prospective attorneys expressed fear of retaliation in Judge Orel's courtroom, including one attorney's reported statement that "Judge Orel retaliates" and that the attorney would not take a case in his courtroom. Compl. ¶¶ 98–107. Plaintiff acknowledges that these reported statements do not by themselves establish an agreement. They are pleaded as circumstantial facts supporting a request for discovery concerning the identified counsel-interference allegations.

82. The Complaint also alleges that Madison Sample predicted non-enforcement and that attorneys withdrew or declined representation after specified events. Compl. ¶¶ 66–67, 92–107. Plaintiff seeks discovery of communications and records capable of confirming or disproving the asserted coordination. Twombly, 550 U.S. at 556. Plaintiff acknowledges that conclusions such as "collusion" or "coordination" receive no presumption of truth unless supported by factual allegations. Iqbal, 556 U.S. at 678–79.

## B. LOUBSER CONFIRMS THAT ALLEGED CORRUPTION DOES NOT STRIP IMMUNITY FROM JUDICIAL ACTS

83. Plaintiff narrows her immunity position accordingly. Loubser held that a judge remained immune for judicial acts even though the complaint alleged bribery or corruption. 440 F.3d at 442. Thus, adverse rulings, the striking or scheduling of motions, and decisions whether to enforce orders remain immune if they were judicial acts within jurisdiction. Plaintiff preserves claims only for conduct that the functional analysis shows was administrative, private, or otherwise nonjudicial, and preserves claims against nonjudicial participants whose liability is not derived solely from the judges' rulings. See Forrester, 484 U.S. at 227–29; Dennis, 449 U.S. at 28–29.

84. The Complaint's accommodation allegations principally support a Title II claim against the public entity. A judge's ruling on a request made in a pending case may still be judicial for immunity purposes; by contrast, operation of a courtwide accommodation system or implementation of an administrative access policy may be administrative. The identity of the responsible policymaker and the internal handling records are matters reasonably sought

in discovery, but Plaintiff requests leave to amend if the Court finds that the Complaint has not attributed a specific nonjudicial act to a particular Judicial Defendant.

## C. OFF-RECORD NONJUDICIAL COORDINATED PATTERN AND PRACTICE OF EX PARTE COLLUSION AND RETALIATION

85. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion and ex parte coordination used to carry out retaliation, which was not isolated and violated federally protected rights. Compl. ¶¶ 32–35, 64–68, 85–107.

86. Plaintiff alleges that the retaliation was connected to protected speech, press activity, reporting misconduct, requesting disability accommodations, filing motions, presenting motions, and petitioning the government for redress of grievances. Compl. ¶¶ 25–35, 64–68, 85–107.

87. Plaintiff alleges that this retaliation included threats of contempt, threats of jail, threats of incarceration, threats of punishment, intimidation, targeted bullying, courtroom harassment, coercive pressure, and threats tied to Plaintiff's efforts to present her case. Compl. ¶¶ 32–35, 64–68, 85–107.

88. Plaintiff alleges that threats or intimidation connected to protected speech, petitioning activity, accommodation requests, or efforts to present motions are not ordinary neutral adjudication. Compl. ¶¶ 25–35, 64–68, 85–107.

89. Plaintiff alleges that this conduct chilled her participation, obstructed her access to court, interfered with her ability to present motions, and deprived her of federally protected rights under color of law. Compl. ¶¶ 25–35, 64–68, 85–107.

## D. OFF-RECORD NONJUDICIAL COORDINATED PATTERN AND PRACTICE OF EX PARTE COLLUSION AND ADMINISTRATIVE OBSTRUCTION

90. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion and ex parte coordination used to carry out administrative obstruction, which was not isolated and violated federally protected rights. Compl. ¶¶ 28–35, 64–65.

Page 13

91. Plaintiff alleges that administrative obstruction included refusal to process filings, refusal to meaningfully address filings, obstruction of hearing access, docketing irregularities, manipulation of case-processing mechanisms, obstruction of scheduling, obstruction of motion presentation, obstruction of meaningful access to the Clerk's Office, and obstruction of ADA procedures. Compl. ¶¶ 28–35, 64–65.

92. Plaintiff alleges that this administrative obstruction restricted her ability to file, present, schedule, and obtain hearings on motions seeking enforcement, contempt, injunctive relief, discovery, financial protection, and disability accommodations. Compl. ¶¶ 28–35, 64–65.

93. Plaintiff alleges that administrative obstruction is not automatically protected by judicial immunity because administrative and access-related functions require functional analysis under Forrester.

## E. OFF-RECORD NONJUDICIAL COORDINATED PATTERN AND PRACTICE OF EX PARTE COLLUSION AND DISABILITY-ACCESS INTERFERENCE

94. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion and ex parte coordination used to carry out disability-access interference, which was not isolated and violated federally protected rights. Compl. ¶¶ 25–30, 55–61.

95. Plaintiff alleges that disability-access interference included disregard, obstruction, denial, rescission, or ineffective implementation of disability accommodations after Plaintiff's health conditions, disability barriers, and need for reasonable accommodations were made known. Compl. ¶¶ 25–30, 55–61.

96. Plaintiff alleges that this conduct denied meaningful access to court services, proceedings, filings, hearings, communications, accommodations, and judicial processes. Compl. ¶¶ 25–30, 55–61.

97. Plaintiff alleges that disability-access failures were administrative and access-related, not merely adverse rulings on the merits. Compl. ¶¶ 25–30, 55–61.

98. Plaintiff alleges that this conduct interfered with her ability to participate, communicate, present evidence, preserve claims, respond to court directives, and pursue available remedies. Compl. ¶¶ 25–30, 55–61.

## F. OFF-RECORD NONJUDICIAL COORDINATED PATTERN AND PRACTICE OF EX PARTE COLLUSION, AND EX PARTE COORDINATED INTERFERENCE WITH COUNSEL

99. Plaintiff alleges a well-coordinated pattern and practice of ex parte collusion, ex parte coordination, and ex parte coordinated collusion used to carry out interference with counsel, which was not isolated and violated federally protected rights. Compl. ¶¶ 85–107.

100. Plaintiff alleges that interference with counsel affected retained counsel, prospective counsel, attorney communications, attorney independence, and meaningful legal representation. Compl. ¶¶ 92–107.

101. Plaintiff alleges that this interference included intimidation of counsel, pressure on counsel to withdraw or stand down, communications discouraging attorneys from representing Plaintiff, and coordinated conduct obstructing Plaintiff's access to legal representation. Compl. ¶¶ 92–107.

102. Plaintiff alleges that ex parte coordinated collusion obstructed Plaintiff's access to, communication with, and representation by retained counsel. Compl. ¶¶ 92–107.

103. Plaintiff alleges that this conduct hindered retained counsel's ability to provide competent and diligent representation, exercise independent professional judgment, protect Plaintiff's lawful interests, preserve Plaintiff's claims and defenses, and pursue available remedies. Compl. ¶¶ 92–107.

104. Plaintiff alleges that this conduct also interfered with Plaintiff's efforts to retain willing, qualified, and independent counsel of her choosing. Compl. ¶¶ 92–107.

105. Plaintiff alleges that this conduct discouraged or prevented prospective counsel from accepting Plaintiff's representation. Compl. ¶¶ 92–107.

106. Plaintiff alleges that interference with counsel is not ordinary adjudication because it concerns access to representation, attorney independence, attorney communications, and Plaintiff's ability to preserve claims, defenses, evidence, and remedies.

107. Plaintiff alleges that this claim is not based on dissatisfaction with a ruling, but on alleged coordinated conduct outside the ordinary adjudicative function.

## G. OFF-RECORD NONJUDICIAL PATTERN AND PRACTICE OF EX PARTE COORDINATED COLLUSION OF DEPRIVATION OF PROPERTY RIGHTS

108. Plaintiff alleges a well-coordinated pattern and practice of ex parte coordinated collusion used to carry out deprivation of property rights, which was not isolated and violated federally protected rights. Compl. ¶¶ 21–24, 35, 64–68, 74–75, 88–90.

109. Plaintiff alleges that this conduct deprived her of property rights in her multimillion-dollar marital residence, home equity, business interests, marital assets, discovery rights, financial information, and lawful access to records necessary to protect the marital estate. Compl. ¶¶ 21–24, 35, 64–68, 74–75, 88–90.

110. Plaintiff alleges that this conduct included refusal to enforce financial directives, refusal to reinstate the financial status quo, continued acceptance of challenged or allegedly fraudulent financial affidavits, obstruction of discovery, and failure to protect Plaintiff's property rights. Compl. ¶¶ 21–24, 35, 64–68, 74, 88.

111. Plaintiff alleges that this conduct facilitated, enabled, or concealed dissipation, concealment, transfer, or loss of millions of dollars in marital assets after the issue was brought to the court's attention. Compl. ¶¶ 21–24, 35, 66–67, 74–75, 88–90.

112. Plaintiff alleges that all four Judicial Defendants and participating attorneys were informed that Madison Sample, Jr. was dissipating marital assets, but the same or substantially similar pattern continued. Compl. ¶¶ 21–24, 35, 64–68, 74, 88.

113. Plaintiff alleges that the continued acceptance, reliance upon, or failure to meaningfully address challenged financial affidavits and sworn statements lowered the truthful value of

the marital estate and facilitated deprivation of Plaintiff's property rights. Compl. ¶¶ 21–24, 35, 64–68, 74–75, 88–90.

114.    Plaintiff alleges that the pattern included threatened forced sale, transfer, or disposition of Plaintiff's marital home and home equity before discovery was completed or meaningfully begun. Compl. ¶¶ 21–24, 35, 67, 75, 90.

115.    Plaintiff alleges that the pattern aligned with Madison Sample, Jr.'s stated wishes, threats, and predicted outcomes, including his alleged statements that the financial status quo would not be reinstated and that Plaintiff's attorneys and the judges would not make him comply. Compl. ¶¶ 21–24, 35, 66–67, 74, 86–88, 92–107.

116.    Plaintiff alleges that deprivation of property rights through ex parte coordinated collusion is not protected merely because one or more alleged participants held judicial office.

## H. THE ALLEGED OFF-RECORD EX PARTE COORDINATION IS ITSELF NONJUDICIAL CONDUCT, SEPARATE FROM ANY RESULTING RULING

117.    Plaintiff alleges that the off-record ex parte coordination described above was arranged and carried out through Madison Sample, Jr.'s attorneys, who Plaintiff alleges initiated and conducted private contact with the Judicial Defendants outside any hearing, outside the record, and outside Plaintiff's presence or knowledge. Compl. ¶¶ 21–24, 66–67, 74, 86–88, 92–107. Plaintiff does not allege that Madison Sample, Jr. personally communicated directly with the Judicial Defendants; Plaintiff alleges that his attorneys served as the conduit for this off-record contact. This allegation implicates two independent, mutually reinforcing bases for liability. First, under Dennis v. Sparks, 449 U.S. 24, 27–28 (1980), a judge's immunity does not extend to a private party — including an attorney — who is alleged to have conspired or jointly acted with a judge; Madison Sample, Jr.'s attorneys, as private parties, are not shielded by judicial immunity for their alleged role in arranging and conducting this off-record contact regardless of how any resulting judicial act is characterized. Second, under the second prong of the functional test set out in Mireles v. Waco, 502 U.S. 9, 11–12 (1991), the relevant question as to the Judicial Defendants themselves is not only whether the type of act is one a judge normally performs, but

Page 17

whether the parties dealt with the judge in his or her judicial capacity. Receiving private, one-sided contact initiated by opposing counsel, outside any hearing and outside Plaintiff's presence or knowledge, is not a function in which Plaintiff dealt with the Judicial Defendants in their judicial capacity. See Forrester, 484 U.S. at 227.

118. Plaintiff alleges that the purpose and effect of this attorney-initiated, off-record coordination was to ensure that Madison Sample, Jr. would not be held to account for dissipating marital assets in violation of the April 11, 2023 restraining order, and that the financial status quo would not be reinstated regardless of the evidence Plaintiff presented. Compl. ¶¶ 21–24, 35, 66–67, 74, 86–88. Plaintiff alleges that Madison Sample, Jr. stated this predicted outcome before the relevant court events occurred, and that the subsequent non-enforcement by all four Judicial Defendants matched that prediction. Compl. ¶¶ 21–24, 32–35, 66–67, 74, 86–88, 92–107. Plaintiff does not rely on the resulting non-enforcement rulings alone to establish this allegation; Plaintiff relies on the sequence, itself pleaded in the Complaint, in which the outcome was predicted before it occurred and then matched by four separate judges over time, consistent with coordinated attorney contact rather than independent adjudication. A correct prediction of a specific outcome, made before that outcome occurs, is itself a fact bearing on plausibility distinct from the outcome itself. See Twombly, 550 U.S. at 556 (plausibility exists where pleaded facts create a reasonable expectation that discovery will reveal supporting evidence).

119. Plaintiff distinguishes this allegation from a claim that a ruling was merely erroneous, biased, or influenced by an improper motive, which Loubser and Stump v. Sparkman, 435 U.S. 349, 356–57 (1978), hold remains protected by immunity. Plaintiff instead alleges a private, off-record exchange initiated by opposing counsel that itself had no adjudicative form — it was not a hearing, ruling, order, or any act performed as part of deciding a matter presented to the court — and that this separate, nonjudicial exchange, and the attorneys who allegedly arranged it, are properly analyzed on their own terms under Dennis, Forrester, and Mireles, independent of whether any later ruling is itself found to be judicial.

120. Plaintiff identifies the following discovery as necessary to test this allegation: sworn deposition testimony of Madison Sample, Jr.'s attorneys concerning any private contact

with the Judicial Defendants outside of hearings and outside the record; sworn deposition testimony of the attorneys identified in the Complaint who withdrew from or declined to accept Plaintiff's representation, including testimony concerning the reasons given for withdrawal or refusal and any communications received from opposing counsel, Madison Sample, Jr., or court personnel; the timing and content of any off-calendar conferences, closed-door meetings, or scheduling gaps preceding the non-enforcement decisions identified in the Complaint; and records sufficient to establish the date on which Madison Sample, Jr.'s statements predicting non-enforcement were made relative to the dates of the rulings and non-enforcement decisions that followed. Compl. ¶¶ 21–24, 66–67, 92–107. Plaintiff does not contend that this discovery has already established off-record coordination; Plaintiff contends that the pleaded prediction-and-outcome sequence makes this a plausible, non-speculative subject for discovery rather than a fishing expedition. See Bausch, 630 F.3d at 561–62. Plaintiff has pleaded the facts presently known to her. Additional information concerning the specific dates, participants, content, and means of the alleged off-record communications may be obtained through appropriately tailored discovery, including depositions, communications records, metadata, scheduling records, and other relevant records. Plaintiff does not rely on discovery to create a claim, but to obtain evidence that may confirm the plausible factual inferences already pleaded.

## I. THE REPEATED, MATCHING NON-ENFORCEMENT BY FOUR INDEPENDENT JUDGES, EACH TIME PRECEDED BY AN ACCURATE ADVANCE PREDICTION FROM MADISON SAMPLE AND SOME ATTORNEYS, SUPPLIES THE "SOMETHING MORE" PLAUSIBILITY REQUIRES

121. Plaintiff recognizes that parallel conduct by multiple decision-makers is not, by itself, sufficient to plead an agreement or coordination; parallel conduct is equally consistent with independent, lawful decision-making, and Twombly requires factual content beyond parallel conduct alone before an inference of agreement becomes plausible rather than merely possible. Twombly, 550 U.S. at 556–57. Plaintiff does not rely on the fact that four Judicial Defendants reached similar non-enforcement outcomes standing alone.

Page 19

122. Plaintiff instead alleges the additional fact that supplies the "something more" Twombly requires: that Madison Sample, Jr. repeatedly and accurately predicted, in advance of the relevant court events and before any ruling was issued, that the financial status quo would not be reinstated and that neither Plaintiff's attorneys nor the Judicial Defendants would compel his compliance, and that this specific prediction was then borne out, not once but repeatedly, across four separate judges over a period of approximately two and one-half years. Compl. ¶¶ 21–24, 32–35, 66–67, 74, 86–88, 92–107. Independent, uncoordinated adjudication by four separate judges does not readily explain why an opposing party would be able to correctly and repeatedly predict its outcome in advance, before any hearing occurred and before any evidence was presented on the specific issue. Plaintiff alleges that the more plausible explanation, sufficient to proceed to discovery under Rule 8, is that the outcome was coordinated in advance through the off-record ex parte contact alleged in Section IV.H, supra, rather than independently reached by each judge based on the record before that judge.

123. This distinguishes Plaintiff's allegation from a bare claim that Plaintiff disagrees with four separate rulings. Plaintiff does not allege that four judges independently made the same discretionary call and that this coincidence alone proves collusion. Plaintiff alleges a specific, falsifiable, and pleaded fact — advance, accurate prediction of a specific outcome by an adverse party, repeated across multiple proceedings — that is not adequately explained by ordinary independent adjudication and that, combined with the pattern of matching outcomes, supports a reasonable inference of coordination sufficient to survive dismissal. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–61 (1970) (conspiracy under color of law may be shown through circumstantial evidence, including the surrounding pattern and circumstances, rather than direct proof of an agreement). Whether that inference is ultimately correct, and what the off-record contact identified in Section IV.H actually consisted of, are questions for discovery — including the depositions and records identified above — not questions Plaintiff must conclusively answer in the Complaint.

## V. FACIALLY JUDICIAL ACTS SHOULD NOT BE IMMUNIZED AT THE PLEADING STAGE WHERE PLAINTIFF ALLEGES THEY WERE PRODUCED, DIRECTED, OR IMPLEMENTED THROUGH NONJUDICIAL CONDUCT

124.  Plaintiff preserves the allegation that some acts appearing judicial on their face were not independent adjudicative decisions, but were produced, directed, influenced, or implemented through separate nonjudicial conduct. Compl. ¶¶ 21–35, 64–75, 85–107.

125.  Plaintiff alleges that this separate nonjudicial conduct included ex parte collusion, ex parte coordination, administrative obstruction, private advocacy, discriminatory practice decisions, retaliation, disability-access interference, interference with counsel, evidence concealment, intimidation, deprivation of property rights, and a prearranged plan outside the ordinary adjudicative function. Compl. ¶¶ 21–35, 64–75, 85–107.

126.  Plaintiff does not ask the Court to accept labels alone.

127.  Plaintiff asks the Court to conduct the required functional analysis and determine whether the challenged conduct was judicial, nonjudicial, administrative, private, ex parte, retaliatory, discriminatory, conspiratorial, enforcement-related, or taken in the clear absence of lawful authority.

128.  Plaintiff alleges that discovery is necessary to distinguish protected adjudicative acts from unprotected conduct, including private communications, off-record coordination, ADA records, filing logs, assignment records, order metadata, draft orders, clerk notes, bailiff and security records, hearing calendars, and communications among judges, attorneys, court personnel, Madison Sample, Jr., and related third parties.

129.  Plaintiff alleges that dismissal at the pleading stage would be premature because the immunity analysis requires examination of function, role, setting, timing, participants, communications, shared pattern and practice, same behavior by all four Judicial Defendants, Madison Sample, Jr.'s threats and predicted outcomes, matching outcomes, and relationship to the court record.

Page 21

## VI. PLAINTIFF PRESERVES CLAIMS UNDER § 1983 AND RELATED STATUTES

130. Plaintiff brings claims under 42 U.S.C. § 1983 for deprivation of federally protected rights under color of state law. Compl. ¶¶ 62–68.

131. Plaintiff alleges that state actors and persons acting jointly with state actors deprived Plaintiff of rights secured by the Constitution and laws of the United States. Compl. ¶¶ 64–68, 71–75, 85–107.

132. Plaintiff alleges that the challenged conduct deprived Plaintiff of due process, equal protection, access to the courts, meaningful participation in judicial proceedings, property rights, disability accommodations, and the right to petition the government for redress of grievances. Compl. ¶¶ 21–35, 43–45, 55–61, 64–75, 85–107.

133. Plaintiff alleges that private parties and attorneys who knowingly participated in joint action, conspiracy, ex parte coordination, ex parte collusion, or coordinated deprivation of rights with state actors acted under color of law for purposes of § 1983, subject to Plaintiff's obligation to plead specific facts showing joint action. Compl. ¶¶ 66, 74, 85–107.

134. Plaintiff relies on Dennis v. Sparks and Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), only for the limited proposition that private parties may be treated as state actors where sufficiently specific facts show joint participation or conspiracy with state officials.

135. Plaintiff acknowledges that merely using the courts or winning a case does not by itself make a private party a state actor.

136. Plaintiff brings claims under 42 U.S.C. § 1985(3) to the extent the evidence shows that two or more persons conspired to deprive Plaintiff of equal protection of the laws, equal privileges and immunities, or federally protected rights; that acts were taken in furtherance of the conspiracy; and that Plaintiff suffered injury or deprivation of rights. Compl. ¶¶ 85–91.

137. Plaintiff alleges that the conspiracy and coordinated conduct included ex parte collusion, ex parte coordination, administrative obstruction, discriminatory access decisions,

Page 22

retaliation, intimidation, interference with counsel, obstruction of court access, deprivation of disability accommodations, and deprivation of property rights. Compl. ¶¶ 85–107.

138. Plaintiff acknowledges that, where required by the particular § 1985(3) theory asserted, Plaintiff must plead sufficiently specific facts supporting class-based, invidiously discriminatory animus. Compl. ¶ 89.

139. Plaintiff brings claims under 42 U.S.C. § 1986 only to the extent any defendant knew of a covered § 1985 conspiracy, had power to prevent or aid in preventing the deprivation, neglected or refused to exercise that power, and the wrongful act was committed causing damages that reasonable diligence could have prevented.

140. Plaintiff acknowledges that a § 1986 claim is derivative of a viable § 1985 claim and is subject to the statute's one-year limitations period.

141. Plaintiff preserves Title II ADA claims under 42 U.S.C. § 12132 because Plaintiff alleges that a public entity denied meaningful access to court services, programs, proceedings, filings, hearings, accommodations, and judicial processes by reason of disability-related barriers. Compl. ¶¶ 25–30, 55–61.

142. Plaintiff preserves civil RICO allegations under 18 U.S.C. § 1962 and the private civil remedy under 18 U.S.C. § 1964(c), only to the extent the facts support a legally cognizable enterprise, qualifying predicate acts, a pattern of racketeering activity, continuity, causation, and injury to Plaintiff's business or property.

143. Plaintiff acknowledges that repeated adverse rulings alone are not sufficient to establish civil RICO and that fraud-based predicate acts must be pleaded with particularity under Federal Rule of Civil Procedure 9(b).

144. Plaintiff alleges that any RICO theory is based on alleged coordinated conduct, ex parte collusion, fraudulent financial affidavits, obstruction, deprivation of property rights, injury to business or property, and conduct outside protected judicial decision-making, not merely adverse rulings. Compl. ¶¶ 21–24, 35, 64–68, 74–75, 85–107.

145. Plaintiff alleges that 18 U.S.C. §§ 241 and 242 may be implicated by alleged coordinated conduct to injure, oppress, threaten, intimidate, or willfully deprive Plaintiff of rights secured by the Constitution and laws of the United States.

146. Plaintiff acknowledges that 18 U.S.C. §§ 241 and 242 are criminal civil-rights statutes and are not pleaded as private civil causes of action.

147. Plaintiff references 18 U.S.C. §§ 241 and 242 only to preserve the record and request referral, investigation, or appropriate review by agencies with criminal-enforcement authority.

## VII. ELEVENTH AMENDMENT AND OFFICIAL-CAPACITY ISSUES DO NOT REQUIRE DISMISSAL WITH PREJUDICE OF ALL CLAIMS

148. Judicial Defendants argue that official-capacity claims are barred by the Eleventh Amendment.

149. Plaintiff acknowledges that the Eleventh Amendment may limit official-capacity damages claims against state judicial officers.

150. Plaintiff does not concede that all relief is barred.

151. Plaintiff seeks only relief legally available against each defendant, including declaratory relief, prospective relief where legally available, compensatory damages where legally available, punitive damages where legally permitted, costs, attorney's fees where available, and any further relief necessary to remedy deprivation of federally protected rights.

152. Plaintiff acknowledges that under 42 U.S.C. § 1983, injunctive relief against a judicial officer for an act or omission taken in such officer's judicial capacity is restricted unless a declaratory decree was violated or declaratory relief was unavailable.

153. Plaintiff pleads that the challenged conduct was nonjudicial and outside the ordinary adjudicative function.

Page 24

154.    To the extent any conduct is deemed judicial in nature, Plaintiff seeks relief only where declaratory relief was unavailable or ineffective to prevent ongoing deprivation of rights.

155.    To the extent Eleventh Amendment immunity limits official-capacity damages claims, Plaintiff requests that the Court narrow the available relief or permit amendment rather than dismiss all federal claims with prejudice.

## VIII. INFORMATION PROPERLY RESERVED FOR DISCOVERY

156.    Plaintiff has pleaded the events, dates, statements, requested accommodations, alleged financial transfers, and counsel-related occurrences presently known to her. The following evidence is not ordinarily available to a litigant before discovery: internal communications among court personnel and outside participants; ADA request, routing, response, and implementation records; filing, docketing, assignment, and scheduling logs; order metadata and draft history; clerk, courtroom, bailiff, and security records; and communications with counsel or prospective counsel concerning Plaintiff's representation.

157.    Twombly permits a claim to proceed when pleaded facts create a reasonable expectation that discovery will reveal supporting evidence; it does not demand the evidence itself in the complaint. 550 U.S. at 556. Bausch likewise recognizes that the required level of detail depends on what information is accessible before discovery. 630 F.3d at 558, 561–62. Plaintiff therefore requests narrowly tailored discovery if the Court finds the pleaded factual basis plausible.

158.    Plaintiff does not ask the Court to credit unsupported labels or authorize discovery merely to search for a claim. If the Court concludes that a particular theory lacks enough factual content to cross the plausibility threshold, Plaintiff requests identification of that defect and leave to amend with the additional dates, actors, statements, and records already available to her. Fed. R. Civ. P. 15(a)(2).

## IX. LEAVE TO AMEND SHOULD BE GRANTED IF THE COURT FINDS ANY ALLEGATION INSUFFICIENTLY PARTICULARIZED

159. If the Court finds any allegation insufficiently particularized, Plaintiff respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2).

160. Rule 15(a)(2) provides that courts should freely give leave to amend when justice so requires.

161. Leave to amend is appropriate because Plaintiff can amend to identify the relevant acts by date, actor, function, communication, affected right, injury, and whether the conduct was judicial, nonjudicial, administrative, private, ex parte, retaliatory, discriminatory, conspiratorial, enforcement-related, or outside the ordinary adjudicative function.

162. Plaintiff can amend to clarify the ADA claim against the proper public entity or appropriate official-capacity/prospective-relief defendant.

163. Plaintiff can amend to clarify the § 1983 claims by identifying personal involvement, under-color-of-law conduct, the specific right violated, and causation.

164. Plaintiff can amend to clarify the § 1985(3) claim by identifying the alleged agreement, overt acts, injury, and class-based discriminatory animus where required.

165. Plaintiff can amend to clarify the § 1986 claim only to the extent a viable § 1985 claim is pleaded.

166. Plaintiff can amend to clarify any civil RICO theory only to the extent the facts support the required enterprise, predicate acts, pattern, continuity, causation, and business-or-property injury.

167. Plaintiff can amend to clarify that 18 U.S.C. §§ 241 and 242 are referenced only for referral, investigation, or criminal-enforcement review, not as private civil causes of action.

168. Plaintiff requests a judicial determination, after appropriate discovery or amendment, identifying which alleged acts were judicial and which were nonjudicial, administrative, off-record, private, discriminatory, retaliatory, investigative, enforcement-related, ex parte, coordinated, conspiratorial, or taken in the clear absence of lawful authority.

169. Plaintiff requests preservation of evidence relevant to the alleged pattern and practice of ex parte collusion, ex parte coordination, administrative obstruction, retaliation, disability-access interference, discriminatory treatment, interference with counsel, intimidation, obstruction of court access, and deprivation of property rights.

## CONCLUSION

170. For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Judicial Defendants' Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss.

171. In the alternative, Plaintiff respectfully requests leave to amend and an opportunity to particularize the allegations by act, actor, function, timing, communication, relationship to the record, and whether the challenged conduct was judicial, nonjudicial, administrative, private, ex parte, retaliatory, discriminatory, conspiratorial, enforcement-related, or taken in the clear absence of lawful authority.

172. Plaintiff further requests preservation of evidence and any other relief the Court deems just and proper.

Respectfully submitted,

Jackie Johnson Sample, Plaintiff Pro Se

Email: jackshousinganddevelopment@gmail.com

Telephone: (773) 719-0337