BC

FILED
9/10/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MPV

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**JACKIE JOHNSON SAMPLE,**
Plaintiff,

v.

**MADISON SAMPLE JR., et al.,**
Defendants.

Case No. 1:25-cv-05329
Hon. Andrea R. Wood

**PLAINTIFF'S RENEWED MOTION FOR DISQUALIFICATION UNDER 28 U.S.C. § 455(a)**
**AND FOR RECONSIDERATION AND REVISION OF THE SEPTEMBER 11, 2025 INTERLOCUTORY RECUSAL ORDER UNDER FED. R. CIV. P. 54(b)**

Plaintiff Jackie Johnson Sample, proceeding pro se, respectfully renews her request that Judge Andrea R. Wood disqualify herself under 28 U.S.C. § 455(a), and requests reconsideration and revision under Federal Rule of Civil Procedure 54(b) of the Court's September 11, 2025 interlocutory order denying disqualification, Dkt. 102.

This renewed motion does not rest merely upon disagreement with adverse rulings. It rests upon separately identifiable categories of judicial conduct that Plaintiff contends each independently create an objectively reasonable question concerning impartiality and that, when considered together, create an even more compelling cumulative appearance of partiality.

Plaintiff's position is therefore both **independent and cumulative**. Plaintiff contends that each principal ground stated below independently satisfies § 455(a). Plaintiff further contends that even if the Court determines that any particular ground, artificially isolated from the remainder of the record, would not alone require disqualification, the aggregate pattern must independently be evaluated under § 455(a)'s objective standard.

Plaintiff does not waive, diminish, qualify, withdraw, or concede the insufficiency of any individual ground by also relying upon cumulative effect.

## I. INTRODUCTION AND SPECIFIC INCORPORATION OF THE PRESERVED RECUSAL RECORD

1. Section 455(a) provides that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

2. The Seventh Circuit asks whether an objective, disinterested observer, fully informed of the circumstances, would entertain a significant doubt that justice would be done. Pepsico, Inc. v. McMillen, 764 F.2d 458, 460 (7th Cir. 1985); SCA Services, Inc. v. Morgan, 557 F.2d 110, 116 (7th Cir. 1977).

3. More recently, the Seventh Circuit has stated that recusal is required where a well-informed observer would perceive a significant risk that the judge will resolve the case on a basis other than the merits. In re United States, 572 F.3d 301, 308 (7th Cir. 2009); In re Mason, 916 F.2d 384, 385–86 (7th Cir. 1990).

4. Section 455(a) protects the appearance of impartial adjudication whether or not actual subjective bias can be proven. In re United States, 572 F.3d at 310–12; United States v. Balistrieri, 779 F.2d 1191, 1204 (7th Cir. 1985).

5. Plaintiff expressly incorporates and preserves the factual allegations, quotations, record citations, legal objections, and grounds for disqualification previously stated in Dkt. 74, Plaintiff's original Motion to Disqualify.

6. Plaintiff further expressly incorporates and preserves the factual allegations and supporting record identified in Plaintiff's Notice Regarding Appearance of Partiality Under 28 U.S.C. § 455(a), including the allegations concerning:

- the Rule 24/Judge Orel issue;
- the Court's judicial-immunity framing;
- displacement and restriction of Plaintiff's advocacy;
- solicitation of opposing counsel to investigate or provide outside information concerning Plaintiff; and
- the later solicitation of opposing counsel's views regarding the Court's own recusal.

7. Plaintiff further expressly incorporates the factual and evidentiary record identified in her Revised Notice concerning Judge Wood, Judge Orel, Rule 24, and the guardianship-related overlap, including Plaintiff's declaration and the specifically cited portions of the November 30, 2023 state-court transcript.

8. The November 30, 2023 transcript is incorporated only for the particular factual propositions identified in the Rule 24/Orel Notice and this Motion. Plaintiff does not incorporate unrelated portions of that proceeding.

9. If either Notice or the transcript has not yet been separately docketed in this action, Plaintiff requests that it be treated as an exhibit accompanying this Motion rather than as a freestanding unfiled incorporation.

10. This specific incorporation is important because Plaintiff's renewed motion supplements and strengthens the previously preserved record; it does not supersede, narrow, or abandon it.

11. Plaintiff does not contend that ordinary adverse judicial rulings automatically establish bias. Liteky v. United States, 510 U.S. 540, 555–56 (1994).

12. But Liteky does not establish immunity from § 455(a) scrutiny merely because challenged conduct occurred during judicial proceedings. Judicial conduct itself can require disqualification when it demonstrates the requisite appearance of favoritism, antagonism, or departure from neutral adjudication.

13. That principle is particularly important here because the Seventh Circuit has ordered recusal where a district judge's conduct, taken in context, caused a reasonable observer to conclude that the judge was no longer functioning strictly as a neutral arbiter. In re United States, 572 F.3d at 310–12.

14. The present motion concerns multiple distinct forms of conduct:

- adverse-counsel solicitation for outside factual information concerning Plaintiff;
- later solicitation of counsel concerning the Court's own recusal;

- displacement and restriction of Plaintiff's advocacy;
- treatment of disability-related communication barriers;
- inadequate individualized consideration of recruited counsel;
- inadequate functionally effective accommodations in counsel's absence;
- treatment of Plaintiff's request for transcripts needed for independent rereading;
- Rule 24/Orel treatment of guardianship-related factual overlap;
- adoption or echoing of the Judicial Defendants' immunity framing; and
- the cumulative asymmetry running through those events.

15. Plaintiff contends that **each principal ground independently supports disqualification**.

16. Plaintiff further contends that the same grounds, assessed in their totality, independently require disqualification.

## II. RULE 54(b) AUTHORIZES REVISION OF THE SEPTEMBER 11, 2025 INTERLOCUTORY ORDER

17. The September 11, 2025 recusal order did not dispose of all claims and parties and was therefore interlocutory.

18. Rule 54(b) provides that an interlocutory order may be revised at any time before entry of a final judgment adjudicating all claims and all parties' rights and liabilities.

19. The Seventh Circuit recognizes a district court's continuing authority to revise interlocutory decisions. Galvan v. Norberg, 678 F.3d 581, 587 (7th Cir. 2012); Peterson v. Lindner, 765 F.2d 698, 704 (7th Cir. 1985).

20. The Court itself subsequently recognized in Dkt. 115 that Rule 54(b), rather than Rule 59(e), governs reconsideration of Dkt. 102.

21. Plaintiff does not invoke Rule 54(b) merely to repeat Dkt. 74.

22. The present motion identifies a fundamental analytical distinction that the prior order did not adequately address: independent sufficiency and cumulative sufficiency are separate inquiries.

23. It also presents additional and clarified disability-access facts, counsel-related evidence, litigation-performance evidence, the supplemented Rule 24/Orel factual record, and the relationship among the various forms of challenged judicial conduct.

24. The Seventh Circuit has expressly recognized the usefulness of reconsideration before appellate intervention in recusal disputes because it gives the district court an opportunity to reflect upon and correct its own ruling if necessary. In re United States, 572 F.3d at 306–07.

## III. THE § 455(a) INQUIRY MUST BE CONDUCTED TWICE: INDIVIDUALLY AND CUMULATIVELY

25. Plaintiff respectfully submits that Dkt. 102 principally treated her objections as individual judicial rulings, scheduling decisions, or matters of courtroom administration.

26. That does not exhaust the inquiry required here.

27. The Court must answer two different questions:

**First:** Does any individual ground, viewed in its full context, independently cause a reasonable, well-informed observer to question impartiality?

**Second:** Does the entire course of conduct, considered together, independently create that appearance?

28. Plaintiff contends the answer to both questions is yes.

29. The Seventh Circuit's decision in In re United States is particularly important because it did not fragment the challenged judicial behavior into isolated episodes and terminate the analysis after supplying a possible innocent explanation for each.

30. Instead, the Seventh Circuit concluded that the judge's actions, "assessed in their totality," caused a reasonable, well-informed observer to question impartiality. 572 F.3d at 312.

31. Pepsico likewise requires examination of the facts and circumstances creating the appearance, 764 F.2d at 460, and United States v. Swallers, 897 F.3d 875, 878 (7th Cir. 2018), emphasizes that § 455(a) decisions turn on the unique facts and circumstances of the case.

32. Plaintiff therefore expressly objects to any methodology that asks only whether each individual act can theoretically be characterized as judicial conduct and never returns to ask what the combined directional pattern communicates to the objective observer.

## IV. GROUND ONE: SOLICITATION OF ADVERSE COUNSEL TO OBTAIN OUTSIDE FACTUAL INFORMATION CONCERNING PLAINTIFF INDEPENDENTLY SUPPORTS DISQUALIFICATION

33. Plaintiff previously alleged in Dkt. 74 that the Court solicited attorney Michael Bradtke, counsel representing parties adverse to Plaintiff, to obtain information concerning Plaintiff's dismissed DuPage divorce proceeding and report back.

34. Plaintiff characterized this as an abdication of judicial neutrality and an effective deputization of adverse counsel to serve as an outside factual source regarding Plaintiff.

35. Plaintiff further asserted that the solicitation created the appearance that the Court was willing to obtain information about an unrepresented litigant through attorneys actively defending parties against her.

36. This ground presents more than an ordinary ruling.

37. It concerns the source from which the judge sought factual information about one of the litigants.

38. SCA Services, Inc. v. Morgan, 557 F.2d 110 (7th Cir. 1977), supplies a strong controlling appearance-of-partiality principle: § 455(a) requires recusal where, under all the particular facts and circumstances, there is a reasonable basis for questioning the judge's impartiality. Id. at 116.

39. Edgar v. K.L., 93 F.3d 256 (7th Cir. 1996), is similarly instructive. There the Seventh Circuit required disqualification where a judge privately received substantive information outside the ordinary adversarial process and held that a thoughtful observer aware of all the facts would perceive an unacceptable potential for compromised impartiality. Id. at 259–60.

40. Jackie's allegation presents a related appearance concern: the information source allegedly selected by the Court was not neutral but an attorney actively representing parties adverse to her.

41. The concern does not depend upon proving that counsel ultimately completed the contemplated investigation or transmitted information.

42. As Plaintiff's preserved Notice emphasizes, the solicitation itself is the relevant appearance-of-partiality event.

43. A reasonable observer could distinguish sharply between permitting an attorney to advocate for a client and asking that attorney to function as a source for gathering outside facts concerning the opposing pro se litigant.

44. Plaintiff contends that this event standing alone gives rise to an objectively reasonable question concerning impartiality and independently satisfies § 455(a).

45. Plaintiff further contends that it becomes still more powerful when considered with the later solicitation of adverse counsel concerning the judge's own recusal.

## V. GROUND TWO: SOLICITING COUNSEL'S VIEWS REGARDING THE COURT'S OWN RECUSAL INDEPENDENTLY SUPPORTS DISQUALIFICATION

46. The September 11, 2025 order acknowledges that the Court asked counsel for other parties whether they had anything to add concerning Plaintiff's motions for disqualification and recusal.

47. The Court itself acknowledged that "the invitation was ill-advised."

48. In In re National Union Fire Insurance Co., 839 F.2d 1226, 1231 (7th Cir. 1988), the Seventh Circuit stated that judges should refrain from asking for the views of counsel regarding recusal.

49. The Seventh Circuit reiterated that admonition in United States v. Barr, 960 F.3d 906, 922–23 (7th Cir. 2020).

50. Plaintiff acknowledges, as Barr requires, that solicitation of counsel's views does not establish a per se rule automatically requiring recusal in every case.

51. Plaintiff's claim is instead fact-specific.

52. Here, the recusal solicitation followed the earlier alleged event in which adverse counsel had already been asked to obtain information concerning Plaintiff's personal state-court litigation.

53. Thus, the issue was not merely that counsel responded to a recusal motion.

54. Plaintiff alleges that the Court affirmatively invited the represented adversaries into the decision whether the judge against whom Plaintiff had asserted partiality should remain presiding over Plaintiff's case.

55. The Court's own characterization of the invitation as "ill-advised" confirms that this was not ordinary adversarial procedure.

56. Plaintiff contends that, in these circumstances, that incident independently creates an objectively reasonable question concerning impartiality under § 455(a).

57. The ground becomes still stronger when the objective observer knows that it was the second separate instance in which adverse counsel allegedly received an unusual role touching information about Plaintiff or the judge's continued authority over Plaintiff's case.

## VI. GROUND THREE: DISPLACEMENT OF PLAINTIFF'S ADVOCACY AND RESTRICTION OF HER PRESENTATION INDEPENDENTLY SUPPORT AN APPEARANCE OF PARTIALITY

58. Dkt. 74 preserved Plaintiff's allegation that during the August 25, 2025 CART proceeding she was denied a meaningful opportunity to present her emergency motion in her own words.

59. Dkt. 74 states that the Court spent substantial hearing time paraphrasing Plaintiff's filings and addressing the Court's own jurisdictional and immunity framing.

60. The Court stated:

> "So I suppose I will start with the emergency motion ... those are the requests for relief included in the more recent motion ... I will give counsel for the judicial defendants ... an opportunity to respond orally ..."

61. When Plaintiff sought to continue presenting, the Court stated:

> "There is no need for you to read your motion into the record. It's part of the record because you filed it. And I did read it."

62. The Court later stated:

> "Ms. Sample, I'm sorry, I'm giving you a ruling now. I've read your papers and I've listened to you. So now it's your turn to listen ..."

63. Plaintiff's allegation is not merely that a judge prevented repetitive reading of a written motion.

64. She alleges that the Court assumed substantial control over the presentation and characterization of her position, devoted hearing time to the Court's framing, provided adverse counsel an opportunity to respond to that framing, and then restricted Plaintiff's ability to clarify the presentation made in her name.

65. In re United States supplies a strong governing analogy.

66. There the Seventh Circuit held that judicial conduct can create the appearance that a judge has departed from the neutral judicial role and emphasized that the judge's actions must be assessed in their totality. 572 F.3d at 310–12.

67. Plaintiff does not equate the facts of that criminal case with this civil proceeding.

68. She relies upon its controlling principle: a judge's assumption of a role beyond neutral adjudication can itself create an appearance of partiality under § 455(a).

69. Plaintiff contends that displacement of an unrepresented litigant's advocacy followed by restriction of that litigant's ability to correct or complete the presentation independently creates such an appearance here.

70. It becomes even more significant because Plaintiff had separately informed the Court of disability-related communication barriers affecting real-time presentation.

## VII. GROUND FOUR: THE COURT'S TREATMENT OF PLAINTIFF'S DISABILITY-RELATED COMMUNICATION BARRIERS INDEPENDENTLY SUPPORTS AN APPEARANCE OF PARTIALITY

### A. Plaintiff Is Legally Competent and Possesses Full Decisional Capacity

71. Plaintiff states unequivocally that she is legally competent and possesses full decisional capacity.

72. Nothing in this Motion, her disability-accommodation requests, or her description of communication barriers suggests legal incompetence, diminished decisional capacity, inability to manage her affairs, or any basis for guardianship.

73. Disability-related communication barriers and legal incompetence are fundamentally different concepts.

74. Plaintiff is capable of directing her litigation, making decisions regarding her rights and objectives, and managing her personal affairs.

75. Her requests concern the means necessary to participate accurately and meaningfully in rapid and complex judicial proceedings.

### B. Plaintiff's Communication Barriers

76. Plaintiff experiences communication barriers that, particularly during rapid and complex court proceedings, materially affect the speed and manner in which she processes, organizes, and responds to information.

77. These communication barriers do not impair Plaintiff's legal competency, decisional capacity, or ability to manage her personal affairs.

78. They affect her practical ability in real time to:

- follow rapid exchanges;
- respond immediately to complex questions;
- organize thoughts under pressure;
- simultaneously listen, review documents, and take notes;
- retain and sequence multiple pieces of legal information;
- formulate accurate responses in real time;
- recognize when statements require clarification or objection; and

- communicate her position as accurately as she can after adequate time for review and reflection.

79. Plaintiff therefore sought measures including counsel or meaningful equivalent assistance, transcript access for reading and rereading, slower pacing when necessary, adequate processing and response time, sufficient time to review documents, meaningful opportunity to take notes, and other communication modifications.

### C. Articulateness Does Not Resolve Functional Need

80. Plaintiff recalls the Court repeatedly emphasizing in substance that she was articulate, communicated well, produced motions better than many pro se litigants, and appeared to know the law.

81. Plaintiff disputes the inference drawn from those observations.

82. She is not an attorney and possesses no professional legal training.

83. She has periodically obtained assistance from volunteer paralegals, friends, and informal helpers.

84. That assistance has been sporadic, intermittent, unreliable, and unavailable at critical times.

85. Strong written work produced with intermittent assistance does not establish that Plaintiff can independently navigate rapid oral proceedings or exceptionally complex federal litigation without continuous assistance.

86. Pruitt v. Mote, 503 F.3d 647, 655–56 (7th Cir. 2007) (en banc), and Watts v. Kidman, 42 F.4th 755, 760–62 (7th Cir. 2022), confirm that litigation ability is a practical, individualized inquiry comparing a particular litigant's actual abilities against the demands of the particular case.

87. Watts recognizes communication skill as one component of that broader analysis and requires assessment in light of the specific challenges presented by the litigation.

88. Those authorities do not themselves decide recusal. They establish why Plaintiff's actual communication limitations and litigation circumstances were legally significant rather than matters that could be disposed of solely by observing that she appeared articulate.

89. Under § 455(a), Pepsico requires examination of the actual facts and circumstances surrounding the alleged appearance of partiality. 764 F.2d at 460.

90. Plaintiff contends that repeatedly discounting functional communication needs through generalized observations concerning articulateness and selected strong papers, while continuing to impose ordinary rapid litigation demands, independently creates an appearance of unequal and dismissive treatment.

91. Plaintiff contends this ground independently satisfies § 455(a).

92. Its force increases when combined with the Court's restriction of Plaintiff's presentation and refusal to recruit counsel or provide functionally sufficient alternatives.

## VIII. GROUND FIVE: THE FAILURE TO CONDUCT AN ADEQUATELY COMPLETE AND STAGE-SPECIFIC COUNSEL INQUIRY INDEPENDENTLY SUPPORTS THE APPEARANCE OF PARTIALITY

93. Recruitment of counsel in federal civil litigation is governed by 28 U.S.C. § 1915(e)(1).

94. Plaintiff does not contend that the ADA itself gives her an automatic right to appointed counsel in federal court.

95. Rather, Plaintiff contends that her counsel request had to be considered under § 1915(e)(1) and the individualized framework established by Pruitt.

96. Pruitt requires comparison between the difficulty of the case and the particular plaintiff's practical ability to litigate it. 503 F.3d at 655.

97. Watts emphasizes that the inquiry is individualized, practical, stage-specific, and dependent upon the actual circumstances of the particular litigant and case. 42 F.4th at 760–62.

98. Mapes v. Indiana, 932 F.3d 968, 971–72 (7th Cir. 2019), is particularly important because it rejects any categorical proposition that counsel cannot appropriately be recruited before defendants answer or before a case reaches discovery.

99. Mapes explains that the inquiry is not susceptible to a bright-line stage-of-litigation rule and recognizes that counsel may be appropriate even to assist a plaintiff in amending a complaint.

100. Plaintiff recalls the Court relying substantially upon her articulateness, her ability to communicate, and the quality of certain motions.

101. Plaintiff contends that such observations could not substitute for examining:

- the source and intermittency of assistance behind stronger filings;
- Plaintiff's functioning when help was unavailable;
- her communication-processing barriers;
- actual procedural mistakes made without continuous assistance;
- the number and variety of defendants;
- jurisdiction and immunity questions;
- service and pleading requirements;
- emergency-relief procedure;
- interaction with state proceedings;
- preservation issues; and
- the extraordinary difficulty of the pre-discovery stage.

102. Plaintiff contends that the treatment of her counsel request must be evaluated not as an ordinary adverse discretionary ruling but as one component of an alleged pattern in which the practical barriers she identified were repeatedly minimized.

103. Section 455(a) asks whether a well-informed observer would perceive a significant risk of non-merits-based treatment. In re United States, 572 F.3d at 308.

104. Plaintiff contends that, under the particular circumstances presented, the summary treatment of the counsel issue independently contributes enough objective evidence of unequal treatment to satisfy that standard.

### A. The Exceptional Complexity of This Litigation

105. This is not a simple one-defendant action.

106. Plaintiff sued numerous defendants, including Illinois judicial officers, a state court, private individuals, financial institutions, and the United States.

107. Her federal pleading implicated disability law, federal constitutional due process and equal protection, civil-rights conspiracy, financial and debt-related claims, jurisdiction, immunity, and equitable relief.

108. Plaintiff simultaneously had to navigate state proceedings concerning divorce, possession or eviction, property, and foreclosure to the extent those proceedings were placed before this Court.

109. Plaintiff had to distinguish which facts, injuries, defenses, remedies, and tribunals corresponded to each proceeding.

110. The distinction among matrimonial jurisdiction, possession or eviction, foreclosure, federal civil-rights injury, appellate preservation, and collateral federal relief is highly technical.

111. Plaintiff's procedural errors while navigating those matters do not establish or suggest legal incompetence, diminished decisional capacity, inability to manage personal affairs, or any need for guardianship.

112. They demonstrate the practical danger of equating intelligence and persistence with professional litigation ability.

### B. The Discovery Catch-22

113. Plaintiff further recalls the Court indicating in substance that if she reached discovery, the Court would consider recruiting counsel.

114. Plaintiff contends this created a self-defeating condition.

115. The pre-discovery stage itself required her to survive issues concerning pleading sufficiency, service, jurisdiction, judicial immunity, emergency relief, claim separation, procedural preservation, and potentially dispositive motions.

116. Those were precisely among the difficulties for which she sought counsel.

117. Mapes strongly undercuts any categorical assumption that meaningful counsel consideration must await answer, discovery, or some later procedural milestone. 932 F.3d at 971–72.

118. Plaintiff does not contend counsel must automatically be recruited.

119. She contends that requiring her first to survive the precise procedural stage she alleges she could not adequately navigate without assistance, before seriously reconsidering assistance, is circular.

120. Plaintiff contends that this treatment independently contributes to an objectively reasonable appearance of partiality.

## IX. GROUND SIX: FAILURE TO PROVIDE FUNCTIONALLY EFFECTIVE COMMUNICATION ACCOMMODATIONS AFTER COUNSEL WAS NOT RECRUITED INDEPENDENTLY SUPPORTS AN APPEARANCE OF PARTIALITY

121. Counsel recruitment and communication accommodation are distinct issues.

122. A decision not to recruit counsel did not eliminate Plaintiff’s functional communication barriers.

123. It made effective non-attorney communication accommodations more important.

124. Plaintiff required additional processing time, slower pacing where necessary, document-review time, note-taking opportunity, sufficient response time, transcript access for rereading, and other effective measures.

125. Plaintiff contends that she did not receive measures effective enough to overcome the barriers she actually identified.

126. The relevant question was never merely whether Plaintiff could speak intelligibly.

127. It was whether she could receive, process, organize, retain, independently review, and accurately respond to complicated judicial information on substantially equal terms.

128. Pruitt and Watts confirm that communication ability and functional litigation ability must be evaluated practically rather than superficially.

129. Section 455(a), separately, asks what the Court's treatment of those known limitations would communicate to a fully informed observer.

130. Swallers emphasizes that § 455(a) determinations are intensely fact-specific and depend upon the unique circumstances of the case. 897 F.3d at 878.

131. Plaintiff does not argue that an adverse accommodation ruling automatically demonstrates bias.

132. She contends that the repeated manner, consequences, and directional character of the Court's treatment - knowing the asserted barriers yet continuing to evaluate Plaintiff through ordinary litigation expectations - independently produces the appearance of unequal treatment.

133. Plaintiff therefore contends this ground independently supports disqualification and also substantially strengthens the cumulative showing.

## X. GROUND SEVEN: THE COURT'S TREATMENT OF PLAINTIFF'S REQUEST FOR TRANSCRIPT ACCESS INDEPENDENTLY SUPPORTS THE APPEARANCE OF PARTIALITY

134. Plaintiff requested transcripts because she requires the ability to read and reread proceedings to process complicated oral information accurately.

135. Plaintiff recalls the Court declining transcript access and stating in substance that the Court would tell Plaintiff what she needed to know.

136. Plaintiff is careful not to claim an unlimited entitlement to free transcripts merely because she is pro se.

137. The § 455(a) issue concerns the manner in which a disability-related communication request was allegedly handled.

138. For a litigant requiring additional processing time, receiving the presiding judge's characterization of what occurred is not functionally identical to reviewing the actual words spoken.

139. Independent transcript access allows Plaintiff to:

- process proceedings at her own pace;
- compare exact statements;
- identify misunderstandings;
- confirm what counsel and the Court said;
- obtain limited outside assistance;
- preserve issues; and
- formulate accurate later responses.

140. Plaintiff's need for additional processing time does not imply legal incompetence or diminished decisional capacity.

141. Plaintiff contends that making the presiding judge the effective filter through which she receives what the judge believes she "needs to know," despite her stated need for independent rereading, objectively contributes to the appearance that her access needs were being subordinated to the Court's own assessment of what information she should receive.

142. The § 455(a) inquiry is not whether the Court possessed administrative authority over transcript requests.

143. Under Pepsico and the objective standard of § 455(a), the question is the appearance generated under the specific facts and circumstances.

144. Plaintiff contends the handling of this request independently contributes sufficient objective evidence of unequal treatment to support § 455(a), while becoming considerably stronger when paired with counsel denial, accommodation restriction, and restriction of Plaintiff's live presentation.

145. If the official transcript reflects exact wording different from Plaintiff's recollection, Plaintiff requests that the official transcript control as to quotation while preserving the substance and effect of the exchange she recalls.

## XI. GROUND EIGHT: THE RULE 24/JUDGE OREL TREATMENT INDEPENDENTLY SUPPORTS AN APPEARANCE OF PARTIALITY BECAUSE IT MINIMIZED A MATERIAL FACTUAL CONNECTION INVOLVING A JUDICIAL DEFENDANT

146. Before Plaintiff filed her original recusal motion, the Court denied El Roy Johnson's motion to intervene and stated that his guardianship allegations concerning Judge James Orel had "no apparent connection" to Plaintiff's claims except that the proceedings were presided over by the same judge.

147. Plaintiff's Amended Complaint itself alleged guardianship-related due-process conduct involving Judge Orel.

148. The November 30, 2023 transcript subsequently preserved in greater detail demonstrates that after the guardianship subject arose, Judge Orel repeatedly returned to that subject.

149. The transcript includes Orel stating:

> "If it's going to be done, it's got to be done now,"

150. and addressing whether a mental-health or guardianship petition would be presented within the ensuing period.

151. Plaintiff's Rule 24/Orel Notice preserves her contention that Orel repeatedly pursued and pressured counsel regarding the guardianship/mental-health-petition subject after it was raised.

152. Plaintiff again states unequivocally that she is legally competent and possesses full decisional capacity.

153. Plaintiff does not offer the guardianship evidence because she concedes or accepts that guardianship was warranted.

154. The exact opposite is true.

155. She offers the evidence because she contends that the pursuit of a guardianship-related proceeding against a legally competent litigant formed part of the judicial conduct challenged in her federal pleading and directly overlapped with Johnson's allegations concerning the same judicial defendant.

156. The guardianship-related evidence is offered solely as evidence of alleged judicial conduct and factual overlap. It is not evidence of Plaintiff's incompetence, and no adverse inference concerning competency should be drawn from Plaintiff's disability-related communication requests.

157. Liteky teaches that an ordinary adverse ruling alone ordinarily does not establish bias.

158. Plaintiff's claim is therefore not merely that the Rule 24 decision was legally wrong.

159. Her contention is that a material and facially identifiable factual overlap involving allegations against a judicial defendant was characterized as effectively nonexistent.

160. In re Hatcher, 150 F.3d 631, 637–39 (7th Cir. 1998), demonstrates that overlap between related judicial proceedings can itself become significant to the § 455(a) appearance inquiry even where actual integrity is not questioned.

161. Hatcher is useful here not because its facts are identical, but because it demonstrates that the relationship and overlap between proceedings can be legally significant to the § 455(a) appearance inquiry.

162. Plaintiff contends that the Court's minimization of an asserted same-judge, same-subject, guardianship-related factual connection independently contributes to the appearance that allegations concerning a judicial defendant were being treated more protectively than Plaintiff's own factual theory.

163. Plaintiff contends that this independently supports § 455(a).

164. It becomes stronger when combined with the judicial-immunity framing discussed next.

## XII. GROUND NINE: THE COURT'S ADOPTION OR ECHOING OF THE JUDICIAL DEFENDANTS' IMMUNITY FRAMING INDEPENDENTLY SUPPORTS AN APPEARANCE OF PARTIALITY

165. Dkt. 74 preserved Plaintiff's contention that defense counsel characterized the "overarching theme" of Plaintiff's case as Plaintiff's misunderstanding of judicial immunity.

166. Plaintiff alleged that the Court echoed that framing.

167. Plaintiff's objection is not merely that judicial immunity was discussed.

168. Judicial immunity is plainly a legitimate threshold legal issue.

169. Plaintiff's contention is instead that the Court adopted or substantially echoed the represented Judicial Defendants' characterization of Plaintiff herself and of the overarching nature of her case before fully engaging with her competing allegation that particular conduct was nonjudicial, administrative, coordinated, discriminatory, conspiratorial, or otherwise outside protected adjudicative activity.

170. In re United States again provides an important controlling principle.

171. The Seventh Circuit held there that judicial remarks and conduct, taken in context and assessed in their totality, can cause a reasonable observer to question whether the judge remains within a neutral adjudicative role. 572 F.3d at 310–12.

172. Plaintiff does not suggest that merely agreeing with a defendant's legal argument establishes bias.

173. Her contention is that echoing the adversaries' overarching characterization of Plaintiff's supposed misunderstanding, while not comparably engaging her theory that challenged conduct fell outside immunity, created an objective appearance of alignment.

174. Plaintiff contends that this ground, viewed in its complete context rather than as an abstract immunity ruling, independently supports a reasonable question concerning impartiality.

175. Its force increases when combined with the Court's Rule 24/Orel treatment and the unusual procedural roles afforded adverse counsel.

## XIII. THE SAME-DIRECTION ASYMMETRY IS ITSELF AN INDEPENDENT § 455(a) GROUND

176. Plaintiff respectfully submits that an additional independent appearance problem emerges from the directional asymmetry linking the preceding events.

177. The cumulative problem is not merely numerical.

178. It is not “nine adverse things happened.”

179. It is that the challenged events allegedly operated repeatedly in the same direction.

180. When Plaintiff sought greater opportunity to present her own argument, her advocacy was allegedly curtailed.

181. When Plaintiff requested counsel, the Court allegedly relied substantially upon her articulateness and stronger filings and deferred meaningful reconsideration while she struggled through the pre-discovery stage.

182. When Plaintiff required disability-related communication modifications, she contends those needs were minimized or inadequately addressed.

183. When Plaintiff sought transcripts for independent rereading, she recalls being told in substance that the Court would tell her what she needed to know.

184. When Plaintiff identified factual overlap involving Judge Orel, the Court characterized the connection as effectively nonexistent beyond the identity of the judge.

185. When Judicial Defendants advanced an immunity-centered characterization of Plaintiff and her action, Plaintiff contends the Court echoed that characterization.

186. By contrast, represented adverse counsel allegedly received an enlarged procedural role in two particularly sensitive contexts.

187. First, an adverse lawyer was allegedly solicited to obtain outside factual information concerning Plaintiff.

188. Later, counsel were invited to address whether Judge Wood herself should remain presiding.

189. The Seventh Circuit has explained that § 455(a) is concerned with whether an objective observer perceives a significant risk of decision-making on a basis other than the merits. In re Mason, 916 F.2d at 385–86; In re United States, 572 F.3d at 308.

190. Plaintiff contends that a well-informed observer could perceive the following recurring asymmetry:

> "Plaintiff's own voice, access, assistance, independent record review, and practical ability to litigate this highly complex action without continuous counsel were repeatedly narrowed or discounted, while the procedural role and influence of represented adversaries were repeatedly enlarged."

191. Plaintiff contends that this recurring one-direction asymmetry independently creates an appearance of partiality under § 455(a).

192. It also supplies the connective principle joining all other independent grounds.

## XIV. DKT. 102'S CHARACTERIZATION OF THE EVENTS AS ORDINARY JUDICIAL ACTS DID NOT RESOLVE THE ACTUAL § 455(a) QUESTIONS

193. The September 11 order principally characterized Plaintiff's allegations as ordinary judicial rulings, hearing administration, and docket management.

194. Plaintiff respectfully contends that this did not resolve either of the two questions now squarely presented.

195. Some individual conduct may occur within a judicial proceeding and still create an appearance problem.

196. In re United States proves the point.

197. There, much of the challenged conduct occurred through judicial handling of a pending matter, yet the Seventh Circuit concluded that the judge's actions, assessed in their totality, could cause a reasonable observer to question impartiality. 572 F.3d at 310–12.

198. Edgar likewise focused upon how a thoughtful observer would perceive the judge's exposure to substantive information outside ordinary adversarial channels. 93 F.3d at 259–60.

199. The proper question is therefore not simply:

"Can each incident be described as something a judge sometimes does?"

200. Nor is the question:

"Can some innocent explanation be imagined for each event?"

201. The statutory question is whether, knowing the full circumstances, a reasonable and well-informed observer would entertain a significant doubt that justice would be done impartially.

## XV. EACH PRINCIPAL GROUND INDEPENDENTLY SATISFIES § 455(a), AND THEIR TOTALITY PROVIDES A SECOND, INDEPENDENT BASIS FOR DISQUALIFICATION

202. Plaintiff expressly rejects any analytical assumption that because she invokes cumulative effect, no individual ground can independently warrant disqualification.

203. Her position is dual and alternative.

204. Plaintiff contends that each of the following independently satisfies § 455(a):

- solicitation of adverse counsel to obtain outside factual information concerning Plaintiff;
- solicitation of adverse counsel concerning the Court's own recusal;
- displacement and restriction of Plaintiff's advocacy;
- treatment of Plaintiff's disability-related communication barriers;
- inadequate individualized consideration of counsel at the stage when counsel was needed;
- failure to provide functionally effective communication measures when counsel was not recruited;
- treatment of Plaintiff's transcript request despite her stated need for independent rereading;
- Rule 24/Orel minimization of guardianship-related overlap;
- adoption or echoing of Judicial Defendants' immunity-centered framing; and
- the recurring asymmetry between restrictions imposed upon Plaintiff and the enlarged role afforded represented adversaries.

205. Plaintiff further contends that the combined effect of all those grounds independently requires disqualification, even if the Court rejects Plaintiff's individual-sufficiency argument concerning one or more grounds.

206. In re United States directly establishes the proper cumulative methodology.

207. The Seventh Circuit concluded that the district judge's actions, "assessed in their totality," were such that a reasonable, well-informed observer would question impartiality. 572 F.3d at 312.

208. SCA Services similarly instructs that § 455(a) operates upon all the particular facts and circumstances that create the appearance of partiality. 557 F.2d at 116.

209. Pepsico requires recusal where an objective observer fully informed of the underlying facts would entertain significant doubt that justice would be done. 764 F.2d at 460.

210. Swallers further emphasizes that § 455(a) is intensely fact-driven and must be decided from the unique circumstances presented. 897 F.3d at 878.

211. An objective observer does not experience a judicial proceeding as disconnected docket entries.

212. That observer sees the course of treatment.

213. Here, that observer would know that Plaintiff is legally competent and possesses full decisional capacity while experiencing disability-related communication barriers; that she remained largely unrepresented; that outside assistance was sporadic; that the action is exceptionally complex; that procedural errors occurred while she navigated multiple proceedings without continuous legal assistance; that she sought counsel and communication accommodations; that counsel was allegedly deferred until a later stage; that her oral advocacy was restricted; that her independent record-review request was allegedly denied; and that adverse counsel was twice invited into roles Plaintiff contends exceeded ordinary adversarial advocacy.

214. That same observer would know that the Court minimized Plaintiff's alleged factual overlap concerning a judicial defendant while echoing an immunity-centered characterization advanced by judicial defendants.

215. Plaintiff contends the objective observer could reasonably conclude from this same-direction course of conduct that Plaintiff had not received - and might not receive - the detached and visibly neutral adjudication § 455(a) protects.

216. The Court must therefore perform both analyses: individual sufficiency and cumulative sufficiency.

217. Plaintiff contends both independently compel disqualification.

## XVI. ACTUAL BIAS NEED NOT BE PROVEN UNDER § 455(a)

218. Plaintiff believes the challenged conduct reflects actual bias and preserves that contention.

219. But she does not need to prove Judge Wood's subjective mental state to obtain relief under § 455(a).

220. In re United States states that a § 455(a) motion is directed against the appearance of partiality whether or not the judge is actually biased. 572 F.3d at 312 (quoting Balistrieri, 779 F.2d at 1204).

221. In re Hatcher likewise demonstrates that disqualification can be required without an accusation that the district judge lacks integrity. 150 F.3d at 637–39.

222. United States v. Murphy, 768 F.2d 1518, 1539–40 (7th Cir. 1985), explains that § 455(a) protects the institutional interest that judges be and appear impartial.

223. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860 (1988), likewise recognizes § 455(a)'s concern with avoiding even the appearance of partiality.

224. The Court therefore need not conclude that Judge Wood intended to discriminate against or disadvantage Plaintiff.

225. It need only determine whether the circumstances individually or cumulatively cause impartiality reasonably to be questioned.

226. Plaintiff contends they do.

## XVII. PLAINTIFF'S DISABILITY AND COUNSEL REQUESTS MUST NOT BE MISCONSTRUED AS EVIDENCE OF INCOMPETENCE OR A BASIS FOR GUARDIANSHIP

227. Because guardianship-related conduct itself forms part of Plaintiff's allegations concerning Judge Orel, Plaintiff places particular emphasis upon this clarification.

228. Plaintiff is legally competent and possesses full decisional capacity.

229. Her communication barriers do not imply incompetence.

230. Her request for counsel does not imply incompetence.

231. Her request for slower pacing does not imply incompetence.

232. Her need to read and reread transcripts does not imply incompetence.

233. Her need for additional processing time does not imply incompetence.

234. Her need for assistance navigating highly technical federal and state procedure does not imply legal incompetence, diminished decisional capacity, inability to manage her personal affairs, or any basis for guardianship.

235. Litigation-specific procedural errors do not establish incompetence.

236. Lawyers themselves specialize because procedural, jurisdictional, constitutional, financial, matrimonial, foreclosure, appellate, and federal civil-rights systems are technically difficult.

237. Plaintiff seeks assistance and accommodation to improve the accuracy and fairness of her participation - not to surrender decision-making authority over her own litigation.

238. Plaintiff remains capable of directing her litigation, selecting her objectives, making decisions concerning her rights and property, and managing her personal affairs.

239. The guardianship-related evidence is offered solely as evidence of the conduct Plaintiff attributes to Judge Orel and of the factual overlap relevant to the Rule 24 ruling.

240. It is not offered as evidence that Plaintiff required guardianship.

241. No adverse inference concerning Plaintiff's competence should be drawn from her disability-related communication barriers, her request for counsel, or her request for accommodations.

242. Nothing in this Motion, the incorporated Notices, Plaintiff's declaration, or the referenced transcript should be construed as requesting, inviting, supporting, or establishing guardianship, competency proceedings, diminished legal capacity, or any restriction upon Plaintiff's autonomy.

## XVIII. RELIEF REQUESTED

WHEREFORE, Plaintiff Jackie Johnson Sample respectfully requests that this Court:

243. Reconsider and revise pursuant to Fed. R. Civ. P. 54(b) the September 11, 2025 interlocutory order denying disqualification;

244. Recognize and consider the factual allegations and record specifically preserved and incorporated from Dkt. 74, Plaintiff's § 455(a) Notice, Plaintiff's Rule 24/Orel Notice and declaration, and the identified portions of the November 30, 2023 transcript;

245. Determine separately whether each principal ground independently causes the Court's impartiality reasonably to be questioned;

246. Independently evaluate the cumulative and total effect of all grounds together, consistent with the totality analysis employed in In re United States;

247. Grant Plaintiff's renewed motion for disqualification under 28 U.S.C. § 455(a);

248. Direct reassignment of this action to another district judge pursuant to the Court's ordinary reassignment procedures;

249. Preserve all prior motions, notices, objections, factual allegations, supporting materials, and grounds for appellate review;

250. Make clear that Plaintiff's disability-related communication barriers, request for recruited counsel, litigation-specific procedural errors, and requests for accommodation do not

constitute or support any finding of legal incompetence, diminished decisional capacity, inability to manage her affairs, or basis for guardianship; and

251. Grant such other and further relief as justice requires.

Respectfully submitted,

**/s/ Jackie Johnson Sample**
Jackie Johnson Sample
Plaintiff, Pro Se
9476 Falling Waters Drive East
Burr Ridge, Illinois 60527
(773) 719-0337
jackshousinganddevelopment@gmail.com

Date: September 10, 2026

**DECLARATION OF JACKIE JOHNSON SAMPLE**
**PURSUANT TO 28 U.S.C. § 1746**

I, Jackie Johnson Sample, declare as follows:

1. I am the Plaintiff in this action.

2. I am legally competent and possess full decisional capacity. I am able to make decisions concerning my litigation, personal affairs, property, legal rights, and objectives.

3. My requests for disability-related accommodations do not concern incompetence or guardianship. They concern communication barriers that interfere with my ability to participate fully and accurately in court proceedings.

4. I experience communication barriers that, particularly during rapid and complex court proceedings, materially affect the speed and manner in which I process, organize, and respond to information. These barriers do not impair my legal competency, decisional capacity, ability to manage my personal affairs, or ability to direct my litigation.

5. These barriers affect my ability, in real time, to follow rapid exchanges, immediately respond to complex questions, organize my thoughts under pressure, simultaneously review documents and listen, take notes while participating, retain and sequence multiple pieces of legal information, and communicate my position as clearly and accurately as I can when given sufficient review and processing time.

6. These barriers concern the conditions under which I communicate most accurately. They do not reflect legal incompetence or diminished decisional capacity.

7. Without appropriate communication accommodations, these barriers interfere with my ability to meaningfully participate in proceedings and protect my legal rights.

8. I have requested measures including counsel or functionally effective assistance, access to transcripts so that I can read and reread proceedings, a slower pace when necessary, adequate time to respond, adequate time to review documents and take notes, and other communication measures.

9. I am not an attorney and do not possess professional legal training.

10. I have received intermittent help at times from volunteer paralegals, friends, and other persons.

11. That help has not been continuous or reliable.

12. There have been important times when I did not have such assistance.

13. When assistance has been unavailable or sporadic, I have encountered procedural mistakes and litigation-specific difficulty determining which legal issues belonged in which court or proceeding while navigating multiple complicated matters without continuous legal assistance.

14. Those litigation-specific mistakes do not mean, establish, or suggest that I am legally incompetent, lack decisional capacity, cannot manage my personal affairs, or require guardianship.

15. They demonstrate the difficulty of navigating multiple complicated proceedings without continuous legal assistance.

16. I recall Judge Wood stating in substance that I was articulate, communicated well, submitted motions better than many pro se litigants, and knew or understood the law.

17. I respectfully disagree with any conclusion that those observations establish that I do not need assistance.

18. Some of my stronger written work was produced with outside volunteer assistance.

19. My ability to communicate intelligently, make decisions, and direct my own affairs does not eliminate my communication barriers during rapid, complicated court proceedings. Those barriers concern communication access, not legal competency or decisional capacity.

20. I recall Judge Wood indicating in substance that if I reached discovery, she would consider recruiting counsel.

21. I understood that to mean that I first had to survive pleading, jurisdictional, service, immunity, and other preliminary stages without the counsel I was requesting to help me navigate those stages.

22. I recall requesting transcripts because I need to read and reread court proceedings in order to process them fully and accurately.

23. I recall the Court declining that request and stating in substance that the Court would tell me what I needed to know.

24. I needed the transcripts themselves so that I could independently review what occurred, reread statements, identify misunderstandings, preserve issues, obtain assistance, and prepare accurate responses.

25. If an official transcript reflects different exact wording from my recollection, I defer to the official transcript as to the exact words spoken while maintaining the substance of my recollection and the effect the exchange had upon my ability to participate.

26. I maintain all factual contentions stated in Dkt. 74 and in my subsequently prepared or filed § 455(a) Notice.

27. I maintain the factual contentions and record identified in my Rule 24/Orel Notice and declaration.

28. I maintain my contention that Judge Wood's solicitation of adverse counsel to obtain information concerning my separate state-court proceeding independently created an appearance of partiality.

29. I maintain my contention that the Court's later solicitation of counsel concerning Judge Wood's own recusal independently created an appearance of partiality and further strengthened the existing appearance cumulatively.

30. I maintain my contention concerning the Court's handling of my presentation during the August 25, 2025 proceeding.

31. I maintain my contention concerning the Court's treatment of my disability-related communication needs, request for counsel, transcript requests, and ability to participate meaningfully.

32. I maintain my contention concerning the Rule 24/Judge Orel guardianship-related factual overlap.

33. The guardianship-related evidence is not offered because I accept, concede, or believe I require guardianship.

34. I am legally competent, possess full decisional capacity, manage my own affairs, and direct my own litigation.

35. The guardianship-related evidence is offered because I contend that the conduct concerning the proposed guardianship proceeding forms part of the conduct relevant to my claims against Judge Orel and demonstrates the factual relationship between my allegations and the allegations involved in the Rule 24 intervention issue.

36. My communication accommodations, requests for counsel, and litigation-specific procedural difficulties should not be interpreted as evidence of incompetence or as a basis for guardianship.

37. Nothing in this declaration or Motion withdraws, narrows, waives, abandons, or supersedes any previously preserved ground.

38. I contend that each principal ground independently demonstrates an appearance of partiality under § 455(a).

39. I further contend that all of those grounds, assessed together and in their totality, create an even stronger and independent basis for disqualification.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 10, 2026, in Burr Ridge, Illinois.

**/s/ Jackie Johnson Sample**
Jackie Johnson Sample

## CERTIFICATE OF SERVICE

I certify that on September 10, 2026, I served a true and correct copy of the foregoing Plaintiff's Renewed Motion for Disqualification Under 28 U.S.C. § 455(a) and for Reconsideration and Revision of the September 11, 2025 Interlocutory Recusal Order Under Fed. R. Civ. P. 54(b), together with Plaintiff's Declaration and accompanying exhibits, upon all counsel and parties of record through the Court's CM/ECF system to the extent service is effected through CM/ECF, and by any additional method required for any party not receiving electronic service.

**/s/ Jackie Johnson Sample**
Jackie Johnson Sample